1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, Esq. (Bar No. 144074)
2  21800 Burbank Boulevard, Suite 310
   Woodland Hills, California  91367
3  Telephone:  (818) 347-3333
   Facsimile:   (818) 347-4118
4  E-Mail:      dalekgalipo@yahoo.com

5  THE CLAYPOOL LAW FIRM
   Brian E. Claypool, Esq. (Bar No. 134674)
6  1055 East Colorado Blvd., 5th Floor
   Pasadena, California 91106
7  Telephone:  (626) 240-4616
   Facsimile:   (626) 240-4617
8  E-Mail:      becesq@aol.com

9  *Attorneys for Plaintiff*

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12  JUNE ELAINE SYLVESTER,              Case No. CV 11-01459 YGR

13                   Plaintiff,          **PLAINTIFFS' DESIGNATION OF**
                                         **EXPERT WITNESSES PURSUANT**
14       vs.                            **TO F.R.C.P. 26(a)(2)(A)**

15  COUNTY OF DEL NORTE, et al.,

16                   Defendants

17

18

19

20  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

21       Plaintiff hereby designates the following witnesses who may be called upon to

22  give expert testimony at trial pursuant to Rule 26(a)(2)(A) of the Federal Rules of

23  Civil Procedure:

24  / / /

25  / / /

26

27

28

                                    1        Case No. CV 11-01459 YGR

**Retained Experts:**

    **1. Roger Clark** (See Exhibit "A")

        10207 Molino Road

        Santee, CA 92071

        Telephone:  (208) 351-2458 / Facsimile:  (619) 258-0045

    **2. Barry Gustin, MD** (See Exhibit "B")

        2928 Derby Street

        Berkeley, CA 94705

        Telephone:  (510) 549-1041 / Facsimile:  (510) 549-3268

**Non-Retained Experts:**

    1.    **Neil D. Kushner, MD**

        519 6th Street

        Eureka, CA 95501

        Telephone:  (707) 442-8200 / Facsimile:  (707) 442-8222

        <u>Summary</u>:   Dr. Kushner is expected to testify regarding the autopsy he performed on the decedent, DANIEL JAMES SYLVESTER.

    2.    **Paramedic Ryan Jones**

        DEL NORTE AMBULANCE (c/o Mr. Charles Tweed)

        2600 Moorehead Road

        Crescent City, CA 95531

        Telephone:  (707) 487-1116 / Facsimile:  (707) 487-3116

        <u>Summary</u>:  Paramedic Jones is expected to testify regarding his observations and opinions regarding the medical condition of Mr. Sylvester.

    3.    **Patrick W. Smith**

        (c/o Taser International, Inc.)

1    Summary: Mr. Smith is expected to testify regarding the written
2    warnings provided by TASER INTERNATIONAL INC. regarding use
3    of the X-26 taser in effect as of June 22, 2010; the training provided by
4    TASER INTERNATIONAL INC. regarding the use of the X-26 taser;
5    and the X-26 taser data download function.
6        4.    **Richard Guilbault**
7            (c/o Taser International, Inc.)
8    Summary: Mr. Guuilbault is expected to testify regarding the written
9    warnings provided by TASER INTERNATIONAL INC. regarding use
10   of the X-26 taser in effect as of June 22, 2010; the training provided by
11   TASER INTERNATIONAL INC. regarding the use of the X-26 taser;
12   and the X-26 taser data download function.
13
14
15   Plaintiff reserves her right to designate rebuttal experts.
16
17   DATED: November 2, 2012        THE LAW OFFICES OF DALE K. GALIPO
18
19                            By:
20                                Dale K. Galipo
                                 Attorneys for Plaintiff
21
22
23
24
25
26
27
28

1                                **PROOF OF SERVICE**

2            STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3        I am employed in the County of Los Angeles, State of California and am over the age of eighteen years and not a party to the within action. My business address is
4 located at the Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, California 91367.

5

6        On November 2, 2012, I served the foregoing document described as **PLAINTIFFS' DESIGNATION OF EXPERT WITNESSES PURSUANT TO**
7 **F.R.C.P. 26(a)(2)(A)** on all interested parties, through their respective attorneys of record in this action by placing a true copy thereof enclosed in a sealed envelope
8 addressed as indicated on the attached service list.

9        I caused such envelope(s) fully prepaid to be placed in the United States mail at Woodland Hills, California. I am "readily familiar" with the firm's practice of
10 collection and processing correspondence or mailing. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully
11 prepaid at Woodland Hills, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation
12 date or postage meter date is more than one day after date of deposit for mailing in affidavit.

13

14        I further caused said document to be served to the electronic notification addresses as registered with this Court's Case Management/Electronic Court Filing
15 System, which are indicated on the attached service list.

16        I declare, under penalty of perjury, under the laws of the United States of America, that I am employed in the office of a member of the bar of this Court at
17 whose direction the service was made.

18     Executed on November 2, 2012, at Woodland Hills, California.

20                       Kaveh Navab

                                4        Case No. CV 11-01459 YGR

**PLAINTIFF'S EXPERT DISCLOSURES**

*June Elaine Sylvester v. County of Del Norte, et al.*
USDC - Northern District of California
Case No.: Case No. CV 11-01459 YGR

**William F. Mitchell**
**John M. Vrieze**
MITCHELL BRISSO DELANEY & VRIEZE
814 Seventh Street
P.O. Drawer 1008
Eureka, CA 95502
Telephone:     (707) 443-5643
Facsimile:     (707) 444-9586
E-Mail:         wmitchell@mitchelllawfirm.com
                jvrieze@mitchelllawfirm.com
                kradford@mitchelllawfirm.com
                jmclaughlin@mitchelllawfirm.com
                mharris@mitchelllawfirm.com

*Attorneys for Defendant COUNTY OF DEL NORTE,
ALLEN DUBREUIL, and FRANK VILLAREAL*

**Mildred K. O'Linn**
MANNING & KASS, ELLROD, RAMIREZ TRESTER
801 South Figueroa Street
15th Floor at 801 Tower
Los Angeles, CA 90017
Telephone:     (213) 624-6900
Facsimile:     (213) 624-6999
E-Mail:         mko@manningllp.com
                dxf@mmker.com

**Craig A. Livingston**
LIVINGSTON LAW FIRM
1600 South Main Street, Suite 280
Walnut Creek, CA 94596
Telephone:     (925) 952-9880
Facsimile:     (925) 952-9881
E-Mail:         clivingston@livingstonlawyers.com
                cvanderputten@livingstonlawyers.com

**Holly Gibeaut**
**Isaiah Fields**
TASER International, Inc
17800 N. 85th Street
Scottsdale, AZ 85255
Telephone:     (480) 502-6280
Facsimile:     (480) 905-2027
E-Mail:         holly@taser.com
                Isaiah@taser.com
                legal@taser.com

*Attorneys for Defendant TASER INTERNATIONAL, INC.*

**EXHIBIT "A"**

# Roger Clark

## Police Procedures Consultant, Inc.

10207 Molino Road. Santee, CA 92071
Phone: (208) 351-2458, Fax: (619) 258-0045
rclark9314@aol.com
November 2, 2012

Mr. Dale K. Galipo, Esq.
The Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367

**Regarding:   *June Elane Sylvester, v. County of Del Norte, et al.  USDC Case No. CV-11-01459 YGR*.**

Dear Mr. Galipo:

Thank you for retaining me to evaluate the June 22, 2010 incident involving Del Norte County Sheriff's Sergeant Allen Dubreuil and Deputy Frank Villareal and the death of Mr. Daniel Sylvester.  Pursuant to the requirements of Rule 26, I have studied the investigative reports, audio recordings, photographs, Taser download data, deposition transcripts, and other material (as listed below) regarding this case.  I am advised that additional deposition transcripts are pending.  Please be advised that when the additional data is obtained that it is likely that a supplementary report will be necessary.

## Material Reviewed:

1.    Plaintiffs' Complaint.

2.    Court's Protective Order.

3.    Documents produced (investigative reports, interviews, etc), Bates stamped 000001 – 000394.

4.    Statement of Sergeant Allen Dubreuil.

5.    Statement of Deputy Frank Villareal.

6.    Witness Interview Statements.

7.    Photos of Scene.

8.    Autopsy Report.

9.    Deposition transcript of Ms. June Elaine Sylvester taken July 24, 2012.

10.   Deposition of Deputy Frank Villareal taken April 6, 2012.

11.   Deposition of Sergeant Allen Dubreuil taken October 18, 2012.

12.   Deposition of Deputy Daniel Schkneck taken October 25, 2012.

13.   Taser download data.

14.   9-1-1 call.

15.   Dispatch recording.

16.   California POST Basic Learning Domains as Follows:
      a.   Learning Domain #1: "Leadership, Professionalism & Ethics."
      b.   Learning Domain #2: "Criminal Justice System."
      c.   Learning Domain #3: "Policing in the Community."
      d.   Learning Domain #5: "Introduction to Criminal Law."
      e.   Learning Domain #15: "Laws of Arrest."
      f.   Learning Domain #16: "Search and Seizure."
      g.   Learning Domain #20: "Use of Force."
      h.   Learning Domain #33: "Arrest Methods/Defensive Tactics."
      I.   Learning Domain #34: "First Aid and CPR."
      j.   Learning Domain #36: "Information Systems."
      k.   Learning Domain #37: "People with Disabilities."

17.   *Conducted Energy Devices: Development of Standards for Consistency and Guidance.* U.S. Department of Justice Office of Community Oriented Policing Services and Police Executive Research Forum. Washington, D.C., 2006.

18.      Additional TASER International Training Materials, including certification lessons.

19.      <u>Columbia Human Rights Law Review,</u> "Unreasonable Seizures of Unreasonable People: Defining the Totality of Circumstances Relevant to Assessing the Police Use of Force Against Emotionally Disturbed People," by Professor Michael Avery, Spring, 2003.

20.      Penal Code Section 13515.25.

21.      Overview of the incident scene via the internet.

**Overview of Events:**

Mr. Daniel James Sylvester was born on April 2, 1975 and died on June 22, 2010. At the time of his death, he was 35 years old. In the period leading up to his death, Daniel Sylvester stood 6' 2" and weighed 300 pounds. He had been diagnosed with schizophrenia, and had been taking the anti-psychotic, anti-bipolar drug, Geodon.

Because the Geodon medication appeared to be causing Daniel Sylvester to gain weight, his doctors considered prescribing different medications. Approximately two weeks before his death, his medication was changed. Unfortunately, the medication change caused a change in Daniel Sylvester's personality for the worse, and he began to exhibit symptoms of paranoia and schizophrenia.

Early in the morning of June 22, 2010, Daniel Sylvester woke up yelling and exhibiting paranoid and schizophrenic behavior. His mother, Ms June Sylvester, and all other occupants left the house. June Sylvester tried calling a number of mental health agencies, doctors, and hotlines, but there was nobody able to help. She wanted Daniel Sylvester to be seen by a doctor who could convince him to take his old medication. When no help was forthcoming from any other agency, she called 9-1-1.

In the 9-1-1 call, June Sylvester stated, "Okay I am waiting for the Mental Health place to open at 8:00 because my son is schizophrenic and they changed his medication. I think it is what is making him so angry right now but I am basically scared to even go back in the house because he was yelling at my son and my son's girlfriend so much. They told me at the Mental Health that if he gets like this like angry or dangerous to himself or others to call the police here. I just don't know what to do. I know that it's the change of his

Page 3 of 18

medicine. I told them over there at the Mental Health place that he is different since they changed his medicine. They had him go back in but they gave him the same medicine that he is taking right now so it is the medicine he is taking. Before, when he was on the Risperdal he was not like this at all. He was kind. He was not like this at all, yelling." It is important to note here that June made it clear during the 911 call that the entire household had left the scene and that there were no other persons in the house

Del Norte County Sheriff's Office (DNCSO) Sergeant Allen Dubreuil and Deputy Frank Joe Villareal were dispatched to the house. Before leaving the station, Villareal signed out a Taser.

When Dubreuil and Villareal arrived at the house, June and Daniel were standing outside. They spoke briefly with June Sylvester. Daniel Sylvester (also outside) was standing next to a sliding glass door. Dubreuil and Villareal then contacted him. Daniel was not armed with any weapon, was not assaultive or combative and his actions were completely consistent with a person suffering from mental illness and who was simply trying to avoid the deputies because of fear or shame (a common circumstance with mental illness). The record states that Daniel stated in a normal voice that they (the deputies) were scaring him, and that he was scared. Daniel is quoted as stating, "you are scaring me and I want you to go away."

Sergeant Dubreuil and Deputy Villareal asked June if there was anybody in the house. June said no, there was nobody else in the house. Dubreuil and Villareal then said they wanted to come in the house and see. June Sylvester again said there was nobody else in the house. (It is uncontested in the record that June never gave either Dubreuil or Villareal permission to enter the residence.) Daniel Sylvester also stated, "I don't want you in the house," and then entered the house through the sliding glass door. Daniel Sylvester shut the sliding glass door. Dubreuil and Villareal responded by forcing open the door and announcing that they were going to tase Daniel Sylvester. There was never any permission given to Dubreuil and Villereal to enter the house.

The testimony of the witnesses differ as to what happened next. June Sylvester states that immediately after the officers entered the house, she heard the signature sound of the taser being deployed. This suggests that the officers attempted to tase Daniel Sylvester "preemptively," in order to secure compliance. Dubreuil and Villareal, for their parts, claim that after they entered, Daniel Sylvester became calm, sat down in a chair, and then suddenly jumped up and punched Dubreuil without any provocation whatsoever.

Two taser cartridges were used. The statements of Dubreuil and Villareal differ as to the circumstances of the different deployments. Dubreuil and Villareal state that the first

cartridge was deployed but was not effective, after which Daniel Sylvester, Dubreuil and Villareal engaged in a scuffle. At some point during the scuffle, Villareal replaced the Taser cartridge and fired it again at Daniel Sylvester.

The second pair of darts had a wide spread. One imbedded into Daniel's chest and the other into his cheek. Dubreuil said that the second Taser cartridge was effective and caused Daniel to fall to the ground, and that Villareal then took his gun out and told the decedent to stay on the ground, or he would shoot him. Villareal on the other hand has testified that the second deployment had no effect on Daniel, and that Daniel only went to the ground after Villareal took his gun out and told him he would shoot him if he did not go to ground.

A taser download indicates that the taser was activated 10 times during the incident as follows:

| Number | Time | Duration (seconds) | Time Between Activations (seconds) |
|--------|------|--------------------|-----------------------------------|
| 1 | 07:08:28 | 2 | 2 |
| 2 | 07:08:32 | 2 | 0 |
| 3 | 07:08:32 | 1 | 9 |
| 4 | 07:08:46 | 5 | 4 |
| 5 | 07:08:55 | 5 | 6 |
| 6 | 07:09:06 | 5 | 2 |
| 7 | 07:09:14 | 6 | 1 |
| 8 | 07:09:21 | 6 | 2 |
| 9 | 07:09:28 | 5 | 1 |
| 10 | 07:09:34 | 5 | - |
| | **Total** | 42 | |

Sergeant Dubreuil stated that it felt like it took "forever" to change the cartridge in the taser. Accordingly, the most likely time for that change to have taken place was between the third and fourth deployments, during which there is a 9-second gap.

If the taser was fired as soon as the officers entered the house, and if the taser cartridge was replaced between the third and fourth deployments above, and if the fourth deployment was effective, then the scuffle between Daniel Sylvester and the officers lasted from 07:08:28 to 7:08:41, or no more than 13 seconds.

From 7:08:41 to 7:09:34, the taser was activated seven times. During that 54 second period, Daniel Sylvester was being tased for a total of 37 seconds.

Page 5 of 18

After the tasering stopped, June Sylvester came into the house and said, "Oh my God, You killed him with a Taser!"

## Opinions Thus Far:

1.  Throughout the country, law enforcement officers are trained regarding the methods and means of response and investigation into calls for assistance with mentally ill subjects as are described above and are required to avoid excessive and unnecessary force. Sergeant Dubreuil and Deputy Villareal appear in this incident to have failed in their duty to utilize these methods and follow these standards. Rather, their response and use of force appears in this incident as grossly unjustified, excessive and unnecessary in the totality of the circumstances confronting them, and includes their collective failure to abide by POST standards, and law (as taught by POST).

2.  Reasonably trained officers are taught that the use of all police authority must occur either by voluntary consent or under the color of law. Any reasonably trained officer, including Sergeant Dubreuil and Deputy Villareal, confronted with this set of facts would know that their entry into Daniel's residence without his or his mothers' consent was not reasonable nor authorized under the color of law, and would be understood by a reasonably trained police officer that without consent, their entry would be a violation of Daniel's and June's constitutional rights. Their sudden and abrupt forced entry into the residence was also contrary to the POST standards specified in Learning Domain 37 regarding police contacts with mentally ill persons. Sergeant Dubreuil and Deputy Villareal should have remained outside the residence absent an expressed consent to enter. In my opinion no exception to Daniel's or June's constitutional rights is evident in this set of facts.

3.  There is nothing in the record to indicate that upon their arrival, Daniel posed a credible threat to either Sergeant Dubreuil and Deputy Villareal. He was not threatening, assaultive or combative to either officer, he had no weapon in his possession, and he had not uttered any threats to anyone present. Upon their arrival, Daniel's behavior at his residence did not justify the use of any physical force. Rather, both officers failed to use the required more reasonable (and

less forceful and painful methods) methods when dealing with Daniel - including simply leaving him alone. Their use of a Taser weapon in this set of facts was exceptionally dangerous and reckless and beyond Daniel's ability to control or mitigate.

4.   Deputy Villareal did not follow the tactical guidelines, required of every Basic POST certified law enforcement officer, when he used a Taser against Daniel. His failure to follow Basic POST procedure caused Daniel to endure unnecessary pain and suffering. Sergeant Dubreuil and Deputy Villareal addressed the situation as if Daniel was suspected of criminal behavior. Their failure to view the situation as a medical/mentally ill issue contributed to more confusion and ultimately more aggression – simply put, their actions unjustifiably and unnecessarily exacerbated the situation.

5.   The Taser download indicates a grossly excessive and unjustified use of the Taser against Daniel. The download data documents *10 activations totaling 42 seconds (emphases added)*. Yet the officers have testified that they only applied the Taser twice. Taking the download data as true, such a gross use of the weapon was a violation of policy and law (as taught by POST). Specifically, there is evidence that Mr. Sylvester was tased six times while he was on the ground and not resisting the officers or being assaultive in any way.

6.   Of particular further concern are the huge inconsistencies in the reports of the officers, and the discrepancies between the officers' stories and the taser download. The Taser download (neutral physical evidence), taken as true, indicates false statements and reports in violation of policy and law (as taught by POST).

7.   The DNCSO provided totally inadequate training and administrative enforcement. Adequate training and administrative enforcement with respect to the risks associated with tasing an individual or with respect to dealing with people with mental illness would have prevented the gross departures of professional standards, POST training, and written policies by Sergeant Dubreuil and Deputy Villareal that occurred in this incident.

8.      The DNCSO through its chain of command appears to have endorsed the dangerous and out-of-policy decisions use of force and tactics that are connected to this incident.  As such, their collective approval of these tactics puts the general public - and especially the mentally ill – at unnecessary future risk of death and/or injury from Sergeant Dubreuil and Deputy Villareal and other personnel on the department who have been, or are now, similarly trained and/or supervised.

**Information Regarding the Taser Weapon:**

The most commonly deployed conducted energy device (CED) is manufactured by Taser International, notably the Taser M26 and X26 models.  "Taser®," developed in the 1970s by Jack Cover, is an acronym for the Thomas A. Swift Electric Rifle.  Swift was a fictional character in a 1930s series of science fiction books by Victor Appleton.  The Taser fires darts that attach to (or penetrate) a person's skin or clothing and create an incapacitating electrical current.

The Taser has evolved over the years.  In 1999, the company developed the Advanced Taser M26, which was powered by an alkaline battery and used nitrogen cartridges, rather than gunpowder, which was used in earlier models, to fire projectiles.  Shaped liked a handgun, the Advanced Taser M26 became popular with law enforcement officers.  In 2003, the company introduced the Taser X26, more compact than the Advanced Taser M26 and, according to the company, more efficient.  It is powered by a lithium battery and also uses nitrogen cartridges to fire projectiles.  These CED's deliver an electrical current that interferes with the body's neuromuscular system, temporarily incapacitating a targeted person.  They are laser-sighted and use cartridges attached to the end of the weapon's barrel.

The Taser has two modes: "probe" and "touch stun." In the probe mode, the cartridges project, through a set of wires, a pair of barbs (or darts with hooks) that attaches to clothing or penetrates the skin after the Taser is fired, delivering an electrical charge. When the barbs strike, the electrical current is sent down the wires and through the body between the two barb points.  In the touch stun mode, electrical contacts on the Taser are pressed directly onto a person and there is a similar but reduced neuromuscular effect (Donnelly et al, 2002). ( Source: *Conducted Energy Devices: Development of Standards for Consistency and Guidance.* U.S. Department of Justice Office of Community Oriented Policing Services and Police Executive Research Forum. Washington, D.C., 2006.)

## Established Professional Standards Regarding the Use of the Taser Weapon:

The International Association of Chiefs of Police, with support from the Office of Community Oriented Policing Services, the Bureau of Justice Assistance, the National Institute of Justice, and other policing organizations and associations developed and published in 2006 a defining document: *Conducted Energy Devices: Development of Standards for Consistency and Guidance.* (listed as item 26 on page 5 of this report.) Among other issues, 52 specific and necessary guidelines governing the use of the Taser weapon are listed. As such, the document expresses the accepted professional standard of care. I have noted 7 specific departures from the guidelines by Officer Esparza which, in my opinion contributed to this incident. They are stated below and identified by number in the sequence of the 52 guidelines enumerated (on pages 23 through 29 of the document) as follows:

1. CEDs should only be used against persons who are actively resisting or exhibiting active aggression, or to prevent individuals from harming themselves or others. CED's should not be used against a passive suspect.

3. When activating a CED, law enforcement officers should use it for one standard cycle and stop to evaluate the situation (a standard cycle is five seconds). If subsequent cycles are necessary, agency policy should restrict the number and duration of those cycles to the minimum activations necessary to place the subject in custody.

4. Training protocols should emphasize that multiple activations and continuous cycling of a CED appear to increase the risk of death or serious injury and should be avoided where practical.

5. Training should include recognizing the limitations of CED activation and being prepared to transition to other force options as needed.

6. That a subject is fleeing should not be the sole justification for police use of a CED. Severity of offense and other circumstances should be considered before officers' use of a CED on the fleeing subject.

18. Agencies should create stand-alone policies and training curriculum for CEDs and all less-lethal weapons, and ensure that they are integrated with the department's overall use-of-force policy.

40. Departments should not solely rely on training curriculum provided by a CED manufacturer. Agencies should ensure that manufacturers' training does not contradict their use-of-force policies and values. Agencies should ensure that their CED curriculum is integrated into their overall use-of-force systems. (*Conducted Energy Devices: Development of Standards for Consistency and Guidance.* U.S. Department of Justice Office of Community Oriented Policing Services and Police Executive Research Forum. Washington, D.C., 2006.)

In my opinion, Sergeant Dubreuil's and Deputy Villareal's departure from the standards is reflective of the custom and practice of the DNCSO to endorse the gross over-dependence on the Taser weapon when other far more reasonable and appropriate methods of force (if actually necessary) should be deployed.


## Professional Standards Regarding the Use of Force:

Early on in the POST Basic Academy, the seriousness of the unique powers imbued on Law Enforcement Officers is stressed with the required responsibility they have to use them with "great care". It is clear that there is no room for unprofessional, immature and/or hot-headed individuals in the law enforcement profession. This is best expressed in Learning Domain # 2: "Criminal Justice System:"

"The criminal justice system gives law enforcement two extraordinary powers:

1. The power of arrest and
2. The power to use deadly force.

The authority to do so does not come from the rule of an authoritarian dictator. Rather it comes from the will and consent of the people who *put their trust in law enforcement to use that power with the utmost of care and restraint.* This is why it is important to emphasize that peace officers do not confer "police powers" on themselves. These powers come to the criminal justice system from the people they serve." (Learning Domain #2: "Criminal Justice System," page 1-4. Emphasis added.)

Page 10 of 18

Additionally, POST specifies that there are a number of key factors that can affect which force option is approved and appropriate under the concept of the "totality of circumstances." In view of this incident nothing other than "Officer Presence" and "Verbal Instruction" were justified in this case. The standards in this regard are as follows (reference: POST LD # 20: "Use of Force." Page 2-5.):

POST defines four categories of behavior and a range of appropriate officer responses to gain control compliance. They are:

| | |
|---|---|
| Cooperative | All that is required here is officer presence and verbal instruction. |
| Resistive (passive and active) | Firm grip, Control holds and low levels of pain compliance. |
| Combative | Officers have the right to self defense and can use necessary tools (baton, OC spray, taser, etc.) |
| Life-threatening | Officers have the right to self defense and can respond with lethal force. |

Competent police officers are also trained at the POST Basic Academy that the "totality of the circumstances" are an important aspect in the decision to use force and that California law requires that the use of force must meet an "Objectively Reasonable" standard. The following quotes typify the training:

> "A reasonable officer is defined as an officer with similar training, experience, and background in a similar set of circumstances, who will react in a similar manner." "Unreasonable force occurs when the type, degree and duration of force employed was not necessary or appropriate."(Learning Domain #20: "Introduction to the Use of Force," page 1-4.)

Additionally, an entire chapter in POST Learning Domain #20 is devoted to the "Consequences of Unreasonable Force." Cruelty and malicious assaults are absolutely forbidden:

"**Unreasonable force** occurs when the type, degree and duration of force employed was not necessary or appropriate."

"Malicious assaults and batteries committed by peace officers constitute unlawful conduct.  When the force used is unreasonable, the officer can face criminal and civil liability, and agency disciplinary action."  (Learning Domain #20, page 6-4.)

## The Failure to Implement Proper Policy and Procedure Regarding Mentally Ill Subjects:

Policy is defined as a framework to action and all competent police administrators understand that the absence of a clearly defined policy denies any opportunity for training and results in poor tactical decisions and incorrect acts in the field.  In the police arena, such failures in the administrative chain frequently lead to injury and death.  In my opinion, this fact has never been proved more true than in this incident.

In a defining article on the subject: "Unreasonable Seizures of Unreasonable People: Defending the Totality of Circumstances Relevant to Assessing the Police Use of Force Against Emotionally Disturbed People" (listed within item II of Items Studied above), Professor Michael Avery linked the results of lack of policy and training as follows:

"Untrained officers, or those who forget or disregard their training, are far more likely to exacerbate the tensions inherent in confrontations with emotionally disturbed people are thus more likely to escalate the risk of a violent outcome."

As previously stated, the basic training materials regarding mentally disturbed persons within competent departments are consistent, and express a primary concern for the safety of all concerned.  This concern was extended to all – including the public, the responding officers, and the subject of the incident.  A centerpiece of the basic training and policies included the recognition that all mentally disturbed subjects are considered to be ill – not as a criminal suspect.  This expectation applies to this incident and includes:

A.   Dealing with the "Threat Triad" (feeling threatened, out of control and out of options).
B.   Interpersonal engagement and de-escalation (slowing down to reduce anxiety).

C.   Use of backup (reduces necessity for force).
D.   Tactical considerations (proper use of basic field tactics).
E.   Effective communication and initial response (understanding mental illness behaviors and the use of tactical communication methods).
F.   The Crisis Cycle (as anxiety increases, the subject's ability to comply decreases).
G.   Crisis Intervention Teams (the use of trained personnel to intervene).
F.   Force options (must be reasonable and suited to the situation).

## Sergeant Dubreuil's and Deputy Villareal's Overreaction In This Incident:

A key question in this case is: Why did this incident spin out control and eventually lead to the unnecessary death of an obviously mentally ill person?

A key aspect of this tragedy concerns the obvious over-reaction that occurred from the start. It must be remembered that Daniel was not a suspected felon. He had not been pursued into the house from the scene of a crime. They had no warrant to arrest Daniel for criminal conduct or to search his home. Daniel was simply a mentally disturbed man who had already calmed down prior to the arrival of the officers and expressed his fear (common for mentally ill subjects) at their presence. In my opinion, had they taken the time to follow the required tactics which would include a meaningful communication that would eventually lead to compliance and Daniel's tragic death would have been avoided.

## My Qualifications for Reviewing this Case:

My opinions are based in part on my training, professional experience and education. I am a twenty-seven year veteran of the Los Angeles County Sheriffs Department (LASD). I was hired on December 1, 1965, and I retired from active service on March 31, 1993. My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. I retired holding a California Peace Officer Standards and Training (POST) Advanced Certificate, and I am a graduate of the POST Command College (class #5).

During the course of my service with the department, I had a wide range of duties. Those duties included an 18 month assignment as a staff jail deputy and two years as an Administrator/Lieutenant in the same jail facility (Men's Central Jail). I also served on the department as a patrol officer, field supervisor, jail watch commander and administrator, station watch commander and commanding officer of investigative units. I

was a field training officer while assigned as a patrol deputy, and I trained new officers in POST and department approved patrol procedures, field investigations, apprehension techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers. Those cases included possible complaints relating to both misdemeanor and felony crimes. They frequently required follow-up investigations and interviews before the exact nature of the case could be determined. As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriffs Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer involved shootings. I was also assigned by my Department to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's Central Jail (MCJ) for a period of 18 months as a line officer. Upon my subsequent promotion to Lieutenant, I returned to the same facility approximately 10 years later. During that time I was assigned as a Jail Watch Commander, and as the Facility Training and Logistics Administrator. At the time of my assignment, the MCJ held a daily population in excess of 7,000 inmates, including a hospital, which was serviced by a staff of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I worked closely with the State of California Peace Officer Standards and Training in revamping our Reserve Academy to bring it into state compliance. This process gave me an expertise in the POST Basic curriculum. I also supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. Among other topics, I lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

Page 14 of 18

During the 1984 Olympics held in Los Angeles, I was assigned and served as the Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations Center.

During the last five and one-half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major (career) criminals. I held this position until my retirement from the Department on March 31, 1993. Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police corruption. The majority of our cases were homicide cases, including the murder of police officers. Arrests frequently occurred in dynamic circumstances including crimes in progress.

My unit also conducted major narcotics investigations including undercover narcotics buys, buy-busts, and reverse stings. We frequently deployed at the request of investigative units, such as Narcotics, which provided the initial investigative leads for our operations. These narcotics cases usually involved multiple kilogram quantities of drugs and amounts of money ranging from one hundred thousand to more than one million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations. In that regard, the unit processed under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects. Additionally, the majority of the 700 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents. From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous. Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension.

This record of excellence was accomplished through the use of proper tactics, management and supervision of personnel, training in correct apprehension methods and

adherence to the moral and ethical standards endorsed by California POST and my Department. These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel." This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert in both civil and criminal cases on police administration, police procedures, police tactics, police investigative procedures, basic evidence evaluation and shooting scene reconstruction, jail procedures and jail administration, in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Arizona, California, Texas, Colorado, Illinois, Indiana, Pennsylvania, and Washington. I have also submitted written opinions in matters before Alaska, Georgia, Idaho, Louisiana, Montana, North Carolina, Oregon and Wyoming Federal and State Courts.

I have testified before the Los Angles Police Department Board of Rights and the Los Angeles County Civil Service Commission. I have testified before the Harris County (Texas) Grand Jury. I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California. I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Accountability Project, National Lawyers Guild Convention, New Orleans, Louisiana. I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons".

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project, and the Texas Civil Rights Project (Austin, Texas). As a result of my expert testimony in <u>Border Network, et al. v. Otero County, et al.</u>, Case No. 07-cv-01045 (D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden. The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been

presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force. Blankenhorn v. City of Orange, et al., 485 F.3d 463, 485 (9th Cir. 2007).  The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations.  Torres, et al v. City of Los Angeles, et al., 540 F.3d 1031, 1042-43 (9th Cir. 2008).  The Torres case was appealed to the U.S. Supreme Court and returned for trial.  The Ninth Circuit also drew from my expert reports regarding credible threats justifying the use of force, Hayes v. County of San Diego, - F.3d -, 2011 WL 2315191 (9th Cir. 2011), and Young v. County Of Los Angeles, 2011 WL 3771183 (9th Cir. 2011).  The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, Starr v. Baca, - F.3d -, 2011 WL 2988827 (9th Cir. 2011).  The Fifth Circuit drew from my expert report regarding search and seizure, investigations and no-knock requirements in Lindsey Bishop and Carolyn Clark, v. Tony Arcuri, City of San Antonio. USDC Court of Appeals, Fifth Circuit, Case No. 11-50010, March 09, 2012.  The Ninth Circuit also drew from my expert report regarding the use of impact weapons (PepperBall) on civilians in Nelson v. City of Davis, __ F.3d __, 2012 U.S. App. LEXIS 14140 (9th Cir. 2012).

The California Court of Appeal (Second Appellate District) drew in part from my expert report regarding search warrant service, Macias v. County of Los Angeles, 144 Cal. App.4th 313, 50 Cal. Rptr.3d 364 (2006).

On February 10, 1989, I was personally commended at the Los Angeles County Hall of Administration by United States Attorney General, the Honorable Edwin Meese III, for my work to establish California Penal Code Section 311.11 (forbidding the Possession of Child Pornography).  On February 22, 1993 (at the time of my retirement), Mr. Meese presented a second personal commendation for the success of this critical 5 year effort to bring this law into effect.

I have been found competent by both Federal and State Courts to render opinions as to the duties and responsibilities of police officers regarding their individual and collective responsibilities as occurred in this case.  A number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement I have become an expert in the features and the use of TASER International's products, including the Model M26 and Model X26 ECDs.  I own each, along with the download software.  I have reviewed all the TASER training materials and

am familiar with the risks and tactics associated with these potentially lethal devices. I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage. Two published examples are Lee v. Nashville, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and Heston v. City of Salinas, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007). There are many others.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert.

I declare under penalty of perjury that the foregoing is true and correct. Executed November 2, 2012, at Santee, California.

Roger A. Clark

ROGER A. CLARK
*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

### Police Procedures Consultant (self employed)
April 1, 1993 to Present................................................................. **19 years**

I have been certified by Federal and State courts as expert in jail and police procedures in Federal and State Courts.  I select my cases carefully and have consulted in approximately 942 cases thus far since my retirement from the Los Angeles County Sheriff's Department.

### Substitute Teacher, Madison School District
August 1994 to 2003........................................................................ **9 years**

I substitute teach at all levels in the school district (elementary to high school).  As a volunteer, I wrote and managed a $85,000.00 federal grant for our Central High School.  This grant is in its sixth year and has generated $510,000.00 for the school.

### District Liaison, State of Idaho Department of Juvenile Corrections
August 1, 1995 to March 1, 1997.........................................**1 year, 7 months**

I represented the new Department of Juvenile Corrections to the ten counties in the Seventh Judicial District.  As such, I worked closely with Probation Officers, County Commissioners, Judges, other state agencies, private care providers, etc. in the implementation of the new Idaho Juvenile Corrections Act of 1995.  I wrote or participated in the writing of several federal grants for the District.  I conducted training - both formal and informal - and developed a series of new therapy programs for juveniles with private care providers.  I also served as the Director of the Detention Center and the State Placement Coordinator during this time.

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993................................**27 years 4 months**

**Note:** In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn and 3,000 civilian personnel and a daily County Jail inmate population of 23,000.

**Service as a Lieutenant (15 Years, 0 Months):**

**1. Field Operations Region I**
    **NORSAT**                          11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and arrest major (career) criminal offenders. This unit was designed as a multijurisdictional effort for the cities in the northern region of Los Angeles County. The command consisted of four (4) Sergeants, seventeen (17) Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3) civilian employees. The 1992 budget set at $1.5 million. The arrest rate averaged 500 career criminal arrests per year with a 97% conviction rate and no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

- Increase in participating police agencies.
- Direct participation with corporate (private) agencies.
- Formation of a reserve and volunteer unit.
- Establishment of NORSAT Foundation private funding.
- Computerization of the unit.
- Promotion of fourteen personnel.
- Fleet expansion from 13 to 28 vehicles (donated).
- Formation of the DEA Valley Task Force.
- Field Operations Directive 89-3.

**2.    Executive Offices**
    **Reserve Forces Bureau**      05/01/84 to 11/15/87   **42 months**

I was the administrative officer to a specialized bureau responsible for coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

-2-

volunteers, and 450 law enforcement explorer scouts.  The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

- Total restructure of the Academy training process for reserve Deputies.
- Implementation of upgrade programs to move lower level reserves to level I status.
- Departmental Reserve Certification procedures.
- Annual leadership seminar.
- The Reserve News, a nationally recognized police magazine.
- Computerization of the Bureau.


3.   **Field Operations Region I**
     **Crescenta Valley Station**     04/01/80 to 05/01/84  **49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

- **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
- **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
- **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
- **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

- Negotiation of an enhanced city contract (at a savings to the City).
- Formation of a volunteer community support group.
- Development and implementation of an integrated community emergency response plan.
- High School undercover narcotics operation.
- Restructure of the Station Detective Bureau.
- The annual station picnic, which was effective in boosting station morale.

**4.     Custody Division**
**        Central Jail**          04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of
California, with a daily inmate population of seven thousand (7,000), an
assigned staff of six hundred (600), and two hundred (200) civilian personnel.
My service at this command was equally divided into two major assignments:

•     Training and Logistics Lieutenant (04/01/79 to 04/01/80).
•     Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

•     "Hot Fire" Training program, which is now a State (POST) mandated
      training module for all custody personnel throughout California.
•     The "Defend in Place" fire safety operational plan for jail facilities.
•     New fire safety specifications for jail bedding and mattresses.
•     The development of fire safe jail mattress material.
•     The development of a facility emergency response plan.
•     The computerization of training, timekeeping, and scheduling for the
      facility (800 sworn and 200 civilian personnel).
•     "Spouse day at CJ"--A program for spouses of employees.

**Service as a Sergeant (6 Years, 4 Months):**

**5.     Administrative Division**
**        Federal Surplus Property**   01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my
previous assignment (Emergency Operations Bureau).  The unit provides
millions of dollars in free federal excess and surplus food and property from
clothing to heavy equipment and aircraft to the department each year.  I am
very proud of this contribution to the Department.

**6.     Patrol Division**
**        Emergency Operations**    02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the
activities of the Department's planning   unit with emergency operations
planning and preparation.  I was assigned as the Personnel and Logistics
Sergeant.

-4-

Significant contributions while assigned at this command are:

- Formation of a new County Emergency Operations Center.
- Participation in the 1974 Federal earthquake studies of Los Angeles County.
- Development of the Department's specialized Field Command Post equipment.
- Development of the Department's Field Booking Team.

**7.     Patrol Division
        Civil Defense Bureau**       12/01/73 to 02/01/74  **02 months**

I was assigned to this unit to facilitate the orderly transition into the new Emergency Operations Bureau.

**8.     Patrol Division
        San Dimas Station**       12/12/72 to 12/01/73  **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently served as the Watch Commander.

**9.     Technical Serviced Division
        Communications Bureau**     12/01/71 to 12/12/72  **12 months**

I served as the Watch Commander in The Sheriff's Department's old radio room located at the Hall of Justice, and assisted in the transition to the existing communications facility.

**Service as a Deputy (6 Years, 0 Months):**

**10.    Patrol Division
        San Dimas Station
        Detective Bureau**       01/01/70 to 12/01/71  **23 months**

I served as a Station Detective assigned to the evening watch.  I handled the first response to all crimes requiring investigations.  I processed all evening juvenile matters, prepared criminal complaints and juvenile petitions.

-5-

11.    **Patrol Division**
       **San Dimas Station Patrol**    01/29/68 to 01/01/70  **24 months**

I performed all duties assigned to Station Patrol:  Jailer, Desk, Watch Deputy, Patrol, and Traffic.

12.    **Technical Services Division**
       **Transportation Bureau**    11/01/67 to 01/29/68  **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my assignment to a Patrol Station.

13.    **Custody Division**
       **Central Jail**             05/06/66 to 11/01/67  **18 months**

I returned to my previous assignment at the Central Jail after graduation from the Academy.  I performed all aspects of a Custody Deputy i.e. Module Officer, Prowler, Control Booth, High Power, etc.

14.    **Administrative Division**
       **Academy**                  01/17/66 to 05/06/66  **04 months**

I was a Sheriff's trainee assigned to Class #110.

15.    **Custody Division**
       **Central Jail**             12/01/65 to 01/17/66  **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the street" Deputy Sheriff.

## DEGREES AND CERTIFICATION

| | | |
|---|---|---|
| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

-6-

# Roger A. Clark

Police Procedures Consultant, Inc.
10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax: (619) 258-0045
rclark9314@aol.com
November 2, 2012

Mr. Dale K. Galipo, Esq.
The Law Offices of Dale K. Galipo
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367

**Regarding:**    *June Elane Sylvester, v. County of Del Norte, et al.  USDC Case No. CV-11-01459 YGR*.

Dear Mr. Galipo:

My Fee Schedule is as follows:

• Travel expenses as actually incurred, such as: lodging, reasonable meals, and flight/driving costs from San Diego, California to the location of the case.

• Travel time at the rate of $25.00 per hour.

• All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $150.00 per hour.

• All testimony (either at trial or deposition) at $300.00 per hour, with a two hour minimum required.

• A retainer fee of $2,500.00 when initially retained will be used against the above listed fees.  Subsequent billings at the rates specified.

There is no formal contract required.  My Federal Tax ID Number is **72-1576857.**

Sincerely,

Roger A. Clark

# Roger Clark

Police Procedures Consultant, Inc.
10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  Fax (619) 258-0045
rclark9314@aol.com

**LIST OF SWORN TESTIMONY**
**October 20, 2008 to October 16, 2012**
(Revised October 26, 2012)

**Deposition:**  October 20, 2008, Abhinav Bhatnagar v. Contra Costa County, et al, USDC Case No. 3:07-CV-02669 (CRB).
Client Attorneys:
Ms. Jenny Huang, Attorney at Law, Ms. Sarita I. Ordonez, Attorney at Law, Justice First, LLP, 2831 Telegraph Avenue, Oakland, CA 94609.  Phone: (510) 628-0695.

**Trial:** October 22, 2008, People v. Oscar Mendez, Superior Court, State of California (County of Orange), Case No. 06CC03200.
Client Attorneys:
Mr. John E. Sweeney, Attorney at Law, Ms. Angela Powell, Attorney at Law, Law Offices of John Sweeney, 315 South Beverly Drive, Suite 305, Beverly Hills, CA 90102.  Phone: (310) 277-9595.

**Deposition:** October 28, 2008, Alicia Unger, v. City of Los Angeles, et al, USDC Case No. CV 08-02139 SVW (Ctx).
Client Attorney:
Luis A. Carrillo, Attorney at Law, The Law Offices of Carrillo and Perez, 625 Fair Oaks Avenue, Suite 180, South Pasadena, CA 91030.  Phone: (626) 799-9375.

**Trial:** October 30, 2008, Wanda Mitchell, et al, v. County of Riverside, et al, USDC Case No. ED CV 07-00419 VAP (OP).
Client Attorney:
Mr. Carl E. Douglas, Attorney at Law, 315 South Beverly Drive, Suite 305, Beverly Hills, CA 90102.  Phone: (310) 277-9595.

**Deposition**: November 11, 2008 (part 1), and December 29, 2008 (part 2), Emmanuel Adebayo, v. Metropolitan Transit System, et al, Superior Court State of California (San Diego County), Case No. 37-2007-00071474 CU-PO-CTL.

Client Attorney:
Mr. Alvin M. Gomez, Attorney at Law, Gomez Law Group, 8910 University Center Lane, Suite
550, San Diego, CA 92122.  Phone: (858) 552-0000.


**Deposition:** November 15, 2008.  Gilbert Espinoza, et al, v County of San Bernardino, et al,
USDC Case No. EDCV 07-00812 VAP (JCRx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank
Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** November 24, 2008.  Susan Adams, et al, v. Deputy Michael Nocon, et al, USDC
Case No. 2: 07-CV-2083 FCD EFB.
Client Attorney:
Mr. Herman Franck, Attorney at Law, Franck & Associates, Attorneys at Law, 1801 7th Street,
First Floor, Suite 150, Sacramento, CA 95811.  Phone: (916) 256-6266.


**Trial:**  December 3, 2008.  Miguel Ortega, et al, v. City of Oakland, et al, USDC Case No. C-07-
02659 JCS.
Client Attorneys:
Mr. Steven R. Jacobsen, Attorney at Law, and Ms. Brenda D. Posada, Attorney at Law, Law
Offices of Steven R. Jacobsen, 901 Clay Street, Oakland, CA 94607.  Phone: (510) 465-8259.


**Trial:** December 4, 2008.  Tris Corona, v. City of Long Beach, et al.  Superior Court, State of
California (Los Angeles County), Case No. NC039255.
Client Attorney:
James F. Rumm, Attorney at Law, Law Offices of Federico C. Sayre, 900 North Broadway, 4th
Floor, Santa Ana, CA 92701.  Phone: (714) 550-9117.


**Deposition:**  December 22, 2008.  Zameer Riaz Azam v. Officer M. Johnson.  USDC Case No.
C-05-1858 MHP (pr).
Client Attorney:
Mr. Brook Dooley, Attorney at Law, Keker & Van Nest, L.L.P., 710 Sansome Street, San
Francisco, CA, 94111-1729.  Phone: (415) 391-5400.


**Deposition:**  December 23, 2008.  Karene Beecham and Karena Crankson, v. City of West
Sacramento, et al, USDC Case No. 2:07-CV-01115 LEW EFB.
Client Attorneys:

Mrs. Julia Sherwin, Attorney at Law, Mr. Michael J. Haddad, Attorney at Law, HADDAD & SHERWIN, 505 Seventeenth Street, Oakland , CA 94612.  Phone: (510) 452-5500.

**Trial:**  January 7 & 8, 2009.  Aaron Roberts, et al, v. City of Hermosa Beach, et al, USDC Case No. CV - 07-0612 AHM (SHx).
Client Attorney:
Mr. Scott Alan Burroughs, Attorney at Law, DONIGER LAW FIRM APC, 300 Corporate Pointe, Suite 355, Culver City, CA 90230.  Phone: (310) 590-1820.

**Trial:**  January 9, 2009, Abhinav Bhatnagar v. Contra Costa County, et al, USDC Case No. 3:07-CV-02669 (CRB).
Client Attorneys:
Ms. Jenny Huang, Attorney at Law, Ms. Sarita I. Ordonez, Attorney at Law, Justice First, LLP, 2831 Telegraph Avenue, Oakland, CA 94609.  Phone: (510) 628-0695.

**Deposition**: January 16, 2009.  Mary Rodriguez and Anthony Castillo, v. City of Los Angeles, et al.  USDC Case No. CV-07-07744 JWJ.
Client Attorney:
Mr. Eduardo Madrid, Attorney at Law, The Madrid Law Firm, El Central Real Plaza, 12612 Central Avenue, Chino, CA 91710.  Phone: (909) 628-0068.

**Trial:**  January 20, 2009.  Emmanuel Adebayo, v. Metropolitan Transit System, et al, Superior Court State of California (San Diego County), Case No. 37-2007-00071474 CU-PO-CTL.
Client Attorney:
Mr. Alvin M. Gomez, Attorney at Law, Gomez Law Group, 8910 University Center Lane, Suite 550, San Diego, CA 92122.  Phone: (858) 552-0000.

**Deposition:**  January 23, 2009.  Delano Yanes, v. Maricopa County, et al.  Superior Court, State of Arizona (Maricopa County), Case No. CV 2007 – 017937
Client Attorney:
Mr. Joel B. Robbins, Attorney at Law, Robbins & Curtin, p.l.l.c., 301 East Bethany Home Road, Suite B-100, Phoenix, AZ 85012.  Phone: (602) 285-0100.

**Deposition:**  January 27, 2009.  Greg Hall v. County of Orange, et al.  Superior Court (County of Orange), State of California, Case No. 05CC11020.
Client Attorney:

Ralph M. Rios, attorney at Law, RIOS & KING, 36 West Colorado Boulevard, Suite 301, Pasadena, CA 91105.  Phone: (626) 583-1100.

**Deposition:**  January 29, 2009.  A.D., A Minor, et al, v. State of California, et al.   USDC Case No. C-07-5483.
Client Attorney:
Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.

**Deposition:**  January 30, 2009.  Gregory Oliver, II, v. City and County of San Francisco, et al., USDC Case No. C07-02460 JL.
Client Attorney:
Mr. Ben Nisenbaum, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Trial**:  February 5, 2009.  Larry Moore, et al, v. County of San Bernardino, et al, USDC Case No. EDCV 07-00699 SGL (JCRX).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:**  February 6, 2009.  Gerri Colton, v County of Orange, et al.  USDC Case No. SACV07-1101 CJC (Anx).
Client Attorneys:
Mr. Peter M. Williamson, Attorney at Law, and Mr. Todd Krauss, Attorney at Law, Williamson & Krauss, 18801 Ventura Blvd. Suite # 206, Tarzana, CA 91356.  Phone: (818) 344-4000.

**Trial**:  February 10, 2009 and February 11, 2009.  Hugo Vanlid Sarmiento v. Orange County, et al.  USDC Case No. ASCV06-0586 DOC (Anx).
Client Attorney:
Mr. Robert Mann, and Mr. Donald Cook, Attorneys at Law.  The Law Offices of Robert Mann and Donald W. Cook.  3435 Wilshire Boulevard, Suite 2900, Los Angeles, CA 90010.  Phone: (213) 252-9444.

**Trial:**  February 19, 2009.  Zameer Riaz Azam v. Officer M. Johnson.  USDC Case No. C-05-1858 MHP (pr).
Client Attorney:
Mr. Brook Dooley, Attorney at Law, Keker & Van Nest, L.L.P., 710 Sansome Street, San Francisco, CA, 94111-1729.  Phone: (415) 391-5400.

**Deposition:** February 26, 2009.  Teresa Diaz, et al. v. City of Los Angeles, et al.  Superior Court (Los Angeles County), State of California Case No. BC 362083.
Client Attorneys:
Mr. David B. Bobrosky, Attorney at Law, and Mr. Andrew L. Shapiro, Attorney at Law, The Law Firm of Lewitt Hackman, 16633 Ventura Boulevard, 11th Floor, Encino, CA 91436.  Phone: (818) 907-3266.


**Deposition:** February 27, 2009.  Sergio Lopez, et al, v. Chula Vista Police Department, et al.  USDC Case No. 07-CV-01272 WQH BLM.
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.


**Deposition:**  March 3, 2009.  Georgia Miller, et al,  v. City of Los Angeles, et al.  USDC Case No. EDCV 07-806 VAP (CTx).
Client Attorney:
Mr. John Burton, Esq. Law Offices of John Burton, 414 South Marengo Avenue, Pasadena, CA 91101.  Phone: (626)449-8300.


**Trial:** March 4, 2009.  Charles Dirks, et al, v. County of Los Angeles, et al.  USDC Case No: CV07-2664-GAF (FMOx).
Client Attorneys:
Mr. Joe H. Freeman, Attorney at Law, Joe Freeman & Associates, 7337 Beckford Avenue, Reseda, CA 91335.  Phone:  (818) 996-2702.
Mr. Saul Reiss, Attorney at Law, Law Offices of Saul Reiss, 2800 28th Street, Suite 328, Santa Monica, CA 90405.  Phone: (310) 450-2888.


**Deposition:** March 6, 2009.  Joshua David Legere, v. County of Los Angeles, et al.  USDC Case No. C-08-04386 FMC (AGRx).
Client Attorney:
Mr. Joseph Y. Avrahamy, Attorney at Law, The Law Office of Joseph Y. Avrahamy, 16530 Ventura Boulevard, Suite 208, Encino, CA 91436.  Phone: (818) 990-1757.


**Deposition:** March 12, 2009.  Jennifer Louise Marlow, v. City of Orange, et al.  USDC Case No. CV05-6053 AG (JTLx).
Client Attorney:
Mr. Thomas E. Beck, Attorney at Law, The Beck Law Firm, 10377 Los Alamitos Blvd. Los Alamitos, CA 90720.  Phone: (562) 795-5835.

**Deposition:** March 16, 2009.  Charles Davis III., v. City of Los Angeles, et al.  Superior Court (Los Angeles County), State of California, Case No. BC 386864.
Client Attorney:
Ms. Ellen H. Ellison, Attorney at Law, The Law Office of Ellen Ellison, 3435 Wilshire Blvd., Suite 2900, Los Angeles , CA 90010-2015.  Phone: (213) 365-8225.

**Deposition:** March 20, 2009.  Jimmy D. Haws, et al., v. County of Monterey, et al.  USDC Case No. C07 02599 JF.
Client Attorneys:
Mr. Michael B. Moore, Attorney at Law, Law Office of Michael B. Moore, 100 Spear Street, Suite 1640, San Francisco, CA 94105.  Phone: (415) 956-6500.
Mr. Ralph W. Boroff, Attorney at Law, The Law Office of Ralph W. Boroff, P.C., 55 River Street, Suite 100, Santa Cruz, CA 95060.  Phone: (831) 458-0502.

**Trial**: March 25, 2009.  People v. Monica Monroe, Superior Court, State of California (San Bernardino County), Case FSB No. 802177.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Trial:** March 25, 2009, and March 26, 2009.  Gerri Colton, v County of Orange, et al.  USDC Case No. SACV07-1101 CJC (Anx).
Client Attorney:
Mr. Peter M. Williamson, Attorney at Law, and Mr. Todd Krauss, Attorney at Law, Williamson & Krauss, 18801 Ventura Blvd. Suite # 206, Tarzana, CA 91356.  Phone: (818) 344-4000.

**Trial:** March 27, 2009.  Karene Beecham and Karena Crankson, v. City of West Sacramento, et al, USDC Case No. 2:07-CV-01115 LEW EFB.
Client Attorneys:
Mrs. Julia Sherwin, Attorney at Law, Mr. Michael J. Haddad, Attorney at Law, HADDAD & SHERWIN, 505 Seventeenth Street, Oakland , CA 94612.  Phone: (510) 452-5500.

**Deposition:** April 3, 2009.  Iyana Love Jones, et al, v. City of Banning, et al., USDC Case EDCV07-00380 SGL (OPx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:** April 4, 2009. D.J.A., A Minor v. City of Chula Vista, et al. Superior Court, State of California (Los Angeles County), Case No. 37-2008 - 00069534-CU-PO-SC.
Client Attorney:
Mr. Brian T. Dunn, Attorney at Law, The Cochran Firm, 4929 Wilshire Blvd. Suite 1010, Los Angeles, CA. 90010. Phone: (323) 931-6200.


**Trial:** April 10, 2009, and April 13, 2009. Gregory Oliver, II, v. City and County of San Francisco, et al., USDC Case No. C07-02460 JL.
Client Attorneys:
Mr. John Burris, Attorney at Law and Mr. Ben Nisenbaum, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621. Phone: (510) 839-5200.


**Deposition:** April 20, 2009. Jane Doe (Oralia Orozco), et al v. City of Phoenix, et al. USDC Case No. O7-CV-1901 PHX FJM.
Client Attorney:
Mr. Joel B. Robbins, Attorney at Law, Robbins & Curtin, p.l.l.c., 301 East Bethany Home Road, Suite B-100, Phoenix, AZ 85012. Phone: (602) 285-0100.


**Trial:** April 21, 2009. Donald Clayton Fuller v. County of Orange, et al. USDC Case No. CV 04-6851 GPS (PJWx).
Client Attorneys:
Donald Cook, Attorney at Law. The Law Offices of Robert Mann and Donald W. Cook. 3435 Wilshire Boulevard, Suite 2900, Los Angeles, CA 90010. Phone: (213) 252-9444.
Mr. Olu Orange, Attorney at Law. Orange Law Offices, 6080 Center Drive, Suite 600, Los Angeles , CA 90045. Phone: (310) 815-8600.


**Trial:** April 22, 2009. D.J.A., A Minor v. City of Chula Vista, et al. Superior Court, State of California (Los Angeles County), Case No. 37-2008 - 00069534-CU-PO-SC.
Client Attorney:
Mr. Brian T. Dunn, Attorney at Law, The Cochran Firm, 4929 Wilshire Blvd. Suite 1010, Los Angeles, CA. 90010. Phone: (323) 931-6200.


**Trial:** April 23, 2009. Bud Lee, et al, v. City of Nashville, et al., USDC Case No. 3-06-00108.
Client Attorney:
Mr. Joe Bednarz, Jr., Attorney at Law, BEDNARZ & BEDNARZ, 1400 Parkway Towers, 404 James Robertson Parkway, Nashville, Tennessee 37219. Phone: (615) 256-0100.

-7-

**Trial:**  April 28, 2009.  A.D., A Minor, et al, v. State of California, et al.   USDC Case No. C-07-5483.
Client Attorney:
Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.


**Trial:**  April 29, 2009 and April 30, 2009.  Aaliyah Hindman, et al, v. City of Pasadena, et al. Superior Court, State of California (County of Los Angeles), Case No. BC369577.
Client Attorneys:
Mr. Terry Goldberg, Attorney at Law, and Mr. Bradly Gage, Attorney at Law, Goldberg & Gage, 23002 Victory Boulevard, Woodland Hills, CA 91367.  Phone: (818) 340-9252.


**Deposition:**  May 6, 2009.  Jesus Mejia, v. City of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC 37808.
Client Attorney:
Luis A. Carrillo, Attorney at Law, The Law Offices of Carrillo and Perez, 1525 Fair Oaks Avenue, South Pasadena, CA 91030.  Phone: (626) 799-9375.


**Deposition:**  May 12, 2009.  Troy Brooks, v. State of California, et al.  Superior Court, State of California (Orange County), Case No. 30-2007 – 00100478.
Client Attorney:
Ms. Jo Lynn Valoff, Attorney at Law, D'Antony, Doyle & Moore, 23025 Mill Creek Drive, Laguna Hills, CA 92653.  Phone: (949) 727-7077.


**Deposition:**  May 13, 2009.  Dodi Eklund, v. County of Orange, et al.  USDC Case No. SACV08-0009 DOC (RNBx).
Client Attorney:
Mr. Anthony Sessa, Attorney at Law, Sessa & Associates, 5001 Birch Street #1, Newport Beach, CA 92660.  Phone: (949) 851-2202.


**Deposition:**  May 19, 2009.  Sonja Gabales, et al, v. County of San Joaquen, et al.  USDC Cases No. S-07-1346 & S-07-2074 LLK/DAD.
Client Attorneys:
Mr. John Burris, Attorney at Law and Mr. Ben Nisenbaum, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Trial:** May 29, 2009.  Jennifer Louise Marlow, v. City of Orange, et al.  USDC Case No. CV05-6053 AG (JTLx).

Client Attorney:

Mr. Thomas E. Beck, Attorney at Law, The Beck Law Firm, 10377 Los Alamitos Blvd. Los Alamitos, CA 90720.  Phone: (562) 795-5835.

**Deposition:** June 4, 2009.  Susan Carnaby, et al, v. City of Houston, et al.  USDC (Texas) Case No. 4:08:cv-01366

Client Attorney:

Mr. Randall L. Kallinen, Attorney at Law, 511 Broadway Street, Houston, TX 77012.  Phone (713) 320-3785.

**Deposition:** June 9, 2009.  J.D.R., et al, v. City of Los Angeles, et al.  USDC Case No. CV 06-07466 SJO (MANx).

Client Attorney:

Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:** June 11, 2009.  Eya Dean, et al., v. City of Fresno, et al., USDC Case No. 04 CE CG 00182 AMS.

Client Attorney:

Ms. Marguerite E. Meade, Attorney at Law, The Law Office of Marguerite E. Meade, 636 Albemarle Street, El Cerrito, CA 94530.  Phone: (510) 528-1753.

**Deposition:** June 18, 2009.  Herbert Gonzalez v. County of Los Angeles, et al.  USDC Case No. CV 07-2064 FMC (Rzx).

Client Attorney:

Mr. John Burton, Esq. Law Offices of John Burton, 414 South Marengo Avenue, Pasadena, CA 91101.  Phone: (626)449-8300.

**Deposition:** July 24, 2009.  Maria Medina, et al, v. City of Menlo Park, et al.  USDC Case No. CV 08-3946 WDB.

Client Attorney:

Ms. Natalie Naugle, Attorney at Law, Morrison & Foerster, 425 Market Street, San Francisco, CA 94115-2675.  Phone: (415) 268-6630.

**Trial:** August 5, 2009.  Ronald Verdekel, et al, v. County of Los Angeles, and City of Los Angeles, et al, USDC Case No. CV 06-01518 AJG (PLAx).
Client Attorney:
Ms. Sonia Mercado, Attorney at Law, Law Offices of R. Samuel Paz, 5701 W Slauson Ave #202, Culver City, CA 90230.  Phone: (310) 410-2981.

**Deposition:** August 10, 2009.  Maria Quinones, v. U.S. Protect, et al.  USDC Case No. CV 07-1565 JM (BLM).
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.

**Deposition:** August 11, 2009.  Anthony D. Lopez, v. City of Long Beach, et al.  USDC Case No. CV 08-03666 JFW.
Client Attorney:
Mr. Hermez Moreno, Attorney at Law Moreno & Perez, A Professional Corporation, The Petroleum Building, 714 West Olympic Blvd., Suite 450, Los Angeles, CA 90015.  Phone: (213) 745-6300.

**Deposition:** August 12, 2009.  P.C. (Mauricio Cornejo), v. City of Los Angeles, et al.  USDC Case No. CV 07-3413 ABC (Ctx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Trial:** August 14, 2009.  Maria Medina, et al, v. City of Menlo Park, et al.  USDC Case No. CV 08-3946 WDB
Client Attorney:
Mr. Arturio Gonzalez, Attorney at Law, Morrison & Foerster, 755 Page Mill Road Palo Alto, CA 94304.  Phone: (650) 813-5600.

**Trial:** August 18, 2009.  Patrick Lacerda, et al, v. Jason Bell, et al.  District Court State of Nevada (Clark County) Case No. A558547 Dept. No. XVIII.
Client Attorney:
Mr. Michael V. Cristalli, Attorney at Law, Cristalli & Saggese, LTD, 732 South Sixth Street, Suite 100, Las Vegas, NV 89101.  Phone: (702) 386-2180.

**Deposition:** August 20, 2009.  Dwayne Zachary, et al, v. County of Sacramento, et al. USDC Case No. 2:06-CV-01652 MCE – PAN.
Client Attorney:
Mr. Samuel E. Brown, Attorney at Law, Law Offices of Bonner & Bonner, 1913 Bridgeway Sausalito, CA 94965.  Phone: (415) 331-3070.


**Deposition:** August 26, 2009.  Jim Maxwell et al. v. San Diego County, et al.  USDC Case No. 07-cv-2385 JAH (WMc).
Client Attorneys:
Mr. Charles G. La Bella, Attorney at Law, Mrs. Teresa M. Gillis, Attorney at Law, La Bella & McNamara, LLP, 401 West A Street, Suite 1150, San Diego, CA 92101.
Mr. Todd D. Thibodo, Attorney at Law, Law Offices of Todd D. Thibodo APC, 16133 Ventura Boulevard, Suite 580, Encino, CA 91436.


**Trial:** August 28, 2009.  Dodi Eklund, v. County of Orange, et al.  USDC Case No. SACV08-0009 DOC (RNBx).
Client Attorney:
Mr. Anthony Sessa, Attorney at Law, Sessa & Associates, 5001 Birch Street  #1, Newport Beach, CA 92660.  Phone: (949) 851-2202.


**Deposition:** September 1, 2009.  Kassim Abdulkhalik, v. City of San Diego, et al.  USDC  Case No. 08cv1515 MMA (NLS).
Client Attorney:
Ms. Teresa N. Burlison, Attorney at Law, Morrison & Foerster LLP, 755 Page Mill Road, Palo Alto, CA 94304.  Phone: (650) 813-5834.


**Deposition:** September 4, 2009.  Jolynn Jurkiewicz, et al v. Los Angeles County Fair Association, et al.  Superior Court, State of California (Los Angeles County), Case No BC 387896.
Client Attorney:
Ms. Frances M. Campbell, Attorney at Law, Law Office of Frances M. Campbell, P.C., 8050 Melrose Avenue, 2nd Floor, Los Angeles, CA 90046.  Phone:  (323) 863-5290.


**Deposition:** September 8, 2009.  Hayley Bailey, et al, v. San Joaquin County, et al.  USDC Case No. 2:08-CV-00543 LKK-KJM.
Client Attorney:
Ms. Tiffany K. O'Conner, Attorney at Law, Cardoza Law Officer, Inc., 1220 Oakland Blvd., Suite 200, Walnut Creek, CA 94596.  Phone: (925) 274-2900.

**Deposition:** September 14, 2009.  T.D.W. (Watkins), v. Riverside County, et al.  USDC Case No. CV 08-00232 CAS (JWJx).

Client Attorneys:

Mr. Andrew I. Roth, Attorney at Law, Reid & Hellyer APC, 3880 Lemon Street, Fifth Floor, Riverside, CA 92502-1300.  Phone: (951) 682-177.

Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Trial:** September 15 & 16, 2009.  Anthony D. Lopez, v. City of Long Beach, et al.  USDC Case No. CV 08-03666 JFW.

Client Attorney:

Mr. Hermez Moreno, Attorney at Law Moreno & Perez, A Professional Corporation, The Petroleum Building, 714 West Olympic Blvd., Suite 450, Los Angeles, CA 90015.  Phone: (213) 745-6300.

**Trial:** September 17, 2009.  Ramiro Garcia, Jr., et al, v. County of Stanislaus, et al.  USDC Case No. 1:07-CV-01376 LJO-SMS.

Client Attorneys:

Mr. John Burris, Attorney at Law and Mr. Ben Nisenbaum, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Trial:** September 24, 2009.  T.D.W. (Watkins), v. Riverside County, et al.  USDC Case No. CV 08-00232 CAS (JWJx).

Client Attorneys:

Mr. Andrew I. Roth, Attorney at Law, Reid & Hellyer APC, 3880 Lemon Street, Fifth Floor, Riverside, CA 92502-1300.  Phone: (951) 682-177.

Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:** September 28, 2009.  DeArmand E., A Minor, et al, v. City of Antioch, et al.  USDC Case No. C 08-01709 EMC.,

Client Attorneys:

Mr. Jivaka Candappa, Attorney at Law, 46 Shattuck Square, Suite 15, Berkeley, CA 94704.  Phone:  (510) 384-1624.

Ms. Jenny Huang, Attorney at Law, Justice First, LLP, 2831 Telegraph Avenue, Oakland, CA 94609.  Phone:  (510) 628-0695.

-12-

**Deposition:** September 29, 2009.  Michael Walker v. City of Los Angeles, et al.  USDC Case No. CV 08-047070 R (FFMC).
Client Attorneys:
Mr. John Burton, Esq., Law Offices of John Burton, 414 South Marengo Avenue, Pasadena, CA 91101.  Phone: (626)449-8300.
Ms. Maria Cavalluzzi, Esq., CAVALLUZZI & CAVALLUZZI, 9200 Sunset Blvd., Suite 807 Los Angeles, California 90069.  Phone:  (310) 246-2601.


**Deposition:** October 12, 2009.  Margaret Jurczak, v. Michael Brown, et al.  USDC Case File No. EDCV 08-00815 VAP (FMOx).
Client Attorney:
Mr. Benjamin Schonbrun, Attorney at law, Schonbrun DeSimone Seplow Harris & Hoffman LLP, 723 Ocean Front Walk, Venice, CA 90291.  Phone : (310) 396-0731.


**Deposition:** October 13, 2009.  John Macias Flores, v. Sylmar High School, et al., Superior Court (Los Angeles County), State of California Case No BC 384445.
Client Attorney:
Mr. Jeff Schwartz, Attorney at Law, Schwartz Law, P.C., 629 Camino de los Mares, Suite 203, San Clemente, CA 92673.  Phone: (888) 730-0529.


**Deposition**: October 20, 2009.Barbara Powell, v. City of San Jose, et al., USDC Case No. C08-01213-JW.  Sheretta Henderson, v. City of San Jose, et al., USDC Case No. C08-01214-JW.  Natasha Burton, v. City of San Jose, et al., Case No. C08-01215-JW.
Client Attorney:
Mr. Matt Springman, Attorney at Law, Gonzalez & Leigh, LLP, Two Shaw Alley, Third Floor, San Francisco, CA 94105.  Phone: (415) 512-2000.

**Deposition:** October 28, 2009.  Helen Kincheloe, et al, v. Chief David Caudle, City of Bertram, Texas, et al USDC (Texas), Case No. A-09-010-LY.
Client Attorney:
Mr. James C. Harrington, Director, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, TX 78741-3438.  Phone: (512) 474-5073.


**Trial:**  November 4, 2009.  Raymond Torres and Maria Elva Amador-Torres, v. City of Los Angeles, et al. USDC Case No. CV 054171 RGK (FMOx).  (Returned by US Supreme Court and 9th Circuit for retrial.)
Client Attorney:
Mr. Nelson E. Brestoff, Attorney at Law, A Professional Law Corporation, , 7701 Woodley Avenue, Suite 120, Van Nuys, CA 91406.  Phone:  (818) 787-4077.

**Trial:** November 5, 2009, and November 6, 2009.  Charles Davis III., v. City of Los Angeles, et al.  Superior Court (Los Angeles County), State of California, Case No. BC 386864.
Client Attorneys:
Mr. Mustafa Abdul-Rahman, Attorney at Law, Law Office of Mustafa Abdul-Rahman, APC, 1100 South Hope Street, Suite 103, Los Angeles, CA 90015.  (213) 550-4600.
Mr. Rami Kayyali, Attorney at Law, The Law Offices of Rami Kayyali, 12400 Wilshire Boulevard, Suite 400, Los Angeles, CA 90025.  Phone: (310) 571-3009.


**Trial:** November 6, 2009.  People v. Jacque Cedric Noel, Superior Court, State of California (Los Angeles County), Case No. NA080584.
Client Attorney:
Raffi J. Manuelian, Attorney at Law, J & M Law Firm, LLP, 555 West 5th Street 31st Floor, Los Angeles, CA 90013.  Phone: (213) 996-8463.


**Deposition:** November 9, 2009.  Delores Stringer, et al, v. City of San Pablo, et al, USDC Case No. C07-3544 MEJ.
Client Attorney:
Mr. Ben Nisenbaum, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport St., Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Deposition:** November 20, 2009.  Samuela Lavulavu, et al, v. County of Maricopa, et al. Superior Court (Maricopa County) State of Arizona Case No. CV 2008- 091389.
Client Attorney:
Mr. J. Robert Tolman, Attorney at Law, and Mr. H. Michael Wright, Attorney at Law, Law Offices of Davis Mills, PLLC, Work Address 30 West First Street, P.O. Box 15070 Mesa, AZ 85210-3115.  Phone: (480) 733-6800.


**Deposition:** November 25, 2009.  Luis Gomez, Maria Gila Gomez v. City of Torrance, et al. USDC Case No. CV07-790 ODW (SHx).
Client Attorney:
Mr. Conrad Herring, Attorney at Law, 3525 Del Mar Heights Road, Suite 305, San Diego, CA 92130.  Phone: (858) 792-1539.


**Trial:** December 7, 2009, and December 8, 2009.  John Macias Flores, v. Sylmar High School, et al., Superior Court (Los Angeles County), State of California Case No BC 384445.
Client Attorney:

-14-

Mr. Jeff Schwartz, Attorney at Law, Schwartz Law, P.C., 629 Camino de los Mares, Suite 203, San Clemente, CA 92673. Phone: (888) 730-0529.


**Deposition:** December 14, 2009. The Estate of Cody Hernandez, et al, v. The City Santa Ana, et al., USDC Case No. SA CV 07-0340.
Client Attorney:
Mr. Ralph M. Rios, RIOS & KING, 36 West Colorado Boulevard, Suite 301, Pasadena, CA 91105. Phone: (626) 583-1100.


**Trial:** December 15, 2009. Luis Gomez, Maria Gila Gomez v. City of Torrance, et al. USDC Case No. CV07-790 ODW (SHx).
Client Attorney:
Mr. Conrad Herring, Attorney at Law, 3525 Del Mar Heights Road, Suite 305, San Diego, CA 92130. Phone: (858) 792-1539.


**Deposition:** January 5, 2010. Michael Curzi, v. City of Los Angeles, et al. USDC Case No: CV08-01373GHK (Rcx).
Client Attorney:
Ms. Rebecca A. Davis-Stein, Attorney at Law, Andrew D. Stein & Associates, 470 South San Vicente Blvd., 2nd Floor, Los Angeles, CA 90048. Phone: (323) 852-1507.


**Trial:** January 5, 2010. Todd Hovey, v. City of Los Angeles, et al. USDC Case No. CV08-08139 PA (Ex).
Client Attorney:
Mr. Mauro Fiore Jr., Attorney at Law, Law Offices of Mauro Fiore, Jr., 1901 W. Pacific Ave., Suite 260, West Covina, CA 91790. Phone: (626) 856-5856.


**Trial:** January 8, 2010. Georgia Miller, et al, v. City of Los Angeles, et al. USDC Case No. EDCV 07-806 VAP (CTx).
Client Attorney:
Mr. John Burton, Esq. Law Offices of John Burton, 414 South Marengo Avenue, Pasadena, CA 91101. Phone: (626) 449-8300.


**Deposition:** January 10, 2010. Christina Sandberg, et al., v. City of Torrance et al. USDC Case No. CV08-08335 VBF (SSx).
Client Attorney:

Mr. Robert P. Damone, Attorney at Law, Glaser, Damone & Schroeder, 400 Oceangate #800, Long Beach, CA 90802-4834.  Phone: (562) 983-3130.


**Trial:**  January 11, 2010.  The Estate of Cody Hernandez, et al, v. The City Santa Ana, et al., USDC Case No. SA CV 07-0340.
Client Attorney:
Mr. Ralph M. Rios, RIOS & KING, 36 West Colorado Boulevard, Suite 301, Pasadena, CA 91105.  Phone: (626) 583-1100.


**Trial:**  January 14, 2010.  Delores Stringer, et al, v. City of San Pablo, et al, USDC Case No. C07-3544 MEJ.
Client Attorneys:
Mr. John Burris, Attorney at Law, and Mr. Ben Nisenbaum, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport St., Suite 1120, Oakland, CA 94621. Phone: (510) 839-5200.

**Deposition:** January 18, 2010.  Alice Rosas Aguilar, et al, v. County of Fresno, et al, USDC Case No. 08-CV-01201-AWI-GSA.
Client Attorneys:
Mr. Brian E. Claypool, The Claypool Law Firm, 1055 E. Colorado Blvd., 5th floor, Pasadena, California 91106.  Phone: (626) 240-4616.
Ms. Vicki I. Sarmiento, Law Offices of Vicki I. Sarmiento, 333 N. Garfield Avenue, Alhambra, California 91801.  Phone (626) 308-1171.
Mr. Dale K. Galipo, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, California 91367.  Phone: (818) 347-3333.


**Trial:**  January 27, 2010 and January 28, 2010. Yvonne Vogel, et al, v. Maricopa County, et al., USDC Case No. CV07-00819 PHX-EHC.
Client Attorney:
Mr. Joel B. Robbins, Attorney at Law, Robbins & Curtin, p.l.l.c., 301 East Bethany Home Road, Suite B-100, Phoenix, AZ 85012.  Phone: (602) 285-0100.


**Deposition:**  January 29, 2010.  Estate of Jose Raymundo Novoa Salgado, et al, v. County of San Bernardino, et al., USDC Case No. CV 08-08382 MRP.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Trial:**  February 8, 2010.  Michael Walker v. City of Los Angeles, et al.  USDC Case No. CV 08-047070 R (FFMC).

-16-

Client Attorneys:
Mr. John Burton, Esq., Law Offices of John Burton, 414 South Marengo Avenue, Pasadena, CA 91101.  Phone: (626)449-8300.
Ms. Maria Cavalluzzi, Esq., CAVALLUZZI & CAVALLUZZI, 9200 Sunset Blvd., Suite 807
Los Angeles, California 90069.  Phone:  (310) 246-2601.


**Deposition:** February 9, 2010.  Sean Francis McCloskey, et al., v. CHP Officer Michael E. Courtnier, et al.  USDC Case No: C05-04641 MMC.
Client Attoeney:
Mr. Adante Pointer, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Deposition:** February 10, 2010.  Jonathan Meas, v. City and County of San Francisco, et al.
USDC Case No. C 08 04075 PJH.
Client Attorney:
Mr. Ben Nisenbaum, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport St., Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Trial:** February 12, 2010.  J.D.R., et al, v. City of Los Angeles, et al.  Case No. CV 06-07466 SJO (MANx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** February 15, 2010.  Roger Taylor, v. City of Chula Vista, et al.  Superior Court, State of California (San Diego County), Case No. 37-2008-00072640 CU-PO-SC.
Client Attorney:
Mr. Norman M. Finkelstein, Attorney at Law, Finkelstein & Finkelstein 2372 First Avenue, San Diego, CA 92101.  Phone (619) 232-1815.


**Deposition:** February 17, 2010.  The Estate of Alan Kosakoff, et al. v. City of San Diego, et al.
USDC Case No. 08 CV 1819 IEG (NLS).
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.


**Deposition:** February 22, 2010.  631.  Gregory Jones, et al., v. County of Del Norte, et al.
USDC Case No. 08-CV-03222 CW.
Client Attorney:

Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367. Phone: (818) 347-3333.

**Deposition:** February 22, 2010. Lawrence Azevedo v. City of Fresno, et al., USDC Case No. 1:9 - CV-00375 AWI DLB.
Client Attorney:
Mr. John C. Fattahi, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367. Phone: (818) 347-3333.

**Trial:** February 25, 2010. February 27, 2009. Sergio Lopez, et al, v. Chula Vista Police Department, et al. USDC Case No. 07-CV-01272 WQH BLM.
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West "F" Street, 4th Floor, San Diego, CA 92101-6036. Phone: (619) 233-1525.

**Trial:** March 10, 2010. Adam Alarid, v. County of Los Angeles, et al. USDC Case No. CV 08-07819 CAS (Ex).
Client Attorney:
Mr. Richard Rosenstock, Attorney at Law, 1121 Paseo de Peralta, Santa Fe, NM 87501. Phone: (505) 988-5324.

**Trial:** March 11, 2010. Roger Taylor, v. City of Chula Vista, et al. Superior Court, State of California (San Diego County) Case No. 37-2008-00072640 CU-PO-SC.
Client Attorney:
Mr. Norman M. Finkelstein, Attorney at Law, Finkelstein & Finkelstein, 2372 First Avenue San Diego, CA 92101. Phone: (619) 232-1815.

**Trial:** March 18, 2010. Estate of Jose Raymundo Novoa Salgado, et al, v. County of San Bernardino, et al., USDC Case No. CV 08-08382 MRP.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367. Phone: (818) 347-3333.

**Trial:** March 19, 2010. Christina Sandberg, et al., v. City of Torrance et al. USDC Case No. CV08-08335 VBF (SSx).
Client Attorney:

Mr. Robert P. Damone, Attorney at Law, Glaser, Damone & Schroeder, 400 Oceangate #800, Long Beach, CA 90802-4834.  Phone: (562) 983-3130.

**Trial:**  March 23, 2010.  Barbara Powell, v. City of San Jose, et al., USDC Case No. C08-01213-JW.  Sheretta Henderson, v. City of San Jose, et al., USDC Case No. C08-01214-JW.  Natasha Burton, v. City of San Jose, et al., Case No. C08-01215-JW.
Client Attorney:
Mr. Matt Springman, Attorney at Law, Gonzalez & Leigh, LLP, 744 Montgomery Street, Suite 500, San Francisco, CA 94111.  Phone: (415) 912-5950.

**Deposition:**  March 25, 2010.  Ambrett Spencer, et al v. Maricopa County, et al.  Maricopa County Superior Court Case No. CV 2007-006416.
Client Attorney:
Ms. Ann E. Findling, Attorney at Law, Robbins & Curtin, p.l.l.c., 301 East Bethany Home Road, Suite B-100, Phoenix, AZ 85012.  Phone: (602) 285-0100.

**Deposition:**  April 1, 2010.  Spencer Gogue, v. City of Los Angeles, et al.  USDC Case No. CV09-02610 PSG (Ex).
Client Attorney:
Mr. Robert P. Damone, Attorney at Law, Glaser, Damone & Schroeder, 400 Oceangate #800, Long Beach, CA 90802-4834.  Phone: (562) 983-3130.

**Trial:**  April 2, 2010.  Greg Hall  v. County of Orange, et al.  Superior Court, State of California (County of Orange), Case No. 05CC11020.
Client Attorney:
Mr. Ralph M. Rios, RIOS & KING, 36 West Colorado Boulevard, Suite 301, Pasadena, CA 91105.  Phone: (626) 583-1100.

**Deposition:**  April 6, 2010.  Douglas Burns, v. City of Redwood City, et al.  USDC Case No. C-08-2995 JSW (EDL).
Client Attorneys:
Mrs. Julia Sherwin, Attorney at Law, Mr. Michael J. Haddad, Attorney at Law, HADDAD & SHERWIN, 505 Seventeenth Street, Oakland , CA 94612.  Phone: (510) 452-5500.

**Deposition:**  April 14, 2010.  Jason Price, v. County of San Bernardino, et al.  USDC Case No. CV 09-03481.
Client Attorney:

Mr. Peter Schlueter, Attorney at law, The Law Office of Peter Schlueter, 320 North E Street #210, San Bernardino, CA 92401.  Phone (909) 381-4888.


**Trial:**  April 19, 2010.  Jackie B. LeBlanc, et al. v. City of Los Angeles, et al.  Superior Court, State of California (Loa Angeles County), Case No. BC-320-940.
Client Attorney:
Mr. Humberto Guizar, Attorney at Law, Law Offices of Humberto Guizar, 3500 West Beverly Boulevard, Montebello, CA 90640-1541.  Phone: (323) 725-1151.


**Deposition:**  April 23, 2010.  Marvetia Lynn Richardson, et al, v. City of Antioch, et al.  USDC. Case No. C08-3470 JSW.
Client Attorney:
Mr. Quinton Cutlip, Attorney at Law, Meis and Associates, 100 Bush Street Suite 1800, San Francisco, CA 94104.  Phone: (415) 981-4612.


**Trial:**  April 26, 2010.  Maria Joya, v. City of Hayward, et al.  USDC Case No. C-07-04718 CRB.
Client Attorney:
Mr. Ben Nisenbaum, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Deposition:**  April 27, 2010 and May 13, 2010.  Hong Ha, v. City of Liberty Lake, et al.  USDC Case No. CV-08-382-LRS.
Client Attorney:
Mr. Larry J. Kuznetz, Attorney at Law, Powell, Kuznetz & Parker, P.S., Rock Pointe Tower, 316 W. Boone Avenue, Suite 380, Spokane, WA 99201-2346.  Phone: (509) 455-4151.


**Deposition:**  May 4, 2010.  Alan Hirschfield, et al, v. San Diego Unified Port District, et al., USDC Case No. CV 08-2103 BTM (NLS).
Client Attorneys:
Mr. Brian Edward Claypool, Attorney at Law, Claypool Law Firm, 1055 East Colorado Blvd, 5th Floor, Pasadena, CA 91106.  Phone: (626) 240-4616.
Ms. Vicki Sarmiento, Attorney at Law, 333 North Garfield Avenue, Alhambra, CA 91801. Phone: (626) 308-1171.
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:** May 5, 2010.  Frederick J. Lass, v County of Orange, et al.  USDC Case No. SACV 08-01132 JVS (Anx).
Client Attorney:
Mr. Thomas A. Avdeef, Attorney at Law, The Law Offices of Thomas A. Avdeef, 191 North Center Street, Orange, CA 92866.  Phone: (714) 288-4194.


**Deposition:** May 7, 2010.  Insook Kim (Aziz R. James), v. City of Santa Clara, et al.  USDC Case No. CV 09-0025 RS.
Client Attorney:
Mr. Brian K. Gearinger, Attorney at Law, Gearinger Law Group, 825 Van Ness Avenue, 4th Floor, San Francisco, CA 94109.  Phone (415) 440-3102.


**Deposition:** May 12, 2010.  Sieni T. Patu, v. City of Anaheim, et al.  USDC Case No. CV09-04199 RGK (Ex).
Client Attorney:
Mr. Mervyn Selwyn Lazarus, Attorney at Law, The Law Office of Mervyn Selwyn Lazarus, 4340 Campus Drive, Suite 100, Newport Beach, CA 92660.  Phone (949) 315-0102.


**Deposition:** June 1, 2010.  Johnny Silva, v. Franklin White, et al.  USDC Case No. CV 0891 JAH POR.
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.


**Deposition:** June 3, 2010.  John Derek Lagway, v. City of Conroe, et al.  USDC (Texas) Case No. 4:09
Client Attorney,
Mr. Randall L. Kallinen, Attorney at Law, The Law Office of Randall L. Kallinen, 511 Broadway Street, Houston, TX 77012.  Phone: (713) 320-3785.


**Deposition:** June 14, 2010. 673.  Kimberly A. Querry, v. Officer Smale, et al., USDC Case No. 09-CV-0215 WQH POR
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.

**Deposition:** June 21, 2010.  Siehna M. Cotton, a Minor, et al. v. City of Eureka, et al.  Case No. 08-CV-04386 SBA.

Client Attorneys:

Mr. Brian Edward Claypool, Attorney at Law, Claypool Law Firm, 1055 East Colorado Blvd, 5th Floor, Pasadena, CA 91106.  Phone: (626) 240-4616.

Ms. Vicki Sarmiento, Attorney at Law, 333 North Garfield Avenue, Alhambra, CA 91801.  Phone: (626) 308-1171.

Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** June 24, 2010.  Estate of Jesus Manzo, et al v. County of San Diego, et al.  USDC Case No. 06 CV-0060 (Wmc).

Client Attorney:

Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.


**Deposition:** June 25, 2010.  Frederick Jackson, et al. v. City of Pittsburg, et al.  USDC Case No. C09-01016 WHA.

Client Attorney:

Mr. Panos Lagos, Attorney at Law, The Law Office of Panos Lagos, 5032 Woodminster Lane Oakland, CA 94602.  Phone: (510) 530-4078.


**Deposition:** June 25, 2010.  Frederick Jackson, et al. v. City of Pittsburg, et al.  USDC Case No. C09-01016 WHA.

Client Attorney:

Mr. Panos Lagos, Attorney at Law, The Law Office of Panos Lagos, 5032 Woodminster Lane Oakland, CA 94602.  Phone: (510) 530-4078.


**Deposition:** June 28, 2010.  Ruben Garcia, v. City of Imperial, et al.  USDC Case No. 08cv2357 BTM (PCL).

Client Attorneys:

Mr. David Blair-Loy, Legal Director, ACLU Foundation of San Diego & Imperial Counties, Bank of America Building, 450 "B" Street, Suite 1420, PO Box 87131, San Diego, CA 92138-7131.  Phone: (619) 232.2121 ext. 230.

Ms. Jennifer M. Fontaine, Attorney at Law, Cooley Godward Kronish LLP, 4401 Eastgate Mall, San Diego, CA 92121-1909.  Phone: (858) 550-6143.


**Trial:** July 1, 2010.  Delano Yanes., v. Maricopa County, et al., Case No. CV2007-017937.

Client Attorney:
Mr. Joel B. Robbins, Attorney at Law, Robbins & Curtin, p.l.l.c., 301 East Bethany Home Road, Suite B-100, Phoenix, AZ 85012.  Phone: (602) 285-0100.

**Deposition:** July 7, 2010.  Andrew J. Athetis, et al, v. Town of Gilbert, et al.  USDC (Arizona) Case No. CV 09-677.  PHX NVW.
Client Attorney:
Mr. Richard T. Treon, Attorney at Law, Treon, Aguirre, Newman & Norris, 2700 North Central Avenue, Suite 1400, Phoenix, AZ 85004-1133.  Phone: (602) 285-4400.

**Deposition:** July 12, 2010.  Lindsey Bishop and Carolyn Clark, v. Tony Arcuri, et al.  USDC (Texas) Case No. SA 09-CA-0751.
Client Attorney:
Mr. Todd Batson, Attorney at Law, Texas Civil Rights Project, Michael Tigar Human Rights Center 1405 Montopolis Drive, Austin, TX 78741-3438.  Phone: (512) 474-5073.

**Trial:** July 19, 2010.  Frederick Jackson, et al. v. City of Pittsburg, et al.  USDC Case No. C09-01016 WHA.
Client Attorney:
Mr. Panos Lagos, Attorney at Law, The Law Office of Panos Lagos, 5032 Woodminster Lane Oakland, CA 94602.  Phone: (510) 530-4078.

**Trial:** July 21, 2010.  People v. Paul Ohl., Superior Court, State of California, Riverside County, Case No. Case No. SWM 089030.
Client Attorney:
Mr. Peter Schlueter, Attorney at law, The Law Office of Peter Schlueter, 320 North E Street #210, San Bernardino, CA 92401.  Phone (909) 381-4888.

**Deposition:** July 30, 2010.  Noreen Salinas, v. City of San Jose, et al.  Case No. C08-02625 RS
Client Attoeney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:**  August 5, 2010.  Jesse Johnson and Tim Horton, v. City of Antioch, et al. USDC Case No. C09-03153 EMC.
Client Attorney:
Mr. Jivaka Candappa, Attorney at Law, 180 Grand Ave. Suite 700, Oakland, CA, 94612.  Phone: (510) 628-0400.

-23-

**Deposition:** August 6, 2010.  705.  Pablo Camarillo, v. City of Maywood, et al.  USDC Case No. CV07-3469 ODW (Shx).
Client Attorneys:
Donald Cook, Attorney at Law.  The Law Offices of Robert Mann and Donald W. Cook.  3435 Wilshire Boulevard, Suite 2900, Los Angeles, CA 90010.  Phone: (213) 252-9444.
Mr. Olu Orange, Attorney at Law.  Orange Law Offices, 6080 Center Drive, Suite 600, Los Angeles , CA 90045.  Phone: (310) 815-8600.
Ms. Ellen H. Ellison, Attorney at Law, The Law Office of Ellen Ellison, 3435 Wilshire Blvd., Suite 2900, Los Angeles , CA 90010-2015.  Phone: (213) 365-8225.


**Deposition:** August 25, 2010.  Estate of Noe Rojas, et al, v. City of San Diego, et al.  USDC Case  No: 09cv0227 BEN (AJB).
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West  "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.


**Trial:** August 26, 2010.  Alice Rosas-Aguilar, v. County of Fresno, et al.  USDC Case No. 1:08 cv-01202 AWI-GSA.
Client Attorneys:
Mr. Brian Edward Claypool, Attorney at Law, Claypool Law Firm, 1055 East Colorado Blvd, 5th Floor, Pasadena, CA 91106.  Phone: (626) 240-4616.
Ms. Vicki Sarmiento, Attorney at Law, 333 North Garfield Avenue, Alhambra, CA 91801.  Phone: (626) 308-1171.
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:**  August 30, 2010.  Mary Lucero, et al, v. City of Yuma, et al.  USDC Case No. CV09-00363 PHX-DKD.
Client Attorney:
Mr. David J. Don, Attorney at Law, Law Offices of David J. Don, PLLC, 301 East Bethany Home Road, Suite B-100, Phoenix, AZ  85012.  Phone: (480) 948-1212.


**Trial:**  September 9, 2010.  Jonathan Meas, v. City and County of San Francisco, et al. USDC Case No. C 08 04075 PJH.
Client Attorneys:

-24-

Mr. Ben Nisenbaum, Attorney at Law, and Mr. Adante Pointer, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Trial:**  September 17, 2010 and September 21, 2010.  Frederick J. Lass, v County of Orange, et al.  USDC Case No. SACV 08-01132 JVS (Anx).
Client Attorney:
Mr. Thomas A. Avdeef, Attorney at Law, The Law Offices of Thomas A. Avdeef, 191 North Center Street, Orange, CA 92866.  Phone:  (714) 288-4194.


**Trial:**  September 20, 2010.  Andres Nunez, v. County of Los Angeles, et al., Superior Court, State of California (Los Angeles County), Case No. BC 333416.
Client Attorneys:
Mr. Matthew S. Mc Nicholas, Attorney at Law, and Ms. Christiana J. Smith, Attorney at Law, Mc Nicholas & Mc Nicholas LLP, 10866 Wilshire Blvd., #1400, Los Angeles, CA 90024. Phone: (310) 474-1582.


**Trial:**  September 22, 2010.  John Derek Lagway, v. City of Conroe, et al.  USDC (Texas) Case No. 4:09-CV-01732.
Client Attorney:
Mr. Randall L. Kallinen, Attorney at Law, The Law Office of Randall L. Kallinen, 511 Broadway Street, Houston, TX 77012.  Phone: (713) 320-3785.


**Deposition:**  September 27, 2010.  Valentina Arce, et al, v. City of Richmond, et al.  USDC Case No. C09-01168 JCS.
Client Attorney:
Mr. Steven R. Yourke, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Deposition:**  October 1, 2010.  Maria Irma Dela Torre v. City of Salinas, et al.  USDC Case No. C09-0626 RMW.
Client Attorneys:
Mrs. Julia Sherwin, Attorney at Law, Mr. Michael J. Haddad, Attorney at Law, HADDAD & SHERWIN, 505 Seventeenth Street, Oakland , CA 94612.  Phone: (510) 452-5500.


**Deposition:**  October 4, 2010.  Terry Hillblom, et al, v. County of Fresno, et al. USDC Case No. 1:07-CV-01467 LJO-SMS.

-25-

Client Attorney:
Ms. Patience Milrod, Attorney at law, The law Office of Patience Milrod, 844 North Van Ness
Avenue, Fresno, CA 93728.  Phone: (559) 442-3111.


**Deposition:**  October 11, 2010.  Lakesha Wright, et al., v. City of Long Beach, et al.  Superior
Court State of California (Los Angeles County) Case No. BC404505.
Client Attorneys:
Ralph E. Harrison II, Attorney at Law, The Law Office of Ralph E. Harrison II 3450 Wilshire
Boulevard, Suite 705 Los Angeles, CA 90010.  Phone (213) 616-0201.
Altus Waddell Hudson, Attorney at Law, Kidd & Hudson, 3450 Wilshire Boulevard, Suite705,
Los Angeles, CA 90010.  Phone (213) 739-1777.


**Trial:**  October 18, 2010, and October 19, 2010404.  Ruben Garcia, v. City of Imperial, et al.
USDC Case No. 08cv2357 BTM (PCL).
Client Attorneys:
Mr. David Blair-Loy, Legal Director, ACLU Foundation of San Diego & Imperial Counties,
Bank of America Building, 450 "B" Street, Suite 1420, PO Box 87131, San Diego, CA
92138-7131.  Phone: (619) 232.2121 ext. 230.
Ms. Jennifer M. Fontaine, Attorney at Law, Cooley Godward Kronish LLP, 4401 Eastgate Mall,
San Diego, CA 92121-1909.  Phone: (858) 550-6143.


**Trial:** October 26, 2010.  People v. Marco Zuniga.  Superior Court (Santa Clara County), Case
No. CC950194.
Client Attorney:
Mr. Eric Geffon, Geffon & Isger, 75 E. Santa Clara Street, Suite 295, San Jose, CA 95113.
Phone: (408) 295-3330.


**Deposition:** October 28, 2010.  Valerie Barber and Robert Hamilton, v. City of Santa Rosa, et al.
USDC Case No. CV 08-5649 MMC.
Client Attorney:
Mr. J. Wynne Herron, Attorney at Law, Herron & Herron, 18360 Sonoma Highway, Sonoma,
CA 95476.  Phone:  (707) 933-4430.


**Deposition:**  November 4, 2010.  Paul Burke, v. City of Santa Monica, et al.  USDC Case No.
CV 09-2259 MMM (PLAx).
Client Attorney:
Mr. Martin D. Holly, Esq., The Law Offices of Martin D. Holly, Pacific Corporate Towers, 222
North Sepulveda Blvd., Suite 2000, El Segundo, CA 90245.  Phone: (310) 335-2060.

-26-

**Deposition**: November 8, 2010.  Leopoldo Paz-Herrera, v. City and County of San Francisco, et al. USDC Case No. CV 09.4795 MMC.
Client Attorney:
Mr. Charles Geerhart, Attorney at Law, PAOLI & GEERHART LLP, 785 Market Street, Suite 1150. San Francisco, CA 94103.  Phone: (415) 498-2101.


**Deposition:**  December 2, 2010.  Jason A. Deats, v. County of Orange, et al. USDC Case No. CV09-6322 PSG (PJM).
Client Attorney:
Mr. Michael J. Olecki, Attorney at Law, Grodsky & Olecki LLP, 2001 Wilshire Boulevard, Suite 210, Santa Monica, CA. 90403.  Phone:  (310) 315-3009.


**Deposition:**  December 3, 2010.  Kristal Madrid, v. City of Fresno, et al.  Case No. 1:10-CV-00592-OWW-JLT.
Client Attorney:
Mr. Ben Nisenbaum, Attorney at Law, The Law Offices of John L. Burris, Airport Corporate Centre, 7677 Oakport St., Suite 1120, Oakland, CA 94621.  Phone:  (510) 839-5200.


**Trial:**  December 6, 2010.  Dwayne Zachary, et al, v. County of Sacramento, et al. USDC Case No. 2:06-CV-01652 MCE – PAN.
Client Attorneys:
Mr. Samuel E. Brown, Attorney at Law, Law Offices of Bonner & Bonner, 1913 Bridgeway Sausalito, CA 94965.  Phone: (415) 331-3070.
Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.


**Trial:**  December 9, 2010.  Jesse Johnson and Tim Horton, v. City of Antioch, et al.  USDC Case No. C09-03153 EMC.
Client Attorney:
Mr. Jivaka Candappa, Attorney at Law, 180 Grand Ave. Suite 700, Oakland, CA, 94612.  Phone: (510) 628-0400.


**Deposition:**  December 13, 2010.  Elizabeth Cabral, v. County of San Bernardino, et al.  USDC Case No. ED CV 09-00692 DEW (JCx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367..  Phone: (818) 347-3333.

-27-

**Deposition:** December 15, 2010.  Elizabeth Serrano and Robert Anthony Serrano, v. City of Ontario, et al.  USDC Case No. ED CV09-01990 GAF (PJWx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367..  Phone: (818) 347-3333.


**Deposition:** December 22, 2010.  Rukhsana Chaudhry, et al. v. City of Los Angeles, et al. USDC Case No CV09-1592 FMC (Rzx).
Client Attorneys:
Mr. Olu K. Orange, Attorney at Law, Orange Law Offices, 3435 Wilshire Blvd., Suite 2900, Los Angeles , CA 90010.  Phone: (213) 736-9900.
Mr. Robert Mann, Attorney at Law, Mr. Donald W. Cook, Attorney at Law, 3435 Wilshire Blvd., Suite 2900, Los Angeles , CA 90010.  Phone: Phone: (213) 252-9444.
Ms. Ameena M. Qazi, Attorney at Law, Council on American-Islamic Relations, California, 2180 W. Crescent Ave., Suite F, Anaheim, CA 92801.  Phone: (714) 776-1847.


**Deposition:** January 7, 2011.  Eldridge Payne, v. County of Orange, et al. USDC Case No. SACV09-0193 AG (Anx).
Client Attorney:
Mr. Joseph C. Gjonola, Attorney at Law, Girardi & Keese, 1126 Wilshire Boulevard, Los Angeles, CA 90017.  Phone: 213-977-0211.


**Trial:** January 12, 2011.  Paul Burke, v. City of Santa Monica, et al.  USDC Case No. CV 09-2259 MMM (PLAx).
Client Attorney:
Mr. Martin D. Holly, Esq., The Law Offices of Martin D. Holly, Pacific Corporate Towers, 222 North Sepulveda Blvd., Suite 2000, El Segundo, CA 90245.  Phone: (310) 335-2060.


**Deposition:** January 14, 2011S.  Ming Chen, v. City and County of San Francisco,  et al. Superior Court, (San Francisco County).  Case No. CGC 09 485027.
Client Attorneys:
Ms. Lizabeth N. De Vries, Attorney at Law and Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.


**Trial:** January 19, & 20, 2011.  Rukhsana Chaudhry, et al. v. City of Los Angeles, et al.  USDC Case No CV09-1592 FMC (Rzx).

-28-

Client Attorneys:
Mr. Olu K. Orange, Attorney at Law, Orange Law Offices, 3435 Wilshire Blvd., Suite 2900, Los Angeles , CA 90010.  Phone:  (213) 736-9900.
Mr. Robert Mann, Attorney at Law, Mr. Donald W. Cook, Attorney at Law, 3435 Wilshire Blvd., Suite 2900, Los Angeles , CA 90010.  Phone: Phone: (213) 252-9444.
Ms. Ameena M. Qazi, Attorney at Law, Council on American-Islamic Relations, California, 2180 W. Crescent Ave., Suite F, Anaheim, CA 92801.  Phone: (714) 776-1847.


**Trial:**  January 20, 2011.  January 26, 201 Elizabeth Cabral, v. County of San Bernardino, et al. USDC Case No. ED CV 09-00692 DEW (JCx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367..  Phone: (818) 347-3333.


**Deposition:**  January 26, 2011.  *Timothy Mitchell, Sr, et al. v. City of Pittsburg, et al.  USDC Case No CV 09-0794 SI.*
Client Attorney:
Mr. Steven R. Yourke, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Trial:** January 27, 2011.  Michael Curzi, v. City of Los Angeles, et al.  USDC Case No: CV08-01373GHK (Rcx).
Client Attorney:
Ms. Rebecca A. Davis-Stein, Attorney at Law, Andrew D. Stein & Associates, 470 South San Vicente Blvd., 2nd Floor, Los Angeles, CA 90048.  Phone:  (323) 852-1507.
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367..  Phone: (818) 347-3333.


**Deposition:**  January 27, 2011.  Anita Lynette Wooten, v. City of Long Beach, et al.  Superior Court, State of California (Los Angeles County) Case No. NC 053151
Client Attorney:
Ms. Vicki Sarmiento, Attorney at Law, 333 North Garfield Avenue, Alhambra, CA 91801.  Phone: (626) 308-1171.


**Trial** January 31, 2011.  Ming Chen, v. City and County of San Francisco,  et al.  Superior Court, (San Francisco County).  Case No. Case No. CGC 09 485027.
Client Attorneys:
Ms. Lizabeth N. De Vries, Attorney at Law and Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.

**Deposition:** February 2, 2011.  John Bernat v. City of California City, et al.  USDC Case No. 10-CV-00305 OWW (JLT).
Client Attorney:
Mr. Todd Krauss, Attorney at Law, Williamson & Krauss, 18801 Ventura Blvd. Suite # 206, Tarzana, CA 91356.  Phone: (818) 344-4000.


**Deposition**: February 4, 2011.  Geoffrey Pete, v. City of Oakland, et al.  USDC Case No. 3:09-cv-06097.
Client Attorney:
Ms. Amanda Metcalf, Attorney at Law, The Law Office of A.  Metcalf, 29 Marin Bay Park Court, San Rafael, CA. 94901.  Phone: (415) 454-9945.


**Deposition:** February 7, 2011.  Donna Moore, et al. v. Robert Smith, et al.  USDC Case No. 07 C 5908.
Client Attorneys:
Mr. Ben Elson, Mr. G. Flint Taylor, Ms. Jan Susler, Attorneys at Law, People's Law Office, 1180 N. Milwaukee Avenue, 3rd Floor, Chicago, Illinois 60642.  Phone: (773) 235-0070.


**Deposition:** February 11, 2011.  Thomas Ray Woodson, v. J. Rodriguez, et al.  USDC Case No. 4:07-cv-04925-CW (DMR).
Client Attorney:
Mr Joseph K. Kanada, Esq., Morrison and Foerster, LLP, 755 Page Mill Road, Palo Alto, CA 94304-1018.  Phone: (650) 831-5925.


**Deposition:** February 24, 2011.  John Ross, Marvin Britton, v., City of San Diego et al.  Superior Court, State of California (San Diego County) Case No. 37-2009-00099412 CU-CR-CTL
Client Attorney:
Mr. Matthew Robert Miller, Miller Law Firm, 835 5th Ave Ste 204, San Diego, CA 92101.  Phone:  (619) 687-0143


**Deposition:** March 3, 2011.  James B. White, v. City and County of San Francisco, et al.  USDC Case No. C-08-05419-PJH.
Client Attorney:

-30-

Mr. Steven R. Yourke, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Trial:**  March 9, 2011.  Sonja Gabales, et al, v. County of San Joaquen, et al.  USDC Cases No. S-07-1346 & S-07-2074 LLK/DAD.
Client Attorney:
Mr. Ben Nisenbaum, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Deposition:**  March 17, 2011.  Nicholas Saracho, a minor, et al, v. County of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC 417304.
Client Attorney:
Ms. Maria Cavalluzzi, Esq., CAVALLUZZI & CAVALLUZZI, 9200 Sunset Blvd., Suite 807 Los Angeles, California 90069.  Phone:  (310) 246-2601.

**Deposition:** March 23, 2011.  Albert Mendoza, v. City of Freeport and Officer Chris Blake. USDC (Texas) Case No. 4:10-cv-01019.
Client Attorney:
Mr. Randall L. Kallinen, Attorney at Law, The Law Office of Randall L. Kallinen, 511 Broadway Street, Houston, TX 77012.  Phone: (713) 320-3785.

**Deposition:**  March 25, 2011.  Ezequiel Jacobo, Sr., et al, v. Los Angeles County, et al.  USDC Case No. CV09-6685 DSF (AGRx).
Client Attorneys:
Ms. Vicki Sarmiento, Attorney at Law, 333 North Garfield Avenue, Alhambra, CA 91801. Phone: (626) 308-1171.
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:**  March 28, 2011.  Miguel Gutierrez, v. Sacramento Sheriff's Department, et al. Superior Court, State of California (Sacramento County).  Case No. 34-2009  00050830.
Client Attorney:
Mr. Robert Thurbon, Attorney at Law, Law Offices of Thurbon and McHaney, 2339 Gold Meadow Way, Gold River, CA 95670.  Phone:  (916) 636-1840.

**Deposition:**  March 31, 2011.  Sheryl Jackson and Kelvin Nash v. City of San Bernardino, et al. USDC Case No. CV 09-08671 RGK (FFMx).
Client Attorney:

-31-

Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367. Phone: (818) 347-3333.

**Deposition:** April 4, 2011. Jacque Cedric Noel v. City of Los Angeles, USDC Case No. CV10-04044.
Client Attorney:
Mr. Christopher Driscoll, Esq., Jonas & Driscoll, LLP, 555 West Fifth Street, 31st Floor Los Angeles, CA 90013. Phone: (213) 683-2033.

**Trial:** April 6 & 7, 2011. Sheryl Jackson and Kelvin Nash, v. City of San Bernardino, et al. USDC Case No. CV 09-08671 RGK (FFMx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367. Phone: (818) 347-3333.

**Trial:** April 11 & 12, 2011. People v. Reynaldo Canales Superior Court (Kern County), Case No. BF 131126.
Client Attorney:
Ms. Stephanie Gunther, Deputy Public Defender, Law Office of the Public Defender, County of Kern, 1315 Truxtun Avenue, Bakersfield, CA 93301. Phone: (661) 868-4799.

**Trial:** April 14, 2011. Alice Rosas Aguilar, et al, v. County of Fresno, et al, USDC Case No. 08-CV-01201-AWI-GSA.
Client Attorneys:
Mr. Brian E. Claypool, The Claypool Law Firm, 1055 E. Colorado Blvd., 5th floor, Pasadena, California 91106. Phone: (626) 240-4616.
Ms. Vicki I. Sarmiento, Law Offices of Vicki I. Sarmiento, 333 N. Garfield Avenue, Alhambra, California 91801. Phone (626) 308-1171.
Mr. Dale K. Galipo, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, California 91367. Phone: (818) 347-3333.

**Deposition:** April 15, 2011. 775. George Engman, et al, v. City of Ontario, et al. USDC Case No. ED CV10-000284 CAS FFM.
Client Attorney:
Mr. Peter Schlueter, Attorney at law, The Law Office of Peter Schlueter, 320 North E Street #210, San Bernardino, CA 92401. Phone (909) 381-4888.

**Trial:** April 20, 2011.  Miguel Gutierrez, v. Sacramento Sheriff's Department, et al.  Superior Court, State of California (Sacramento County).  Case No. 34-2009  00050830.
Client Attorney:
Mr. Robert Thurbon, Attorney at Law, Law Offices of Thurbon and McHaney, 2339 Gold Meadow Way, Gold River, CA 95670.  Phone: (916) 636-1840.


**Trial:** April 25 & 26, 2011.  John Ross, Marvin Britton, v., City of San Diego et al.  Superior Court, State of California (San Diego County) Case No. 37-2009-00099412 CU-CR-CTL
Client Attorney:
Mr. Matthew Robert Miller, Miller Law Firm, 835 5th Ave Ste 204, San Diego, CA 92101.  Phone:  (619) 687-0143.


**Trial:** April 25 & 26, 2011.  Estate of Jesus Manzo, et al v. County of San Diego, et al.  USDC Case No. 06 CV-0060 (Wmc).
Client Attorney:
Mr. Eugene G. Iredale, Attorney at Law, The Law Offices of Eugene G. Iredale, 105 West  "F" Street, 4th Floor, San Diego, CA 92101-6036.  Phone: (619) 233-1525.


**Trial:**  April 27, 2011.  John Bernat v. City of California City, et al.  USDC Case No. 10-CV-00305 OWW (JLT).
Client Attorney:
Mr. Todd Krauss, Attorney at Law, Williamson & Krauss, 18801 Ventura Blvd. Suite # 206, Tarzana, CA 91356.  Phone: (818) 344-4000.


**Deposition:**  April 29, 2011.  Garland MacIntosh, v. City of Camarillo, et al.  USDC Case No. 10-5846 DMG (PLAx).
Client Attorney:
Mr. Mark Pachowicz, Attorney at Law, Law Offices of Mark Pachowicz, 771 Daily Drive, Suite 230, Camarillo, CA 93010.  Phone: (805) 482-2507.


**Deposition:**  May 2, 2011.  Santiago Ibarra Rivera, v. County of Los Angeles, County of San Bernardino, etc., CV10-1861 PSG (Central District, Los Angeles).
Client Attorneys:
Mr. Donald W. Cook, Attorney at Law, Mr. Robert Mann, Attorney at Law, The Law Offices of Robert Mann and Donald W. Cook, 3435 Wilshire Boulevard, Suite 2900, Los Angeles, CA 90010.  Phone :  (213) 252-9444.

-33-

**Deposition:**  May 11, 2011.  Billy J. Hatcher, v. County of Alameda, et al.  USDC Case No. C09-1650 THE.
Client Attorneys:
Mr. John Burris, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone: (510) 839-5200.
Ms. Gayla B. Libet, Attorney at Law, Law Offices of Gayla B. Libet, 486 41st Street, Suite 3, Oakland, CA 94609.  Phone: (510) 420-0324.


**Deposition:**  May 20, 2011.  Jeanne Berg, v. City of Carlsbad, et al.  USDC Case No. 09-cv-2669 JAH (BGS).
Client Attorney:
Mr. James D. Hoey III, Attorney at Law, The Hoey Law Firm, 11975 El Camino Real, Suite 150, San Diego, CA  92130.  Phone: (858) 550-1002.


**Deposition:**  May 31, 2011.  Ramirez, et al v. City of Phoenix, et al.  Superior Court, State of Arizona, (Maricopa County), Case No. 2009-024376.
Client Attorney:
Mr. Joel B. Robbins, Attorney at Law, Robbins & Curtin, p.l.l.c., 301 East Bethany Home Road, Suite B-100, Phoenix, AZ 85012.  Phone: (602) 285-0100.


**Deposition:**  June 2, 2011. Baker, Berry v.  County of San Diego, et al.  Superior Court, State of California, (San Diego County), Case No. 37-2010-00093583-CU-CR-EC.
Client Attorney:
Mr. Thomas D. Luneau, Attorney at Law, Casey Gerry Schenk et al LLP, 110 Laurel Street, San Diego, CA 92101-1486.  Phone (619) 238-1811.


**Deposition:**  June 3, 2011.  Bertha Jauregui v. County of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. TC 023050.
Client Attorney:
Mr. Etan Z. Lorant, Attorney at Law, Law Offices of Etan Z Lorant, 5850 Canoga Avenue, Suite 400,
Woodland Hills, CA 91367 Phone:  (818) 990-3990.


**Trial:** June 7, 2011.  Douglas Burns, v. City of Redwood City, et al.  USDC Case No. C-08-2995 JSW (EDL).
Client Attorneys:

Mrs. Julia Sherwin, Attorney at Law, Mr. Michael J. Haddad, Attorney at Law, HADDAD & SHERWIN, 505 Seventeenth Street, Oakland , CA 94612.  Phone: (510) 452-5500.


**Trial:** June 8, 2011.  David L. Tomblin v. County of Los Angeles, et al, USDC Case No. CV 10-2450, ODW (PJWx).
Client Attorneys:
Mr. John Burton, Esq., Mr. Timothy Midgley, Esq., Law Offices of John Burton, 64 North Raymond Avenue, Suite 300, Pasadena, CA 91103.  Phone: (626


**Trial:** June 15, 2011.  Billy J. Hatcher, v. County of Alameda, et al.  USDC Case No. C09-1650 THE.
Client Attorneys:
Mr. John Burris, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone:  (510) 839-5200.
Ms. Gayla B. Libet, Attorney at Law, Law Offices of Gayla B. Libet, 486 41st Street, Suite 3, Oakland, CA 94609.  Phone: (510) 420-0324.


**Trial:**  June 23 & 24, 2011.  Donald Eugene Boyd, et al. v. City of Houston, et al., USDC (Texas) Case No. H -08-2947**.**
Client Attorney:
Mr. Randall L. Kallinen, Attorney at Law, The Law Office of Randall L. Kallinen, 511 Broadway Street, Houston, TX 77012.  Phone: (713) 320-3785.


**Trial:** June 24, 2011.  Jason A. Deats, v. County of Orange, et al. USDC Case No. CV09-6322 PSG (PJM).
Client Attorney:
Mr. Michael J. Olecki, Attorney at Law, Grodsky & Olecki LLP, 2001 Wilshire Boulevard, Suite 210, Santa Monica, CA. 90403.  Phone:  (310) 315-3009.


**Trial:**  August 4 and 5, 2011.  Trinidad Macias, v. The County of Los Angeles, et al., Superior Court, State of California (Los Angeles County), Case No. VC 040762.
Client Attorney:
Ms. Vicki I. Sarmiento, Attorney At Law, The Law Offices of Vicki Sarmiento, 333 North Garfield Ave., Alhambra, CA 91801.  Phone (626) 308-1171.


**Deposition:**  August 5, 2011.  Monica Ballard, et al, v. City of San Bernardino, et al., USDC Case No. CV10-02769 DMG (AJWx).
Client Attorneys:

-35-

Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.
Mr. William E. Weiss, Attorney at Law, the Law Officers of William E. Weiss, 130 Sutter Street, Seventh Floor, San Francisco, CA  94104.  Phone: (415) 362-6765.


**Deposition:**  August 8, 2011.  Marcus R. Allen, v. County of Riverside, et al.  Superior Court Case Case No. RIC 498 184.
Client Attorney:
Mr. John M. Walker, Esq., Law Offices of John M. Walker, 5850 Canoga Ave., 4th Floor Woodland Hills, CA 91367.  Phone: (818) 719-9181.


**Deposition:**  August 9, 2011.  Stephen C. Gates v. Orange County, et al.  USDC Case No.  CV 10-218 JAK (ANx).
Client Attorneys:
Mr. John Burton, Esq., Mr. Timothy Midgley, Esq., Law Offices of John Burton, 64 North Raymond Avenue, Suite 300, Pasadena, CA 91103.  Phone: (626) 449-8300.


**Deposition:**  August 12, 2011.  Shelly Lal, et al., v. State of California, et al.  Case No. C06-5158 PJH.
Client Attorneys:
Ms. Sydney E. Fairbairn, ESQ., Law Offices of Sydney E. Fairbairn, 269 Posada Del Sol, Novato, CA 94949.  Phone (415) 883-2199.
Ms. Catherine Lagarde, ESQ., P.O. Box 326, Kentfield, CA 94914.  Phone: (415)


**Deposition:**  August 16, 2011.  Julia Enriquez, et al. v. City of Fresno, et al., USDC Case No. 10-CV-00581 AWI DLB.
Client Attorneys:
Mr.Arturo J. Gonzalez, Esq., Mr. Wesley E. Overson, Esq., Mr. Theodore M. Hasse, Esq., Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105.  Phone (415) 268-7425.


**Deposition:**  August 18, 2011.  Carla Rachel Sameth v. County of Los Angeles C.D. Cal. Case No. CV 10-65565 VBF (RZx).
Client Attorneys:
Mr. John Burton, Esq., Mr. Timothy J. Midgley, Esq.  The Law Offices of John Burton, 65 North Raymond Avenue, Suite 300, Pasadena, California 91103.  Phone: (626) 449-8300.

**Deposition:**  August 19, 2011.  Joseph Chavez, v. City of Los Angeles, et al.  USDC Case No. CV09-02062 GHK (RZx).
Client Attorney:
Mr. Jorge Gonzalez, Attorney at Law, Law Office of Jorge Gonzalez, 2485 Huntington Drive, Suite 328, San Marino, CA 91108-2622.  Phone: (626) 683-3922.


**Deposition:**  August 23, 2011.  Marcelo Grasso, et al, v. State of California, et al.  USDC Case No. CV09-1201 FMC (PLAx).
Client Attorneys:
Mr. Brian E. Claypool, The Claypool Law Firm, 1055 E. Colorado Blvd., 5th floor, Pasadena, California 91106.  Phone: (626) 240-4616.
Ms. Vicki I. Sarmiento, Law Offices of Vicki I. Sarmiento, 333 N. Garfield Avenue, Alhambra, California 91801.  Phone (626) 308-1171.
Mr. Dale K. Galipo, Law Offices of Dale K. Galipo, 21800 Burbank Blvd., Suite 310, Woodland Hills, California 91367.  Phone: (818) 347-3333.


**Deposition:**  August 29, 2011.  John Franklin, v Jefferson County (Texas), et al., USDC (Beaumont Division, Texas) Case No. 1:09 cv-00931.
Client Attorney:
Mr. Brian R. McGiverin, Attorney at Law, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, TX  78741.  Phone  (512) 474-5073.


**Deposition:**  September 1, 2011.  Kenneth Carrethers, v. Bay Area Rapid Transit (BART), et al.  USDC Case No. CV 09-1101 MHP.
Client Attorneys:
Mr. Christopher B. Dolan, Attorney at Law, and Ms. Anne Costin, Attorney at Law, the Dolan Law Firm, The Dolan Building, 1438 Market Street, San Francisco, California 94102.  Phone: (415) 421-2830.
Ms. Lizabeth N. De Vries, Attorney at Law and Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.


**Deposition:**  September 13, 2011.  Tavaron Mitchell, et al, v. City of Long Beach, et al.  Superior Court, State of California (Los Angeles County), Case No. NC053177.
Client Attorneys: Mr. John C. Taylor, Attorney at Law, Ms. Louanne Masry, Attorney at Law, Taylor & Ring, LLP, 10900 Wilshire Blvd. Suite 920, Los Angeles, CA 90024.  Phone: (310) 209-4100.

-37-

**Trial:**  September 15, 2011.  Siehna M. Cotton, a Minor, et al. v. City of Eureka, et al.  Case No. 08-CV-04386 SBA.
Client Attorneys:
Ms. Vicki Sarmiento, Attorney at Law, 333 North Garfield Avenue, Alhambra, CA 91801.
Phone: (626) 308-1171.
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:**  September 22, 2011.  Connie Dolores Cervantes, et al, v. Aurora Las Encinas Hospital, et al.  Superior Court, State of California, Case No. GC 043433
Client Attorneys:
Mr. Steven B. Effres, Esq., Mr. Rene J. Kern, Esq., Effres & Associates, 21900 Burbank Blvd., Third Floor, Woodland Hills, CA 91357.  Tele: (818) 222-9720.


**Deposition:**  September 27, 2011.  Frank P. Gutierrez, et al, v. County of Los Angeles, et al.  USDC Case No. CV 10-7627 VBF (Cwx).
Client Attorney:
Mr. Herman Frank, Esq., Frank & Associates, 1801 7th Street, Suite 150, Sacramento, CA 95811.  Phone: (916) 256-6266.


**Deposition:**  September 28, 2011.  J. A., et al, v. City of San Bernardino, et al.  USDC Case No. CV09-01388 SGL (Jcx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Trial:**  September 29, 2011 and September 30, 2011.  Monica Ballard, et al, v. City of San Bernardino, et al., USDC Case No. CV10-02769 DMG (AJWx).
Client Attorneys:
Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.
Mr. William E. Weiss, Attorney at Law, the Law Officers of William E. Weiss, 130 Sutter Street, Seventh Floor, San Francisco, CA  94104.  Phone: (415) 362-6765.


**Deposition:**  October 3, 2011.  Brett Lozano v City of Santa Ana, et al.:30-2010-
Superior Court, State of California (Orange County), Case No. 00398323.
Client Attorney:

-38-

Mr. Gregory A. Yates, Attorney at Law, Law Offices of Gregory A. Yates, 16830 Ventura Boulevard, Suite 250, Encino, CA 91436.  Phone: (310) 858-6944.

**Deposition:**  October 3, 2011.  Estate of Ibn Rasheed Jones, et al, v. County of San Bernardino, et al.  USDC Case No. EDCV 09-01287 DEW (DTBx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:**  October 4, 2011. A. D. A minor, (Dolores Santiago) et al, v. Los Angeles County, et al.  Superior Court, State of California (Los Angeles County), Case No, BC449291.
Client Attorney:
Ms. Adrienne Quarry, Attorney at Law,  Law Offices of Adrienne Quarry, 15303 Ventura Blvd. Suite 900, Sherman Oaks, CA 91403.  Phone: (818) 380-3097.

**Deposition:**  October 12, 2011.  Salvador Bernal, v. State Organization, Inc., et al.  Superior Court Case No. C10-01554.
Client Attorney:
Mr. Ben Nisenbaum, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Trial:**  October 17, 2011.  Jovanny Garduno, et al, v. City of Long Beach, et al, Superior Court, State of California (Los Angeles County), Case No. NC053710.
Client Attorney:
Ms. Maria Cavalluzzi, Esq., CAVALLUZZI & CAVALLUZZI, 9200 Sunset Blvd., Suite 807 Los Angeles, California 90069.  Phone:  (310) 246-2601.

**Deposition:**  October 19, 2011.  Joshua Levy, et al, v. City of Spokane, et al., USDC (Washington) Case No. CV-10-233-EFS.
Client Attorneys:
Mr. Mark Leemon, Attorney at Law, Leemon & Royer, PLLC, 2505 Second Avenue, Suite 610, Seattle, WA 98121.  Phone: (206) 269-1100.
Mr. Jeffry K. Finer, Attorney at Law, Law Office of Jeffry K. Finer, 635 West Main, Suite 300, Spokane, WA 99201.  Phone: (509) 981-8960.
Mr. Breean L. Beggs, Attorney at Law, Paukert & Troppmann, PLLC, 522 W. Riverside Avenue, Suite 560, Spokane, WA 99201.  Phone: (206) 269-1100.

**Trial:** October 20, 2011.  A. D. A minor, (Dolores Santiago) et al, v. Los Angeles County, et al. Superior Court, State of California (Los Angeles County), Case No, BC449291.
Client Attorney:
Ms. Adrienne Quarry, Attorney at Law,  Law Offices of Adrienne Quarry, 15303 Ventura Blvd. Suite 900, Sherman Oaks, CA 91403. Phone: (818) 380-3097.


**Deposition:** October 31, 2011, and December 12, 2011.  Shuja Sayed Ahmad, v. Arizona Department of Public Safety, et al., Superior Court (Maricopa County), State of Arizona, Case No. CV 2008-030707.
Client Attorney:
Mr. Richard T. Treon, Attorney at Law, Treon, Aguirre, Newman & Norris, 2700 North Central Avenue, Suite 1400, Phoenix, AZ 85004-1133.  Phone: (602) 285-4400.


**Trial:** November 2, 2011.  Estate of Ibn Rasheed Jones, et al, v. County of San Bernardino, et al.  USDC Case No. EDCV 09-01287 DEW (DTBx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** November 7, 2011.  Superior Court, State of California (Los Angeles County), Jonathan Constantini, v. City of West Covina, et al., Case No. KC 060150.
Client Attorney:
Mr. Michael A. Smith, Attorney at Law, 230 East Foothill Blvd. Suite C, Arcadia, CA., 91006.
Phone: (626) 357-1177.


**Trial:** November 28, 2011, and November 29, 2011.  Kenneth Carrethers, v. Bay Area Rapid Transit (BART), et al.  USDC Case No. CV 09-1101 MHP.
Client Attorneys:
Mr. Christopher B. Dolan, Attorney at Law, and Ms. Anne Costin, Attorney at Law, the Dolan Law Firm, The Dolan Building, 1438 Market Street, San Francisco, California 94102.  Phone: (415) 421-2830.
Ms. Lizabeth N. De Vries, Attorney at Law and Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.


**Trial:** December 8, 2011, &December 9, 2011.  Julia Enriquez, et al. v. City of Fresno, et al., USDC Case No. 10-CV-00581 AWI DLB.
Client Attorneys:

Mr.Arturo J. Gonzalez, Esq., Mr. Wesley E. Overson, Esq., Mr. Theodore M. Hasse, Esq., Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105.  Phone (415) 268-7425.


**Deposition:**  December 14, 2011.  Jonathon Castro v. County of Los Angeles, C.D. Cal. Case No. CV 10-5425 DSF (JEMx).
Client Attorneys:
Mr. John Burton, Esq., THE LAW OFFICES OF JOHN BURTON, 65 North Raymond Avenue, Suite 300, Pasadena, California 91103.  Phone: (626) 449-8300.
Ms. Maria Cavalluzzi, Esq., CAVALLUZZI & CAVALLUZZI, 9200 Sunset Blvd., Suite 807,Los Angeles, California  90069.  Phone: (310) 246-2601.
M. Lawrence Lallande, Sr., Esq., LALLANDE LAW, PLC,111 W. Ocean Blvd., 19th Floor,Long Beach, California 90802.  Phone: (562) 436-8800.


**Deposition:**  December 15, 2011.  David Barnard, v. County of Los Angeles, et al.  USDC Case No. CV05-5611 GAF (JWJx).
Client Attorney:
Mr. Gregory A. Yates, Attorney at Law, Law Offices of Gregory A. Yates, 16830 Ventura Boulevard, Suite 250, Encino, CA 91436.  Phone: (310) 858-6944.


**Deposition**:  December 20, 2011.  Cristina Ibarra, v. City of Los Angeles, et al., Superior Court, State of California (Los Angeles County),        Case No. SC108224.
Client Attorney:
Miguel G. Caballero, Attorney at Law, Moreno & Perez, A Professional Corporation, The Petroleum Building, 714 West Olympic Blvd., Suite 450, Los Angeles, CA 90015.  Phone: (213) 745-6300.


**Deposition**:  December 21, 2011.  Carol Krechman: et al. vs. County of Riverside: et al.  Case No. CV-10-08705 ODW.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition**:  December 22, 2011.  Barbara J. Batchan, et al, v. County of Los Angeles, et al., Superior Court, State of California (Los Angeles County), Case No. BC423702.
Client Attorneys:
Mr. John Burton, Esq., THE LAW OFFICES OF JOHN BURTON, 65 North Raymond Avenue, Suite 300, Pasadena, California 91103.  Phone:  (626) 449-8300.

Mr. Benjamin Schonbrun, Attorney at law, Schonbrun DeSimone Seplow Harris & Hoffman LLP, 723 Ocean Front Walk, Venice, CA 90291.  Phone : (310) 396-0731.


**Deposition**: December 22, 2011.  Brent Beckway, v. Lake County, et al.  USDC Case No. C-07-5072 THE.
Client Attorney:
Mr. Charles F Bourdon, Attorney at Law, Law Offices of Charles F Bourdon, 179 11th Street 2nd Floor, San Francisco, CA 94103.  Phone: (415) 864-5100.


**Deposition:**   December 27, 2011.  Ralph Noriega, v. County of Los Angeles, et al.  USDC Case No. CV10-9492 SWV (PLAx).
Client Attorney:
Mr. Alexis Galindo, Attorney at Law, Curd Galindo & Smith LLP, 301 East Ocean Boulevard Suite 1700, Long Beach, CA, 90802.  Phone: (562) 624-1177.


**Trial:**  January 5, 2012 and January 6, 2012.  Carol Krechman: et al. vs. County of Riverside: et al.  Case No. CV-10-08705 ODW.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** January 6, 2012.  Robert Contreras vs. City of Los Angeles: et al.  USDC Case # CV11 01480 SS.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** January 9, 2012.  Michael Holguin, v. County of Los Angeles, et al.  USDC Case No. CV 10-8011 GW (PLAx).
Client Attorney:
Ms. Christy Virginia Keeny, Attorney at Law, Hadsell, Stormer, Keeny, Richardson & Renick, LLP, 128 North Fair Oaks Avenue, Pasadena, CA 91103.  Phone: (626) 585-9600.


**Deposition:** January 11, 2012.  Kandace Simplis, et al, v. Culver City Police, et al.  USDC Case No.CV10-9497 JHN (MANx).
Client Attorney:
Mr. Matthew S. McNicholas, Attorney at Law, McNicholas & McNicholas, LLP, 10866 Wilshire Boulevard, Suite 1400, Los Angeles, CA  90024.  Phone: (310) 474-1582

-42-

**Deposition**: January 13, 2012.  Reyna Johnston, et al., v. Riverside County, et al.  Case No. CV 10-08101.
Client Attorney:
Mr. Steven A. Lerman, Attorney at Law, Steven A. Lerman & Associates, Inc., 6033 West Century Boulevard, Suite 740, Los Angeles, CA 90045.  Phone: (310) 659-8166.


**Deposition:**  January 17, 19, & 23, 2012.  Zhivka Valiavicharska v. UCPD (Berkeley), et al, USDC Case No. 10-CV-04847 JL.
Client Attorney:
Mr. Steven R. Yourke, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Deposition:**  January 18, 2012.  Danilo M. Molieri and Daniel S. Molieri, v. County of Marin, et al.  USDC Case No C-10-5430 MMC.
Client Attorney:
Mr. John Burris, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, #1120, Oakland, CA 94621.  Phone:  (510) 839-5200.


**Trial**: January 20, 2012.  Brent Beckway, v. Lake County, et al.  USDC Case No. C-07-5072 THE.
Client Attorney:
Mr. Charles F Bourdon, Attorney at Law, Law Offices of Charles F Bourdon, 179 11th Street 2nd Floor, San Francisco, CA 94103.  Phone: (415) 864-5100.


**Deposition:**  January 23, 2012.  Rachel Prescott, et al, v. County of Stansilaus, et al.  USDC Case No. 1:10-CV-00582 OWW-JLT.
Client Attorney:
Mr. Steven R. Yourke, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Deposition:**  January 30, 2012.  Superior Court, State of California (Los Angeles County) Deputy James Mee, v. County of Los Angeles, Case No. BC444914.
Client Attornys:
Mr Etan Z. Lorant, Esq., Ms. Yael Trock, Esq., Law Offices of Etan Z. Lorant, 5850 Canoga Avenue, Suite 400, Woodland Hills, CA.  Phone(818) 990-3900.

**Trial:** February 1, 2012.  Robert Contreras vs. City of Los Angeles: et al.  USDC Case # CV11 01480 SS.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Trial:** February 8, 2012. Zhivka Valiavicharska v. UCPD (Berkeley), et al, USDC Case No. 10-CV-04847 JL.
Client Attorney:
Mr. Steven R. Yourke, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.


**Trial:** February 10, 2012.  Barbara J. Batchan, et al, v. County of Los Angeles, et al., Superior Court, State of California (Los Angeles County), Case No. BC423702.
Client Attorneys:
Mr. John Burton, Esq., THE LAW OFFICES OF JOHN BURTON, 65 North Raymond Avenue, Suite 300, Pasadena, California 91103.  Phone:  (626) 449-8300.
Mr. Benjamin Schonbrun, Attorney at law, Schonbrun DeSimone Seplow Harris & Hoffman LLP, 723 Ocean Front Walk, Venice, CA 90291.  Phone : (310) 396-0731.


**Trial:** February 15, 2012.  Travell Bradford, v. Deputy Gregory Senior, USDC (Oregon) Case No. CV 08-644BR.
Client Attorney:
Ms. Lynn S. Walsh, Attorney at Law, The Law Offices of Lynn S. Walsh, 209 S.W. Oak Street, Suite 400, Portland, OR  97204.  Phone: (503) 790-2772.


**Deposition:**  February 16, 2012.  Mark Bowen v. County of Riverside, et al.  Superior Court, State of California (Riverside County) Case No. RIC 516303.
Client Attorney:
Ms. Laura M. Sasaki, Attorney at Law, Hosey & Bahrambeygui, 225 Broadway, Suite 1460, San Diego, CA, 92101.  Phone: (619)231-0500.


**Deposition:**  February 17, 2012 and March 16, 2012.  Luz Hernandez, v. City of Napa, et al. USDC Case No. 08-CV-04386 SBA.
Client Attorney:
Mr. Tim A. Pori, Attorney at Law, The Law Office of Tim A. Pori, 521 Georgia Street, Vallejo, CA 94121.  Phone: (707) 644-4004.


-44-

**Deposition:** February 20, 2012.  Emily Contreras and Jose Lua Sr., et al. v. City of San Jose: et al.  Case # CV-10-00953 RMW.
Client Attorneys:
Ms. Vicki Sarmiento, Attorney at Law, 333 North Garfield Avenue, Alhambra, CA 91801.
Phone: (626) 308-1171.
Mr. Dale K. Galipo, Attorney at Law, Law Offices of Dale K. Galipo, 21800 Burbank Boulevard,
Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** February 23, 2012.  Sergeant Danny M. Singson, v. Commander Marc Farber, et al.
USDC Case No. CV 11-1863 SI.
Client Attorney:
Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San
Francisco, CA 94109.  Phone: (415) 561-9600.


**Deposition:** February 27, 2012.  Julio Cesar Duran, v. City of Weslaco, et al.  USDC (Texas)
Case No. 10-CV-00429**.**
Client Attorneys:
Ms. Corinna Spencer-Scheurich, Attorney at Law, Mr. Amin Alehashem, Attorney at Law
South Texas Civil Rights Project, 1017 West Hackberry, Alamo, TX 78516.  Phone (956)
787-8171.


**Deposition:** February 28, 2012.  Deon Richard Dirks, v. County of Los Angeles, et al.  USDC
Case No. CV 08-05214 GPS (Ctx).
Client Attorney:
Mr. Christopher Driscoll, Esq., Jonas & Driscoll, LLP, 555 West Fifth Street, 31st Floor
Los Angeles, CA 90013.  Phone: (213) 683-2033.


**Deposition:** February 28, 2012.  Carol Champommier, et al, v. United States of America, et al.
USDC Case No. CV11-3913 JHN (PJWx), (Consolidated with Case No. CV11-05486).
Client Attorneys:
Mr. John Burton, Esq., THE LAW OFFICES OF JOHN BURTON, 65 North Raymond Avenue,
Suite 300, Pasadena, California 91103.  Phone:  (626) 449-8300.
Ms. Cara Lin Eisenberg, Esq., LAW OFFICES OF GARY A. DORDICK, 509 South Beverly
Drive, Beverly Hills, California 90212.  Phone: (310) 551-0949.


**Trial:** March 1, 2012.  Danny Pina, v. San Jose, et al.  USDC Case No. CV10-02607 HRL.
Client Attorney:

Mr. Jaime A. Leanos, Attorney at Law, The Law Office of Jaime A. Leanos, 75 East Santa Clara Street, Suite 250, San Jose, CA 95113.  Phone: (408) 294-6800.


**Deposition:**  March 2, 2012.  Mekione Samatua, et al, v. City of San Bernardino, et al.  Superior Court (San Bernardino County), State of California Case No.  CIVDS 917832.
Client Attorney:
Mr. Jamon R. Hicks, Attorney at Law, The Cochran Firm, 4929 Wilshire Boulevard, Suite 1010; Los Angeles, CA, 90010.  Phone: (323) 931-6200.


**Deposition:**  March 5, 2012.  Estela Cabrales, v. Los Angeles County, et al.  Superior Court (Los Angeles County), State of California Case No.  TC 024782.
Client Attorney:
Mr. Dennis P. Wilson, Attorney at Law, Law Offices of Dennis P. Wilson, 3322 W. Victory Boulevard, Burbank, CA 91505.  Phone: (818) 843-1788.


**Trial:**  March 9, 2012 and March 12, 2012.  P.C. (Mauricio Cornejo), v. City of Los Angeles, et al.  USDC Case No. CV 07-3413 ABC (Ctx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Trial:**  March 20, 2012.  Damian Ramirez, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. NC043826.
Client Attorney:
Mr. Federico C. Sayre, Attorney at Law, Sayre & Levitt LLP, 900 North  Broadway 4th Floor, Santa Ana, CA 92701-3452.  Phone: (714) 550-9117.



**Trial:**  March 28, 2012.  Lakesha Wright, et al., v. City of Long Beach, et al.  Superior Court State of California (Los Angeles County) Case No. BC404505.
Client Attorneys:
Ralph E. Harrison II, Attorney at Law, The Law Office of Ralph E. Harrison II 3450 Wilshire Boulevard, Suite 705 Los Angeles, CA 90010.  Phone (213) 616-0201.
Altus Waddell Hudson, Attorney at Law, Kidd & Hudson, 3450 Wilshire Boulevard, Suite 705, Los Angeles, CA 90010.  Phone (213) 739-1777.


**Deposition:**  March 27, 2012.  Gabriel Gonzales, et al., v. County of Los Angeles, et al. USDC Case No. CV11-1862 MMM (VBKx).

-46-

Client Attorney:
Mr. Nicholas W. Hornberger, Attorney at Law, Hornberger & Brewer, LLP, 444 South Flower
Street, Suite 3010, Los Angeles, CA 90071-2901.  Phone: (213) 488-1655


**Deposition:**  April 3, 2012.  Yvonne Barnes, et al., v. City of San Bernardino, et al.  Superior
Court (San Bernardino County), Case No. CIVSS 807102.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank
Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** April 5, 2012. Hector Briones and Roseland Harding, v. City of San Bernardino, et
al. USDC Case No. CV 10-7571 CBM (Opx).
Client Attorneys:
Mr. Donald W. Cook, Attorney at Law, Mr. Robert Mann, Attorney at Law, The Law Offices of
Robert Mann and Donald W. Cook, 3435 Wilshire Boulevard, Suite 2900, Los Angeles, CA
90010.  Phone : (213) 252-9444.


**Deposition:**  April 9, 2012.  Oscar Morales v. City of Los Angeles, et al.  USDC Case No. CV
11-04757 SVW (Shx).
Client Attorneys:
Mr. John Burton, Esq., and Mr. Timothy J. Midgley, Esq.  The Law Offices of John Burton, 65
North Raymond Avenue, Suite 300, Pasadena, California 91103.  Phone:  (626) 449-8300.


**Trial:**  April 10, 2012.  People v. Rodger Warren Box, Superior Court (Contra Costa County,
California) Case No. 150794-6, DA No. C 10 011036-1.
Client Attorney:
Mr. Tim A. Pori, Attorney at Law, The Law Office of Tim A. Pori, 521 Georgia Street, Vallejo,
CA 94121.  Phone: (707) 644-4004.


**Trial:**  April 11, 2012.  Paul Burke, v. City of Santa Monica, et al.  USDC Case No. CV 09-2259
MMM (PLAx).
Client Attorney:
Mr. Martin D. Holly, Esq., The Law Offices of Martin D. Holly, Pacific Corporate Towers, 222
North Sepulveda Blvd., Suite 2000, El Segundo, CA 90245.  Phone: (310) 335-2060.


**Trial:**  April 19, 2012.  Danny M. Singson, v. Marc Farber, et al.  USDC Case No. CV 11-1863
SI.

-47-

Client Attorney:
Mr. John H. Scott, Attorney at Law, Scott Law Firm, 1375 Sutter Street, Suite 222, San Francisco, CA 94109.  Phone: (415) 561-9600.


**Trial:**  April 20, 2012 and April 23, 2012.  Estela Cabrales, v. Los Angeles County, et al. Superior Court (Los Angeles County), State of California Case No.  TC 024782. Client Attorney:
Mr. Dennis P. Wilson, Attorney at Law, Law Offices of Dennis P. Wilson, 3322 W. Victory Boulevard, Burbank, CA 91505.  Phone: (818) 843-1788.


**Trial:**  April 23, 2012.  Yvonne Barnes, et al., v. City of San Bernardino, et al.  Superior Court (San Bernardino County), Case No. CIVSS 807102.
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:**  April 27, 2012.  Chester Miller and Betty Miller v. City of Menlo Park, et al. USDC Case No. C-11-00543-CW.
Client Attorneys:
Ms. Gayla B. Libet, Attorney at Law, Law Offices of Gayla B. Libet, 486  41st Street, Suite 3, Oakland, CA 94609
Mr. John Burris, Attorney at Law, John Burris Law Offices, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.


**Deposition:**  May 3, 2012.  Allen Harris, et al, v. City of Los Angeles, et al.  Superior Court, State of California (Los Angeles County), Case No. BC451880.
Client Attorney:
Mr. V. James DeSimone, Attorney at Law.  Schonbrun DeSimone Seplow Harris Hoffman & Harrison LLP, 723 Ocean Front Walk, Venice, CA 90291.  Phone: (310) 396-0731.


**Trial:**  May 7, 2012.  May 7, 201 Brett Lozano v City of Santa Ana, et al.:30-2010- Superior Court, State of California (Orange County), Case No. 00398323.
Client Attorney:
Mr. Gregory A. Yates, Attorney at Law, Law Offices of Gregory A. Yates, 16830 Ventura Boulevard, Suite 250, Encino, CA 91436.  Phone: (310) 858-6944.


**Deposition:**  May 15, 2012.  Donald Sanchez, et al, v. County of San Bernardino, et al.  USDC Case No.: 2:10-cv-09384 MMM (Opx).

Client Attorneys:
Mr. Peter B. Schlueter, Attorney at Law, Schlueter & Schlueter, Meserve/Sanborn Building, 2nd Floor, 108 Orange, Suite 8, Redlands, CA 92373
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Trial:**  May 16, 2012.  Chester Miller and Betty Miller v. City of Menlo Park, et al.  USDC Case No. C-11-00543-CW.
Client Attorneys:
Mr. Mr. John Burris, Attorney at Law,Mr. Adante Pointer, Attorney at Law, The Law Offices of John Burris, Airport Corporate Centre, 7677 Oakport Street, Suite 1120, Oakland, CA 94621.  Phone: (510) 839-5200.

**Deposition:**  May 17, 2012.  Joseph Ober v. County of Los Angeles.  USDC C.D. Cal. Case No. CV 10-10032 DMG (SHx).
Client Attorneys:
Mr. John Burton, Esq., and Mr. Timothy J. Midgley, Esq.  The Law Offices of John Burton, 65 North Raymond Avenue, Suite 300, Pasadena, California 91103.  Phone: (626) 449-8300.

**Deposition:**  May 22, 2012.  Edward Colson, v. City of Bakersfield, et al.  USDC Case No. 1:10-CV-01776 OWW-JLT.
Client Attorneys:
Mr. Joel T. Anderson, Esq., Mr. J. Miguel Flores, Esq., Rodriguez & Associates, PLC, 2020 Eye Street, Bakersfield, CA 93301.  Phone: (661) 323-1400.

**Deposition:** May 30, 2012.  Steven A. Lorange, v. University of California, Los Angeles, et al. USDC Case No. CV11 – 10417 SVW (JCx).
Client Attorney:
Mr. Joseph Y. Avrahamy, Esq., Law Offices of Joseph Y. Avrahamy, 16530 Ventura Boulevard, Suite 208, Encino, CA 91436.  Phone: (818) 469-3757.

**Trial:** June 6, 2012.  Jonathon Castro v. County of Los Angeles, C.D. Cal. Case No. CV 10-5425 DSF (JEMx).
Client Attorneys:
Mr. John Burton, Esq., THE LAW OFFICES OF JOHN BURTON, 65 North Raymond Avenue, Suite 300, Pasadena, California 91103.  Phone: (626) 449-8300.
Ms. Maria Cavalluzzi, Esq., CAVALLUZZI & CAVALLUZZI, 9200 Sunset Blvd., Suite 807,Los Angeles, California  90069.  Phone: (310) 246-2601.

-49-

M. Lawrence Lallande, Sr., Esq., LALLANDE LAW, PLC, 111 W. Ocean Blvd., 19th Floor, Long Beach, California 90802.  Phone: (562) 436-8800.

**Trial:**  June 7, 2012.  Luz Hernandez, v. City of Napa, et al.  USDC Case No. 08-CV-04386 SBA.
Client Attorney:
Mr. Tim A. Pori, Attorney at Law, The Law Office of Tim A. Pori, 521 Georgia Street, Vallejo, CA 94121.  Phone: (707) 644-4004.

**Deposition:**  June 14, 2012, Fox et al. v. County of Sacramento et al. USDC Case No. 2:11 CV-00419 JAM-KJN.
Client Attorney:
Mr. Lanny T. Winberry, Esq., The Law Offices of Lanny T. Winberry, 8001 Folsom Boulevard, Suite 100, Sacramento, CA 95826.  Phone (916) 386-4423.

**Deposition:**  June 21, 2012.  Estate of Manuel Jaminez Churn, et al, v. City of Los Angeles, et al. USDC Case No. CV10-8228 JHN (Ex).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition:**  June 22, 2012.  Jeremy Fogleman v. County of Los Angeles, et al.  USDC Case No. CV 10-6793 GAF (Shx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Deposition**  June 25, 2012.  Cessy Lauderdale v. City of Greenville, Texas and Dustin Ray. USDC (Northern District of Texas) Case No. Civil Action No: 3:10
Client Attorneys:
Mr. Joseph P. Berra, Attorney at Law, and Ms. Abigail Frank, Attorney at Law, Equal Justice Works Fellow, Language Access Program, Michael Tigar Human Rights Center, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, TX 78741-3438.

**Trial:**  June 28, 2012.  Donald Sanchez, et al, v. County of San Bernardino, et al.  USDC Case No.: 2:10-cv-09384 MMM (Opx).
Client Attorneys:

Mr. Peter B. Schlueter, Attorney at Law, Schlueter & Schlueter, Meserve/Sanborn Building, 2nd Floor, 108 Orange, Suite 8, Redlands, CA 92373.  Phone: (909) 206-4888
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Trial:**  July 3, 2012.  David Venegas, et al, v. Los Angeles County, et al.  Superior Court, State of California (Los Angeles County), Case No. BC 207136.
Client Attorneys:
Mr. Donald W. Cook, Attorney at Law, Mr. Robert Mann, Attorney at Law, The Law Offices of Robert Mann and Donald W. Cook, 3435 Wilshire Boulevard, Suite 2900, Los Angeles, CA 90010.  Phone : (213) 252-9444.

**Deposition:**  July 12, 2012.  P. R., JR. (A Minor), Julie Rodriguez, v. County of Los Angeles, et al.  USDC Case No. CV 11-03803 MMM (Ssx).
Client Attorney:
Mr. Carl E. Douglas, Attorney at Law, The Douglas Law Group, 8484 Wilshire Boulevard , Suite 548, Beverly Hills, CA 90211.  Phone (323) 655-6505.

**Deposition:**  July 17, 2012.  Duvall Mariano, v. County of Los Angeles, et al.  USDC Case No. CV11-5106 JAK (FFMx).
Client Attorney:
Mr. Christopher Driscoll, Esq., Jonas & Driscoll, LLP, 555 West Fifth Street, 31st Floor
Los Angeles, CA 90013.  Phone: (213) 683-2033.

**Trial:**  August 8, 2012.  Estate of Manuel Jaminez Chum, et al, v. City of Los Angeles, et al.  USDC Case No. CV10-8228 JHN (Ex).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

**Trial:**  July 20, 2012.  Ivan E. Henriquez, v. City of Los Angeles, et al.  USDC Case No. CV 10-3072.
Client Attorneys:
Ms. Lisa Holder, Attorney at Law, Law Office of Lisa Holder, P.O. Box 65694, Los Angeles, CA 90065.  Phone (323) 683-6610.
Mr. Christopher J. Canlas, Attorney at Law, Canlas Law Group, APLC, 615 West Beverly Boulevard, Montebello, California 90640.  (323) 888-4325.

**Deposition:** July 26, 2012,  K.X.T. a minor, v. City of Orange, et al.  Superior Court (Orange County) State of California Case No. 30-2011-00460392.
Client Attoeney:
Mr. Jamon R. Hicks, Attorney at Law, The Cochran Firm, 4929 Wilshire Boulevard, Suite 1010;Los Angeles, CA, 90010.  Phone: (323) 931-6200.


**Deposition:** July 30, 2012.  Angel M. Mendez and Jennifer Lynn Garcia v. County of Los Angeles, et al.  USDC Case No. CV 11-04771 850. JHN (Pjx).
Client Attorney:
Mr. David Drexler, Esq., Law Offices of David Drexler, 13808 Ventura Boulevard, Sherman Oaks, CA, 91423.  Phone (818) 907-7373.


**Trial:**   August 3, 2012.  People v. Abisai Antonio Rivera.  Superior Court, State of California, County of Los Angeles, Case No. IWW04999.
Client Attorney:
Raffi J. Manuelian, Attorney at Law, J & M Law Firm, LLP, 555 West 5th Street 31st Floor, Los Angeles, CA 90013.  Phone:  (213) 996-8463.


**Trial:**   August 7, 2012.  John Franklin, v Jefferson County (Texas), et al., USDC (Beaumont Division, Texas) Case No. 1:09 cv-00931.
Client Attorney:
Mr. Mr. Brian R. McGiverin, Attorney at Law, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, TX  78741.  Phone  (512) 474-5073.


**Trial:**   August 8, 2012.  Estate of Manuel Jaminez Chum, et al, v. City of Los Angeles, et al.  USDC Case No. CV10-8228 JHN (Ex).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:** August 9, 2012.  Asima Gul, et al. v.Garda CL West, Inc., et al., (AKA: Ajmal v Bank of the West).  Superior Court, State of California (San Joaquin County), Case No. 39-2010-00234481 CU-PO-STK.
Client Attorney:
Mr. Christopher B. Dolan, Attorney at Law, and Ms. Anne Costin, Attorney at Law, the Dolan Law Firm, The Dolan Building, 1438 Market Street, San Francisco, California 94102.  Phone: (415) 421-2830.

**Deposition:**  August 20, 2012.  Mohamad Harb, et al., v. City of Bakersfield, et al.  Superior Court, State of California (Kern County) Case No. S-1500-CV-265887-SPC.
Client Attorney:
Mr. Thomas A. Brill, Attorney at Law, Law Offices of Young & Nichols, 1901 Truxtun Avenue, Bakersfield, CA 93301-5010.  Phone (661) 861-7911.


**Deposition:**  August 22, 2012.  Eugene Carl De Boise, Sr., et al. v. St. Louis County, Missouri, et al.  USDC Case No. 4:10CV818 TIA.
Client Attorneys:
Mr. John Burton, Esq., The Law Offices of John Burton, 65 North Raymond Avenue, Suite 300, Pasadena, CA 91103.  Phone: (626) 449-8300.
Mr. W. Bevis Schock, Esq., 7777 Bonhomme Avenue, Suite 1300, St. Louis, MO 63105.


**Deposition:**  August 29, 2012.  Jose Cortez v. County of Los Angeles, et al.  USDC Case No CV 11-03274 DDP (AGRx).
Client Attorney:
Mr. Kenneth J. Sargoy, Attorney at Law, Kollender & Sargoy, 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067.  Phone (310) 277-7737.


**Deposition:**  September 4, 2012.  Erika Canas, et al., v. City of Sunnyvale, et al.  USDC Case No. C08-05771 THE.
Client Attorney:
Mr. Russell A. Robinson, Attorney at Law, Law Office of Russell A. Robinson, 345 Grove Street First Floor, San Francisco, CA 94102.  (415) 255-0462.


**Deposition:**  September 5, 2012.  Lea Riley, v. Orange County, et al.  USDC Case No. SACV 11-773 JST (Anx).
Client Attorney:
Mr. Mervyn S. Lazarus, Attorney at Law, The Law Office of Mervyn Selwyn Lazarus, 4340 Campus Drive, Suite 100, Newport Beach, CA 92660.  Phone (949) 315-0102.


**Deposition:**  September 6, 2012.  Robert Lee Woodard, v. City of Menlo Park, et al.  USDC Case No. C09-3331 SBA.
Client Attorney:
Ms. Kristin M. Hall, Esq., Paul Hastings LLP, 55 Second Street, 24th Floor, San Francisco, CA 94105.  Phone: (415) 856-7071.

**Deposition:** September 7, 2012. Steven Sevan Guidry v. City of Houston and Brenton Delon Green. USDC Case No. H-11-1589.
Client Attorney:
Mr. Sylvester Anderson, Attorney & Counselor at Law, Regency Square Tower, 6200 Savoy, Suite 250, Houston, TX 77036. Phone: (713) 533-9500.


**Trial:** September 13, 2012. Erika Canas, et al., v. City of Sunnyvale, et al. USDC Case No. C08-05771 THE.
Client Attorney:
Mr. Russell A. Robinson, Attorney at Law, Law Office of Russell A. Robinson, 345 Grove Street First Floor, San Francisco, CA 94102. (415) 255-0462.


**Trial:** September 21, 2012 and September 24, 2012. Robert Lee Woodard, v. City of Menlo Park, et al. USDC Case No. C09-3331 SBA.
Client Attorney:
Ms. Kristin M. Hall, Esq., Paul Hastings LLP, 55 Second Street, 24th Floor, San Francisco, CA 94105. Phone (415) 856-7071.


**Deposition:** September 25, 2012. Rohayent Gomez Eriza, a Minor, et al, v. City of Los Angeles, et al. Superior Court, (Los Angeles County) State of California Case No. BC 453870.
Client Attorney:
Mr. Arnoldo Casillas, Attorney at Law, GREGORY W. MORENO & ASSOCIATES, 3500 West Beverly Blvd., Montebello, CA. 90640. Phone: (323) 725-0917.


**Trial:** September 26, 2012. Jacque Cedric Noel v. City of Los Angeles, USDC Case No. CV10-04044.
Client Attorney:
Mr. Christopher Driscoll, Esq., Jonas & Driscoll, LLP, 555 West Fifth Street, 31st Floor Los Angeles, CA 90013. Phone: (213) 683-2033.


**Deposition:** September 28, 2012 and September 29, 2012. Robert E. Campbell, et al. v. City of Lubbock, Texas, et al. USDC (Lubbock, Texas) Case No. 5:11-cv-00116-C.
Client Attorney:
Mr. Kervyn B. Altaffer Jr., Attorney at Law, Law Office of Kervyn B. Altaffer Jr., 13140 Coit Road, Suite 440, Dallas, Texas 75240, Mailing Address: P.O. Box 831072, Richardson, Texas 75083. Phone: (972) 948-5385).

**Deposition:**  October 2, 2012.  819.  Annette D. Montalvo et al, v. Los Angeles County, et al. Superior Court (Los Angeles County), State of California      Case No. TC023708.
Client Attorneys:
Mr. John C. Taylor, Attorney at Law, Ms. Louanne Masry, Attorney at Law, Taylor & Ring, LLP, 10900 Wilshire Blvd. Suite 920, Los Angeles, CA 90024.  Phone: (310) 209-4100.


**Deposition:**  October 3, 2012.  Chelsea Garrett, v. City of Stow, et al.  USDC Case No. 5:12-cv-404, JRA October 3, 2012.
Client Attorney:
Mr. Nicholas A. DiCello, Attorney at Law, Spangenberg Shibley & Liber LLP, 1001 Lakeside Avenue East, Suite 1700, Cleveland, Ohio 44114.  Phone: (216) 696-3232.


**Deposition:**   October 11, 2012.  Federico Cornejo, et al, v. County of Los Angeles, et al. USDC Case No. CV 12-3242 SVW (Shx).
Client Attorney:
Mr. Craig L. Chisvin, Esq.  Chisvin & Associates, 11845 West Olympic Boulevard, Suite 1040W, Los Angeles, CA 90064.  Phone: (310) 820-4488.


**Deposition:**   October 15, 2012.  James Parker v. County of Los Angeles, et al.  USDC Case No. CV12-0064-SVW (FFMx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.


**Deposition:**   October 16, 2012.  959.  Elizabeth Escalante, v. City of Los Angeles, et al.  Case No. BC 452902.
Client Attorney:
Mr. Miguel G. Caballero, Attorney at Law, Moreno & Perez, APC, The Petroleum Building, 714 West Olympic Boulevard, Suite 450, Los Angeles, CA 90015.  Phone (213) 745-6300.


**Deposition:**  October 17, 2012.  Eva Gutierrez and Dionicio Gutierrez v. County of Los Angeles, et al. Case No. CV 10-07608 PSG (AJWx).
Client Attorney:
Mr. Dale K. Galipo, Attorney at Law, The Law Offices of Dale K. Galipo, 21800 Burbank Boulevard, Suite 310, Woodland Hills, CA 91367.  Phone: (818) 347-3333.

-55-

**Trial:**  October 18, 2012.  Cristina Ibarra, v. City of Los Angeles, et al.  Superior Court (Los Angeles County), State of California Case No. SC108224.
Client Attorneys:
Mr. Miguel G. Caballero, Attorney at Law, and Mr. Frank Perez, Attorney at Law, Moreno & Perez, APC, The Petroleum Building, 714 West Olympic Boulevard, Suite 450, Los Angeles, CA 90015.  Phone (213) 745-6300.


**Deposition:**  October 26, 2012.  Calvin Chang, v. The Regents of the University of California, Superior Court (Sacramento County), State of California Case No. Case No 34-2009-00033484.
Client Attorneys:
Mr. Dennis P. Wilson, Attorney at Law, Wilson Trial Group, 3322 W. Victory Boulevard, Burbank, CA 91505.  Phone: (818) 843-1788.
Mr. Anthony N. Luti, Attorney at Law, The Luti Law Firm, 7095 Hollywood Boulevard, Hollywood, CA 90028.  Phone (323) 960-2600.

# EXHIBIT "B"

# Barry E. Gustin, MD, MPH, MBA, MA
## FAAEM, FACFM, FABEM, FABFM
**Board Certified in Emergency Medicine and Forensic Medicine**
**Practicing Emergency Physician and Toxicologist**

## 2928 Derby Street
## Berkeley, California 94705

email: bgustinmd@med-legal-expert.com

**510-549-1041 work**
**510-549-3268   fax**

November 1, 2012

Dale Galipo, Esq.
Law Offices of Dale K. Galipo
21800 Burbank Boulevard
Suite 310
Woodland Hills, CA 91367

RE: Sylvester matter

Dear Mr. Galipo:

You have requested that I review Mr. Sylvester's file and prepare a report.

Case History and Overview:

Mr. Sylvester was a 35 year old male (DOB 4/2/75) with a "psych" history who previously was on anti-psychotic, anti-bipolar drug Geodon (ziprasidone). At the time of this incident he was taking Elavil, a tri-cyclic anti-depressant medication. He stood 6'2", weighed 300 pounds and was in an altercation with police officers on 6/22/10 during which time he was TASER'ed as many as 10 times by the police, and then restrained in handcuffs. Shortly thereafter he was noted to be unresponsive and apneic. CPR was performed by police, and 911 was called.

Paramedics received the call at 0714, were on the scene at 0717, left for Sutter Coast Hospital at 0738, and arrived at Sutter Coast Hospital at 0745. They found Mr. Sylvester to be in cardiopulmonary arrest. They were told by the police that they came to Mr. Sylvester's house on a call because of his reported erratic behavior when he became violent and attacked them. They claim to have tased him at least once and then he went down with no pulses. CPR was started immediately. The patient was found by paramedics to be asystolic. The patient was found by paramedics to be in handcuffs. Paramedics asked police to uncuff him, which they did. The paramedics intubated him with good breath sounds and with capnometer confirmation, they started

an IV and gave him epinephrine and atropine.  He briefly went into PEA (pulseless electrical activity), but this was short-lived as he became asystolic again.  He was given Narcan 2 mg, D50 one amp, and additional doses of epinephrine with no change in heart rhythm.  He was then taken code 3 to the hospital.

At Sutter Coast Hospital, the triage nurse wrote that he had been TASER'ed twice by the police.  He was found to be in asystole.  He was given additional doses of epinephrine and atropine, urine and blood were obtained for toxicology studies.  They noted that his only significant past medical history was "psych".  After 13 minutes of CPR the code was terminated at 0758 by the emergency physician, Dr. Stern.  Blood work was not obtained.

Dr. Stern documented that he was told by paramedics that the patient's down time since arrest to his presentation to the ED was approximately 20 minutes (BG comment:  it was 31 minutes, 0714-0745 hours).

The urine tox screen was negative for benzodiazepams, cocaine, amphetamine, cannabinoids, opiates, barbituates.


AUTOPSY:

An autopsy was performed by Neil Kushner, MD on 6/25/10, 3 days after death.  Findings included blunt force trauma to the head without evidence of intracranial hemorrhage, edema or pathology, blunt force trauma to the extremities, multiple skin abrasions and multiple skin surfaces, evidence of TASER (conducted electrical device, CED), electrodes present in skin of chest and face, hemorrhage of the pleura and intercostal tissue of the anterior chest, contusion of the adipose of the mediastinum, findings consistent with CPR/ACLS (IV, endotracheal tube, foley), conjunctival hemorrhage of right eye, contusion of upper gum, mild to moderate (10-30% occlusion) coronary artery atherosclerosis, cardiomegaly (heart weight 520 grams, LV wall thickness 1.3 cm), fatty liver, pulmonary congestion and pulmonary edema.

Evidence of TASER (CED) Use:  electrode with attached wire in the skin of the right cheek.   electrode with attached wire in the skin of the right side of the anterior chest.

Toxicologic analysis of heart (central) blood, urine, and vitreous:

Heart Blood:  Amitriptyline: 0.245 mg/L; Nortriptyline: 0.381 mg/L
Vitreous:  Amitriptyline: 0.031 mg/L; Nortriptyline: 0.084 mg/L
Urine:  Amitriptyline: 5.32 mg/L;  Nortriptyline: 9.40 mg/L;  diphenhydramine: 1.35 mg/L

In the vitreous and heart blood there was no Risperidone or Ziprasidone (Geodon) detected.

Cause of Death was deemed by the coroner to be:

a.  Excited Delirium, seconds to minutes
b.  Physical exertion during altercation and subdued, seconds to minutes.

Other findings:  Cardiomegaly; Atherosclerotic heart disease

The coroner concluded that the decedent died as a result of an excited delirium state.
According to the coroner, during the extreme physical exertion the decedent had
physical altercation which apparently included him attacking police officers.  The
coroner stated that this apparently necessitated that the decedent be subdued
physically and with the use of the TASER stun gun (CED).  The coroner is of the opinion
that pre-existing enlargement of the heart and coronary artery disease were contributory
to his death.  The injuries to his body were superficial and non-life threatening, he said.
The pleural and mediastinal contusions (and bleeding) were consistent with
resuscitation injuries.


TASER DEPLOYMENT LOG:

Shows 10 (ten) X26 TASER deployments on 6/22/10, from 07:08:28 to 0709:34, a
period of 1 minute and 6 seconds.  The duration in seconds of each deployment is 2, 2,
1, 5, 5, 5, 6, 6, 5, 5, for a total duration of conducted electrical current of: 42 seconds
during that 66 second period.  The times listed are the time the TASER cycle stops.

The officers testify that at some point the TASER cartridge was changed and the
TASER was re-deployed.  If this happened, then one possibility is that it occurred in the
time gap between the 3rd and 4th TASER discharge because it is the longest gap (14
seconds).  Also, Officer Dubreiul testified that the first effective TASER deployment was
a 5 second cycle.  The first 5 second cycle was the 4th deployment.  The last seven
deployments occurred within just a few seconds of each other, 9 sec, 11 sec, 8 sec, 7
sec, 7 sec, 6 sec and the duration of each of these seven discharges was either 5 or 6
seconds.  Thus, there was hardly any lag time between each of these seven TASER
deployments.


INCIDENT NARRATIVE: DNSO 2010000963 DATED 6/22/10: BY DETECTIVE
FLESHMAN:

1.  At 0631 hours police were dispatched to the home of a schizophrenic male who was
acting aggressively.  The man's mother was afraid to go into the house with him.
Officers Villarreal and Dubreiul arrived and contacted the subject, later identified as
Daniel Sylvester.

2.  A physical fight started between the decedent and the officers.  The officers then
used a TASER in an effort to subdue him.

3.  Shortly after being taken into custody, he stopped breathing, and an ambulance was called.  He was then taken to Sutter Coast Hospital, where despite resuscitation efforts he was pronounced dead at 0758 hours.

4.  The coroner noted the TASER electrodes and wires discussed above, redness of his hands and torso from a physical altercation, and marks on his wrist consistent with placement of handcuffs.

5.  The coroner interviewed the decedent's mother.  She said that her son had a few weeks earlier had his medication switched, and his demeanor soon changed from gentle and loving to aggravated, hostile and violent.  Although he never physical hurt her, or threatened to do so, he was loud and aggressive on that morning.  She became afraid of him and did not want to be in the house with him.  She called 911 and told the police officers about him, his condition, and his medications.  The police would not allow her to enter the house. When she saw her son and the deputies at the door, her son appeared angry but was quiet.  She told the coroner that the officers used the TASER before he hit them, but she could not confirm where she was and where they were when she allegedly saw or heard this.

6.  He then interviewed Brandon Sylvester, the brother of Daniel Sylvester who told him that he and his girlfriend were in bed at the residence at 0530 when Daniel woke them up accusing Jessica of taking his money to buy a car.  He was ranting and raving, screaming, calling her names.  He told her that she had to leave the house or he would kill her.  Both Brandon and Jessica then left the house.  The mother called the police after this.


STATEMENT of SERGEANT ALAN DUBREUIEL, taken by Special Agent Lee:

1.  He received the call at 0630 and his impression was that it was a 5150 of an individual who was off his medication and was acting violently, according to his mother.

2.  His partner took his TASER with him in his car, Officer Dubreuiel didn't.  They came in two separate cars.  On route to the residence, on a dirt road, they saw a car coming from the other direction, it slowed, and it turned out to be the decedent's mother.  She talked to his partner who was in the car in front of him.

3.  They then continued on to the residence.  The decedent was outside his home.  It was a clear cool morning.  The decedent had nothing in his hands.  The officer weighs 240 pound.  He thought that the decedent weighed around 300 pounds.  His height was 74" according to the coroner, but the officer thought that he was 5'9" or 5'10".

4.  He noticed that the decedent was sweating profusely.  He was hyperventilating and breathing very hard.

5. His partner, Officer Vilarreal asked the decedent what was going on.  The decedent made no sense when he answered.  He was ranting about a girl, but he could not remember what he said about her.  He was not making any threatening statements towards the officers at that point.

6. The mother returned, parked her car and came up behind the officers.  She wanted to intervene but the officers told her to stay back until they could determine what was going on.

7. Their dispatch included information about another girl in the house, so the officers asked the decedent if there was another girl in the house, and he said no.  One of the officers then went towards the house to see if she was inside, and at this point the decedent's demeanor completely shifted, and he became visibly aggressive towards them.  He didn't charge the police but ran to the door first to block them from coming in. He said, "there is no one inside, and you are not going inside."  At this point the officers became very concerned that there was in fact someone in the house.

8. At this point, Officer Vilarreal had his TASER in his hand, and both officers told the decedent that they are entering the house to see if there is someone inside, and that if he didn't cooperate, they would TASER him.  He then ripped open the closed sliding door, and he jumped inside, and he closed it.  He was trying to lock it.  The officers managed to get the door open before he could lock it.

9. They then told him to get back, and he said, ok, ok, and he complied.  He was told to sit down in a chair and he complied.  Then suddenly, he jumped up and punched Officer Vilarreal very hard in the face with his right fist.  Officer Vilarreal legs bucked and he may or may not have fallen.  Officer Dubreuil then made a move towards the decedent and the decedent managed to strike him in the right side of his face as well.  The force of the punch took him off his feet, and he fell backwards.

10. He got up and saw the decedent attacking Officer Vilarreal, striking him continuously in the face.  He tried to pull the decedent off his partner, but the decedent threw him off after he was able to pull him away from beating up his partner (5-6 blows to his partner's face as he straddled over him).  His partner's face was bloody.

11. He thinks that his partner TASER'ed him for the first time after he was punched. But he could not be 100% certain.  While Officer Dubreuil was on the decedent's back, he was yelling for his partner to get up and to TASER the decedent again.  Then his partner TASER'ed the decedent.  The TASER was shot directly at the decedent's face. After the TASER was deployed, the decedent went down during the 5 second cycle. But then he immediately tried to get back up again, and Officer Vilarreal pulling the TASER trigger again for a 5 second duration. He did not get back up after that deployment.

12.  They told him to put his arms out to his side.  He complied and he said something like, "Okay, I'm done, I'm done, I'm all done."  Officer Dubreuil then called in on his radio (10-35, which means officer needs back up).

13.  He then pulled out his baton (ASP) and told the decedent to stay down or he would be TASER'ed again.  He denies that he ever struck him with his ASP or with his fist.  He denied that he kicked him.  His partner than moved in and cuffed his right hand, then told him to move his other hand behind his back, and he complied, he then cuffed both hands.  He then rolled him onto his side, and right at that point he stopped breathing.  He immediately called for an ambulance.  He tapped the decedent's face to wake him up and he briefly started breathing again, but then shortly thereafter, stopped breathing again.  CPR was started during this time.

14.  Officer Dubreuil's injuries consisted of a hematoma/contusion on his arm, a cut on his cheek with a contusion and swelling, jaw pain.  His knee caps were sore, a pulled muscle of his right arm.

15.  The mother came into the house during CPR and she said, "Oh my God, You killed him with a TASER."

16.  The two officers talked about how quick and how strong the decedent was.

17.  He has been through TASER training.

18.  Officer Vilarreal had cut bloody lips, chipped teeth, hematoma on the side of his forearm and the back of his head.  He looked dazed.  The decedent never had a weapon.

19.  He saw his partner trying to punch the decedent when he was on his back and the decedent was over him, punching him.  His partner had his gun out later after they TASER'ed him and had him on the floor.  Officer Vilarreal said to the decedent not to get up he would shoot him.  The decedent then said that he was done.  Office Vilarreal then holstered his gun and cuffed him.


DEPOSITION OF OFFICER DUBREUIL:

11.  He had TASER training in 2004 and 2009, in a classroom setting by one of his TASER officers.  His name was Jeff Dixon.

12.  It was a two hour class.  They were taught never to point the TASER to someone's face of eyeballs, or groin area.

13.  He doesn't recall being taught that if you TASE someone repeatedly that could be a potential health risk, and cause serious injury.

14. He said that the dangers included water, falling from a high place. They are the only risks to TASER use that he remembers reading about in the TASER literature.

15. He said that on the day of the incident he did not think that repeated tasseling would cause death or dying.

18: He only used a TASER once before. It was the M26. He used in the probe mode (not drive stun mode).

21: The 911 call was made from McDonalds because the mother was afraid to be at her home. She was actually requesting assistance from mental health but they weren't open yet. (that was on the recorded phone call from dispatch).

22: He didn't hear the dispatch recording until after the incident.

25: His partner had a conversation with Ms. Sylvester lasting 30-60 sec when he was in his car, and she was in hers. Office Vilarreal did not tell him what the conversation was about.

28: He was never told that the decedent had a weapon, that there was someone else in the house besides him. He has experience with mental patients and 5150's.

34: They knew he was a mental patient, that he was on medication, and that he was talking gibberish when they questioned him. (**BG Comment:** This alone required accessing a mental health conflict management team. EMS are trained in crisis intervention and conflict management. They should have been called in to assist with chemical sedation. The police should have stepped back, and should have always been open-handed, once it was determined that he didn't have a weapon. See below for more discussion of this topic)

35: But then he says that he answered questions appropriately. When asked if there was someone in the house, he said no. He was responsive. He did not use any profanity when talking to the officers.

36: The mother said that she did not know if the girl was in the house. Neither the mother nor the decedent ever gave the officers permission to enter their house.

38: When the decedent ran inside the house, he tried to lock the door but the police prevented him from doing that and forced their way past him into the house. There was no physical contact at this time. Officer Vilarreal had his TASER in his hand at this point. The decedent was told that he would be TASED if he didn't cooperate.

40. While he was outside, the decedent was not verbally abusive, did not try to kick or punch, and did not have a weapon in his hand. He was not told that he was under arrest when he was outside.

42: When threatened with a TASER, he calmed down, backed away, and complied with orders to sit down in a chair.

46: He never saw anyone else in the house. After sitting in the chair for just about 5 seconds, the decedent suddenly leaped out of the chair and punched officer Vilarreal in the face. He saw him punch his partner and he heard the audible blow. He jumped up in response to this, and then was punched in the fact by the decedent as well.

50: Officer Vilarreal somehow deployed the TASER around the time he was punched in the face because Office Dubreiul saw one of the probes from a TASER cartridge embedded in the decedent's pant leg at the very bottle of the cuff.

52: Officer Vilarreal did not pull the TASER trigger before the first punch that was thrown by the decedent. He was never told by his partner how many times he pulled the trigger on his TASER. He was only aware of two times. He asked his partner, but he didn't know either.

56-59: Officer injuries are discussed, as above statement showed.

62: Office Vilarreal was 5 feet away from the decedent when he TASER'ed him.

64: After he was TASED, he immediately attempted to get right back up. Officer Dubreuil was still trying to hold onto him so he told Officer Vilarreal to TASER him again, and he did for 5 seconds.

66: Neither officer knew how many times the TASER trigger was pressed. The TASER download has 10 timed activations.

69: The decedent was not taser'ed until after he threw the first punch. He was TASER'ed twice and did not get up after this. He was not assaultive or combative after the second TASER while he was on the floor.

78: The decedent was quiet after the first and second TASERs. But he did say after the second one, "OK. I'm done." He has his ASP in his hand and was standing above him. He told him that he would be struck with the ASP if he tried to get up. Officer Vilarreal put the handcuffs on him.

80: When they rolled him to his side, he stopped breathing. He called dispatch to send two ambulance, one for the decedent and one for his partner who was injured.

82: It took about 20 seconds from the end of the second TASER to the placement of the handcuffs. It then took them about 10-15 seconds from the time he was cuffed to roll him onto his side. Thus it was about 30-35 seconds from the time the second 5-sec cycle ended to the time he was turned onto his side. It was exactly at this time that he appeared to take a deep breath after a sternal rub, then stopped breathing. He started breathing again, but then stopped again.

85:  She heard the decedent's mother say, " Oh my God, you killed him with a TASER."

92:  Officer Vilarreal had his gun out after the second TASER.


STATEMENT of DEPUTY FRANK VILARREAL, taken by Special Agent Lee:

1.  They received a call that a man was yelling at his family, and the family left to go to Denny's because they were scared.  On route to his house, they passed the mother driving in the other direction on a narrow dirt road and he stopped and she told him that her son had a recent change of medication a month ago, and he wasn't the same person.

2.  He put his TASER in his back pocket when he saw that the decedent was a big guy. The decedent told the officer that there was no problem there and they should just leave.  After some coaxing he began to talk about a woman in the house who was trying to kill him and his dog.  He was hyperventilating at the time.  He also said that he was taking Haldol.  He became non-conversant and jumped back a bit.  Officer Vilarreal told his partner to check in the house to see if there was a woman there, and that is when the decedent said, "fuck you", and ran into the house and tried to lock the door.  His partner prevented this.  Officer Vilarreal took his TASER out and as they entered the house, he told the decedent to stop and calm down or he was going to get TASE'd.  He was instructed to sit down.  He complied.

3.  He then suddenly jumped up and punched the officer in the face.  He admits to a brief loss of consciousness, and  he told the ER physician this.  When he came to, he was being beaten with the decedent on top of him.  He was frightened that he would be killed.  His partner eventually got the decedent off him and his partner yelled at him to deploy the TASER again.

4.  He saw two probes in the decedent's body, one in his cheek, one in his chest.

5.  At the hospital, Officer Vilarreal had a CT of the head and an X-ray of his hand.

6.  He thought that the decedent was going to kill his partner, so he went over and started hitting him on his head and yelling at him to get off his partner, but it didn't faze the decedent, it just made him angrier.

7.  After the second TASER deployment, he didn't get up.  He took his gun out and told him not to move or he would be shot.  That is when they were able to handcuff him.


DEPOSITION OF OFFICER FRANK VILARREAL:

11: He had the X26 Taser with him. He was trained to use this in December of 2009. It was a classroom setting with a certified instructor. Two training sessions.

14: He was aware of TASER warnings about the TASER device before the incident.

15: He used his TASER twice before this event. Once in a drive-stun mode with a combatant person, and twice in a probe mode.

26: He was told by Sergeant Dubreuiel that the call involved a family disturbance/5150, meaning that this was a person with a mental disturbance. He said that he has specific training about how to deal with people who have mental disturbances. But he could not remember what he was taught. This was back in 1999.

28: At the time of the incident he was 179 pounds and stood 5'9". When asked whether he received any training or information about not deploying the TASER more than 3 times on a subject, he kept saying that he did not understand what he was asking.

30: He would only answer that it was frowned upon to use a TASER on a pregnant woman or juvenile. Then he said that he could not recall whether or not he was told not to use the TASER more than 3 times, especially on someone with a mental disorder.

32: Finally, he admits that at the time of the incident he thought that he could activate his TASER as many times as he wanted. He based this, not on his training, but on his impression that he was fighting for his life. Again, he said that he was never told that there was a maximum number of deployments, especially as it concerns the probe mode.

34-36: He refuses to answer the question about the dangers of excessive TASER activations and whether he knew about this. ("I don't recall", "I don't know", "I don't understand what you are asking"). He said that he does not recall what the potential risks were to a subject being TASED.

39: He only remembers deploying the TASER twice. He pulled the spent cartridge off the front of the TASER and reloading it again and deploying it a second time. Rather than continue to activate the first TASER, he believed that for some reason the first TASER had no effect on him, so that is why he reloaded his TASER with another cartridge, and shot him again.

41: He said that the second deployment had no effect on the decedent as well. (**BG Comment:** Office Dubreuil offered contradictory testimony when he said that the second TASER dropped the decedent, and then Officer Vilarreal took his gun out and told him to stay on the ground, or he would shoot him). Officer Vilarreal testified that the second deployment had no effect on him, and he only went to the ground after he took his gun out and told him he would shoot him if he did not go to ground. The decedent complied and got to the ground. He told him to put his hands behind his back, and he

complied.  He then holstered his gun and handcuffed the decedent.  He did not resist and he was in the prone position.  This is discussed in more detail below)

45-47:  He says that he only saw 2 probes although there should have been 4 (2 from each deployment).  He did not know how far away the decedent was when he TASER'ed him.  He could not remember how many times he pulled the trigger on the TASER device.  He could not even remember if he pulled the trigger at all.

49:  The decedent threatened family members who left the home and went to a restaurant.  The decedent's mother told him that he had recently had a change of medication about 2 weeks earlier, and he wasn't acting right.

51:  The mother never told him that it was alright for him to go into the house.  He does not recall asking the mother whether or not he was threatening a woman.

54:  The decedent never verbally abused him, threatened him, did not have a weapon in his hand.

56:  The decedent told him that there was no problem there and that they could just leave.  The officer said to him that there must be some problem because his mother called the police.  He then said that there was a woman who wanted to kill him and his dog.  He also told the officer that he was taking **Elavil**.

57:  He said that he hadn't taken the medication that morning.  After this conversation, the decedent jumped into a fighting stance.  Officer Vilarreal said that if there was a woman inside, his partner would check it out while he waited outside with him.  This is when he said "Fuck You", and ran towards the sliding glass door.  This door was about 5 feet away from the officer.  The decedent was closer to the door than the officer.

61:  He never saw him reach for a weapon, or possess a weapon.  He had pepper spray and a baton on him at this time.

62:  The sliding door was open.  He had his TASER in his hand which was by his side.  When they got inside the house he told the decedent to sit in a chair or he would TASE him.  He complied.  Officer Vilarreal was standing in the doorway to the house at this time.

67:  He was sweating profusely.  He knew that he was a mental patient by history, and by his behavior.

69:  Next thing he knew the decedent was on top of him hitting him and he was on his back.  He was being hit in the head and face and his mouth was filling up with blood.

71:  Once his partner pulled the decedent off, he stood up and started hitting him in the head with his fists but it had no real effect.  He then turned his attention towards him, and his partner yelled for him to TASER him again.

75-76:  Once the decedent was on the ground he did not TASE him again because he was compliant with orders.  He set the TASER off to his right side and drew his gun at this point.  He deployed his TASER while he was standing, never when he was on the ground.

77:  After the decedent was handcuffed he rolled him onto his left side, so that he could breath properly.  He didn't want to keep him on his stomach.  It appeared that he was having some trouble breathing.  He took a gasp of air and then stopped breathing, then took another gasp of air, and then stopped breathing again (**BG comment:** agonal breathing- associated with cardiac arrest or anoxia).

80:  He said that it was just a few seconds after he was handcuffed that he stopped breathing.  He was trained in CPR and had a CPR mask in his car.

85:  No suture of lacs of lip or head.


DEPOSITION OF DEPUTY DANIEL SCHKNECK:

10:  It took him 5 minutes from his call to get to the Sylvester residence.  He came code 3 with sirens and lights.

15:  He was not told by the officers that they tased Mr. Sylvester.

16:  No one was giving CPR to Mr. Sylvester when he came into the house.  He was in the process of being handcuffed when he came into the house by Officer Vilarreal.

17:  The handcuffing was completed in his presence.  After the handcuffing he was rolled over onto his back.

18:  He then checked his pulse and heard that he was breathing.

19:  Soon after this he stopped breathing, within one minute of being handcuffed.

21:  He then began CPR on him.

24:  It was seconds from the time he was handcuffed to the time he checked his pulse. He couldn't remember if he had a pulse or not/

27:  But when he stopped breathing he check for a pulse at the neck and could not find one.

29:  He did CPR on him until fire and medical arrived.  EMS arrived relatively quickly after he arrived.

31:  He checked his vital signs almost immediately after he was handcuffed.

## TASER DISCUSSION:

The TASER model used by Officer Vilarreal was an X26.  The X26 TASER has the following characteristics:  50,000 Volts, 3 amperes, 19 pulses/sec, 15 watts of power, 100 micro-coulombs of energy.  Shocks occur even if barbs are embedded in clothing. The discharge delivers the same electrical exposure whether the skin is dry or wet.  The further apart the electrodes the more powerful the force.  Drive stun application is less effective because the electrodes are closer together.  Consecutive TASER discharges will deliver a cumulative electrical charge to an individual in a shorter period of time then if the TASER discharges are spread out over time.  The physiologic alterations produced predictably would be greater than if the TASER deployments were administered in a spread out fashion which would allow the body to compensate to some degree.

1.  The medical examiner does not say that the TASER was a contributing cause of Mr. Sylvester's death.  This could be because he was told that there was only one or two deployments of the TASER.  It does not appear that the medical examiner knew that the TASER was deployed 10 times for a total of 42 seconds over a 66 second period,  He noted that the probes were in the decedent's face and chest.  Had he had access to the TASER deployment log, he may have had a different conclusion regarding the CED's contribution to Mr. Sylvester's death.

2.  The medical examiner does not say that amitriptyline in his system was a contributing risk to Mr. Sylvester's death.  I disagree for reasons discussed below in the Toxicology section.

3.  TASER International literature, which is predicated on research and findings of scientists, expert panels, committees, and hearings, states that certain vulnerable population groups are at greater risk for adverse health effects from TASER electrical discharges.  These groups include children, elderly, pregnant women, individuals with pacemakers or underlying heart disease, asthma and pulmonary problems, schizophrenics and those with other severe mental disorders, and individuals on sympathomimetic illicit drugs, such as methamphetamine and cocaine.  In their own Warning and Release material, TASER International specifically says that prolonged and or continuous exposure to the TASER device's electrical discharge should be avoided in susceptible people which they list as having one or more of the following conditions: excited delirium, severe exhaustion, drug intoxication, chronic drug abuse, and over exertion from physical struggle.  It says that the stress associated with prolonged or continuous TASER exposure may result in serious injury or death. Consequently, all police officers using a TASER  device are trained on the judicious use of TASER's in these at-risk groups.  Both Officer Dubreuil and Officer Vilarreal claim that they were not specifically trained about at-risk vulnerable population groups, except for children and pregnant women.

The TASER literature also says that it could be dangerous to give more than 3 TASER activations (up to 15 seconds of activation, 5 seconds activation for each deployment). Studies in non-agitated healthy volunteers have shown that up to 15 seconds of TASER activation is safe. But testing has not been done with longer activation, or in the field with the at-risk vulnerable population groups listed above because of ethical considerations. TASER training classes present materials that document hazards associated with TASER use. Both officers denied that they knew anything about these risks at the time of the incident, and even now when they have had plenty of time to re-review their training materials. I discuss this further in my summary section below.

4. TASER literature also says in part that the ECD (electronic control device) can produce physiologic or metabolic effects which include, but are not limited to, changes in: acidosis; adrenergic state; blood chemistry, blood pressure; calcium, creatine kinase ("CK"); electrolytes (including potassium); lactic acid; myoglobin; pH; respiration; heart rate, rhythm, cardiac capture; or stress hormones or other biochemical neuromodulators (e.g., catecholamines). Therefore, reasonable efforts should be made to minimize the number of ECD exposures and resulting physiologic and metabolic effects. Adverse underlying physiologic or metabolic effects may increase risk of death or serious injury.

5. 2012 TASER literature also states that a 2011 human study has shown that a discharge from a research prototype ECD, applied through a probe that has penetrated the frontal chest in a region overlying the heart, is capable of inducing an inappropriately high heart rate by a mechanism known as cardiac capture or pacing. While a short period of rapid cardiac capture or pacing in young and healthy individuals may not have major clinical implications, serious complications could arise in those with impaired heart function caused by an underlying heart condition or through the action of certain licit or illicit drugs. Individuals who use certain drugs or have heart conditions (e.g., coronary artery disease, myocardial infarct, dilated or hypertrophic cardiomyopathies, corrected congenital heart disease, Brugada syndrome and long QT syndrome), are at greater risk of developing serious sustained ventricular arrhythmias, if provoked by abnormal heart stimulation.

6. I would add that cardiac capture has been described several years before this 2011 study, anecdotally by researchers in specific cases, and in swine studies (see my Addendum to this report). I would also add that Mr. Sylvester, the decedent, received a longer period of activation than usual since he received, according to the TASER deployment log, 42 seconds of electrical energy over a 66 second period. This is much greater than the 15 seconds that has been studied in years past in healthy volunteers.

According to the medical examiner, Mr. Sylvester had underlying heart disease: mild-moderate coronary artery atherosclerosis (10-30% occlusion), but this, in my opinion, is not sufficient disease to place him at increased cardiac risk. I also disagree with the medical examiner that he had cardiomegaly. Mr. Sylvester weighed 300 pounds. His heart weighed 520 grams. The average heart weight for a man this size is 456 grams. The lower 95% confidence limit of normal is 346 grams; the upper 95% confidence limit

is 602 grams.  346 grams - 602 grams is the normal range for 95% of healthy male adults weighing 300 pounds.  Mr. Sylvester's heart size, therefore, was normal.

His 10-30% atherosclerotic occlusion of his coronary arteries may only become clinically relevant if he experiences severe vasoconstriction, as might occur with pressor medications like epinephrine or activation of the sympathetic nervous system.  His sympathetic nervous system, in fact, is hyperactive in excited delirium, with struggle, and with TASER applications because each increase catecholamine production.  It is impossible to determine whether vasoconstriction was sufficient to fully occlude his partially occluded coronary arteries.  Therefore, I disagree with the medical examiner that pre-existing cardiac disease was a contributing factor to his death.  It may have been; it may not have been.

7.  TASER International has stated that reasonable efforts should be made to minimize the number and duration of ECD exposures.  In some circumstances, in susceptible people, it is conceivable that the stress and exertion of extensive repeated, prolonged, or continuous application(s) of the TASER ECD may contribute to cumulative exhaustion, stress, cardiac, physiologic, metabolic, respiratory, and associated medical risk(s) that could increase the risk of, or result in death or serious injury.  The TASER Deployment Log shows ten TASER applications to Mr. Sylvester over just a one minute period.  By all estimates, this is excessive.

8.  In terms of strike location TASER says that when possible, avoid intentionally targeting the ECD on sensitive areas of the body such as the head, throat, chest/breast, or known pre-existing injury areas without legal justification. The preferred target areas are below the neck area for back shots and the lower center mass (below chest) for front shots. The preferred target areas increase dart-to-heart safety margin distance. Back shots are preferable to front shots when practicable.  Mr. Sylvester was TASER'ed on his face and right chest, rather than on the recommended regions.

9.  Continuous and prolonged electrical stimulation from a TASER device embedded on the chest might have a direct deleterious effect on his heart, independent of other physiologic and metabolic alterations caused by the TASER electrical current as discussed above, and in my attached Addendum (Nanthakumar, K, Cardiac electrophysiological consequences of neuromuscular incapacitating device discharges. J. Am. Coll. Cardiol., 2006, 48:798-804, Webster, JG et al.  Can Tasers directly cause ventricular fibrillation. P. 3307-3310, University of Wisconsin Dept. of Biomedical Engineering, Abstract no.327, US Department of Justice Publication; Walter RJ, Dennis, DO et al, TASER X26 Discharges in Swine produce potentially fatal ventricular arrhythmias, Academic Emergency Medicine. 2008, 15-66-73).

## EXCITED DELIRIUM:

1.  The medical examiner said that Mr. Sylvester died from excited delirium and physical exertion.  Mr. Sylvester was a schizophrenic or bipolar patient who had recently been

taken off his anti-psychotic medication (Geodon) and placed on a tri-cyclic anti-depressant (TCA), Elavil.  The police officers were aware of this.  When he was contacted by police, the police officers describe a profusely sweating, hyperventilating, paranoid man with rambling incongruent speech, who appeared to be overstimulated, and who later became agitated and violent.  These findings are consistent with the excited delirium syndrome.

2.  Excited delirium is a hypermetabolic state that is characterized by hyperactivity, hyperthermia, profuse diaphoresis, hyperventilation and tachycardia, and agitated delirium.  Metabolic features include rhabdomyolysis, hyperkalemia, and profound metabolic acidosis.  Excited delirium deaths may occur when there is endogenous mental disease, and these deaths are often associated with excessiveTASER electrical discharges, intense physical struggle, and/or physical restraint.

3.  Delirium is characterized by acute transient disturbance in consciousness and cognition; disorientation; disorganized and inconsistent thought processes; inability to distinguish reality from hallucinations; disturbances in speech; disorientation to time and place; and misidentification of individuals.  It appears from the officer's testimony that Mr. Sylvester manifested several features of delirium, largely disordered thought and speech processes.

4.  Catecholamines:  Those having excited delirium will have elevated catecholamine levels and progressively worsening lactic metabolic acidosis from constant exertion, both of which increase the arrhythmogenic propensity of the heart.  Catecholamines increase both heart rate and contractility, and also increase afterload, meaning that the left heart must work harder to eject and circulate blood.  High catecholamine levels result in cardiotoxicity, and reduce the ventricular fibrillation threshold of the heart.  Peak levels of catecholamines are reached not during the physical exertion but in the 2 to 5 minutes after cessation of activity, and may reach ten times base levels (Dimsdale JD, Post-exercise peril: plasma catecholamines and exercise. J. Am. Med. Assoc. 251:630, 1984).  This period has been referred to as a "period of peril, when the heart is most sensitive to the development of lethal arrhythmias.  Metabolic acidosis independently also sensitizes the heart and lowers its ventricular fibrillation threshold.  Ventricular fibrillation often degenerates into asystole when anoxia is present.  Mr. Sylvester was found by paramedics to be in asystole after his cardiopulmonary arrest, and a sustained period of anoxia.

5.  Metabolic acidosis:  Individuals with excited delirium often demonstrate profound metabolic acidosis.  In one study, arterial pH ranged from 6.25 - 6.81 (Hick, JL, Metabolic acidosis in restraint-associated cardiac arrest. Acad. Emerg Med 6:239, 1999).  In another study, after 18 initial TASER strikes, the pH fell from 7.4 to 7.0, and lactate levels peaked at 15 mmol/L at 30 minutes after the TASER strikes, up from 3 mmol/L pre-deployment.  The pre-deployment pCO2 was less than 50 mm Hg, and increased to nearly 100 mm Hg immediately post discharge (McBride, DK, Efficacy and Safety of Electrical Stun Devices. Potomac Institute for Policy Studies Report: Number 05-04. 29 March, 2005;  Butt, J, TASER Technology Review Final Report. Office of the

Police Complaint Commissioner. British Columbia, Canada OPCC File No 2474. 14 June, 2005). Thus, excited delirium patients who, by definition are already in an acidotic state, when excessively TASER'ed, will develop worsening metabolic acidosis that can result in serious adverse health events, like sudden death.

6. TASER International concludes that TASER deployments are not a significant concern for a short duration discharge (like 1 cycle- 5 seconds, except perhaps in vulnerable population groups as stated above), but may be "a more relevant concern for extended duration applications."

7. Death in excited delirium appears to be facilitated by a respiratory arrest. As such, anything that interferes with respiration might hasten or precipitate the lethal process, as well as further compound the acidemia by adding a respiratory component to the profound metabolic acidosis (respiratory acidosis by $CO_2$ retention). TASER International, in their literature discussing duration of field applications, states that TASER discharge across the chest may cause "sufficient muscle contractions to impair normal breathing patterns" (User Certification Course. TASER X26 Non-Lethal Weapon. TASER International. V 12.0, November 2004.) Mr. Sylvester had a TASER probe in his right anterior chest. Sustained discharges across his chest over the course of a minute may have produced sufficient chest wall muscle contraction to impair normal breathing patterns. Alternatively, profound acidosis and catecholamine excess, plus the pain of contraction or cardiac capture, and the effect of Elavil (see below) may have first produced a lethal arrhythmia that then led to a secondary pulmonary arrest.

8. Both officers said that they have received specialized training in how to deal with mentally ill patients including those who are agitated or deranged. Mr. Sylvester was not initially a danger to the officers. He did not have a weapon, did not verbally or physically threaten them, and he only fled into the house once he heard that they intended to enter his home. It was a mistake for the officers to force their way past him into his home because it increased his paranoia and agitation.

9. Officer Vilarreal should not have had his TASER gun in his hand while they were talking to Mr. Sylvester, since they were aware that Mr. Sylvester had no weapon in his possession. This scares an individual, particularly an individual with mental illness.

10. Had they called for additional police and medical back-up, the correct approach to Mr. Sylvester would have been for the officers to back away and disengage, and for trained paramedics to step in to do conflict resolution and psychiatric crisis management in an open-handed way by talking Mr. Sylvester down, saying that they are there to help him, that he is not being arrested, that they just want to get him to the hospital so he could get the correct medication so he would feel better, and so on. Experience shows that this approach results in de-escalation of the situation, and a cooperative patient. Instead, the officers allowed the situation to get out of hand by confronting, challenging, and threatening psychiatric patient, Mr. Sylvester.

## TOXICOLOGY ANALYSIS:

Heart Blood:  Amitriptyline: 0.245 mg/L; Nortriptyline: 0.381 mg/L
Vitreous:  Amitriptyline: 0.031 mg/L; Nortriptyline: 0.084 mg/L
Urine:  Amitriptyline: 5.32 mg/L;  Nortriptyline: 9.40 mg/L;  diphenhydramine: 1.35 mg/L

In the vitreous and heart blood there was no Risperidone or Ziprasidone (Geodon) detected.

The autopsy was conducted 3 days after Mr. Sylvester's death.  By this time, significant postmortem redistribution had occurred.  The blood and urine levels therefore are probably much higher than antemortem levels.  Vitreous fluid is more stable than blood or urine so the levels are closer to antimortem levels.  The vitreous levels noted are consistent with a standard 50 mg dose of amitryptyline (Elavil) at 2-4 hours after ingestion.  Mr. Sylvester said that he didn't take his medication that morning.  That is possible because Elavil has a half life (T1/2) of 8-51 hours.  So he could have taken his last dose of Elavil the day before.  Nortriptyline is a metabolite of amitriptyline and at steady state is usually at a higher concentration than amitriptyline by a factor of 2-3 times.  The presence of a steady state demonstrates that Mr. Sylvester was taking his Elavil consistently.

TCAs increase the risk of arrhythmias and heart block particularly amitriptyline, and may be a risk factor in the sudden death of patients with any underlying cardiac disease (Witchel HJ, Psychotropic drugs, cardiac arrhythmia, and sudden death. J. Clin. Psychopharmacol. 23:58, 2003).  Amitriptyline can increase the risk of torsade de pointes (a ventricular tachycardia that may progress to ventricular fibrillation).  This rhythm disturbance occurs when there is blockade of the heart's potassium channels resulting in prolonged QT intervals and widened QRS complexes.  Thus, any potential alteration in potassium metabolism as would occur with elevated catecholamines and severe metabolic acidosis in the presence of amitriptyline could trigger a cardiac arrhythmia.  In fact, hypokalemia independently predisposes an individual to prolongation of the QT interval, development of torsade de pointes, and sudden cardiac death.  Hypokalemia is thought to occur when excessive repeated TASER applications cause profound muscle tetany, and then with cessation of electrical current, the immobilization results in total muscle relaxation (see the attached Addendum to this report).  Thus, amitryptyline and hypokalemia act synergistically to facilitate cardiac arrhythmia by similar mechanisms.  This effect is in addition to the cardiac effects of catecholamine excess, severe metabolic acidosis, hyperthermia, and excessive TASER applications.

TCA's are often given to patients with bipolar disease to treat the depressive component.  Geodon is also given to patients with bipolar disease as well as schizophrenia.  It is possible that Mr. Sylvester's psychiatrist was treating him for bipolar disorder, not necessarily schizophrenia.  That would explain the use of Elavil which is used to treat the depressive cycle of the disorder.  TCA's however, can accelerate bipolar cycling and actually induce mania.  Because Elavil has the potential to increase

the risk of an arrhythmia, Elavil may be a contributory risk factor in the death of bipolar individuals in the manic phase who develop excited delirium. And excessive TASER applications would exacerbate the deranged physiologic state already present in these individuals. I do not have Mr. Sylvester's mental health records. It would be useful to review them.

Thus, a mentally ill patient such as Mr. Sylvester who develops a "fight or flight" response, and then engages in a strenuous struggle, will develop excited delirium syndrome which I have described above. If an excited delirium patient is repeatedly TASED, once tetanic muscles relax, the individual enters a brief "period of peril" characterized by peaking levels of catecholamines and dramatically falling levels of potassium. Low potassium, marked elevations of catecholamines, and profound metabolic acidosis are the physiologic prerequisites that enable repeated excessive TASER applications to trigger a cardiopulmonary arrest and death. The presence of amitryptyline further increases the risk of TASER-induced arrhythmia. This, in my opinion, is what happened to Mr. Sylvester.

Because Mr. Sylvester was taking Elavil, having recently stopped taking Geodon, it is my opinion that he was at increased risk of sudden death in the setting of worsening excited delirium (from a "fight or flight" response and a vigorous struggle) and from excessive repeated TASER applications. The literature on Excited Delirium Syndrome in fact frequently cites abrupt cessation of psychotherapeutic medications or poor medication compliance as a cause (Morrison A, Death of psychiatric patient during physical restraint. Med Sci Law 41:46, 2001).

## OPINIONS:

1. It is my opinion, based on my experience and expertise, to a reasonable degree of medical certainty, that Mr. Sylvester died as a result of being repeatedly TASER'ed.

2. It is my opinion that the police officers erred in their approach to a decompensated mentally ill patient. Mr. Sylvester was treated like a dangerous criminal, not a medical patient in need of medical help.

The officers were called to his home by his mother because her son had psychologically decompensated. He had been agitated for several days since his medication had been changed from Geodon to Elavil. It is unclear from the records I have whether Mr. Sylvester was bipolar or schizophrenic. Review of his past medical records would be useful to determine this. Elavil could exacerbate the mania cycle of bipolar disorder.

The officers knew that the dispatch was a 5150 call for a disturbed mentally ill patient on psychotropic medication. Consequently, their approach to this individual required that they access emergency medical services, and police back-up. Mental illness is a disease, not unlike diabetes or heart disease. Mentally ill patients are unpredictable, and must be treated as unstable medical patients, not dangerous criminals. First

responders are taught that under no circumstances should unstable manic or schizophrenic patients be confronted, challenged, or threatened.  A calm open-handed approach is called for, preferably by trained first responders such as paramedics who are capable of doing psychiatric crisis intervention.

The officers put themselves in harm's way because of poor judgment.  Rather than try to escape from Mr. Sylvester's house in order to de-escalate the situation, the officers chose to TASE him, and they did so excessively until he could no longer move or get up.  Officer Vilarreal moved in after Mr. Sylvester was neutralized and handcuffed him, but a few seconds later noticed that he was not breathing, and was unresponsive.

3.  Testimony of the officers describes Mr. Sylvester taking a deep breath and then he did not breathe.  This was repeated once, and then he did not breathe at all.  This is a description of apneic breathing which occurs with severe apnea or a cardiac arrest.

4.  I note that the two officer's stories of what happened to Mr. Sylvester after the second TASER application are contradictory.  Officer Dubreuil said the TASER put him down, Officer Vilarreal said it didn't.  Both, however, say that they are unsure exactly how many times the TASER trigger was pulled during this one minute period.

5.  It is my opinion that the amount of TASER electrical energy received in a short period by Mr. Sylvester caused him to be rendered unconscious.   If he had just received 42 seconds of TASER activation over a period of 66 seconds (all 10 deployments), or 37 second of TASER activation over a 48 second period (the last 7 deployments), it is highly unlikely that he uttered any words or sounds at all.  If he received that magnitude of electrical energy, and then suffered a cardiopulmonary arrest just a minute or so later, it is implausible that he ever regained consciousness.

6.  Both 37 or 42 seconds of essentially continuous electrical energy based on research (see the Addendum to my report) are sufficient to trigger a cardiopulmonary arrest in an already physiologically compromised individual.  This amount of electrical energy is well beyond the amount (up to 15 seconds) found to be safe with healthy volunteers in controlled laboratory settings, and well beyond TASER International's recommendations for maximum TASER deployments, especially in at-risk vulnerable population groups, including mentally deranged individuals.

7.  It is my opinion that if the police had not confronted, threatened, challenged, engaged, and TASER'ed Mr. Sylvester, he would not have died from a cardiopulmonary arrest.  The cardiopulmonary arrest occurred because the aggressive confrontational actions the officers took exacerbated Mr. Sylvester's agitated state, and worsened his already unstable psychiatric condition.  Mr. Sylvester became hyperstimulated, hyperactive, hypermetabolic, and hyperadrenergic from the combination of panic, anxiety, fear, and a perception that he needed to fight for his life, and this created physiologic changes consistent with excited delirium syndrome (EDS).  Excited delirium syndrome was the physiologic primer that placed Mr. Sylvester at great risk for sudden cardiac death by a lethal arrhythmia from excessive continuous TASER deployments.

Absent those TASER deployments, it is my opinion that he would not have suffered a cardiopulmonary arrest.

8. In the literature of TASER-associated sudden in-custody death, Mr. Sylvester's scenario is characteristic and typical. The literature demonstrates hundreds of cases of hyperstimulated individuals with labile mental status either from sympathetic drugs like methamphetamine or cocaine or an underlying mental illness like schizophrenia or mania who are confronted by police, a struggle and/or chase ensues, a vigorous altercation occurs, physiology is profoundly altered, the individual is excessively and repeatedly TASED, and then seconds to a few minutes afterward while the individual lies quietly on the ground or floor, he is noted to have no respirations. CPR is performed, paramedics arrive and find the individual in a lethal arrhythmia which eventually leads to unsuccessful CPR and death. The physiologic explanation for this cascade of events is detailed above and in the attached Addendum.

9. It is my opinion that if the officers initially called for medical and police back up; or once in the house, fled from Mr. Sylvester, called for back up, and waited, Mr. Sylvester would have calmed down. It is my opinion that had the officers called in back up, medical and police, they could have contained the situation while preserving Mr. Sylvester's well-being. For the physiologic reasons discussed in this report and my Addendum, it is my opinion that the excessive consecutive TASER applications were the direct proximate cause of Mr. Sylvester's death.

10. It is my opinion that, absent the excessive TASER applications, it is more likely than not that Mr. Sylvester would not have had a cardiopulmonary arrest. A published observational study suggests that the incidence of death among patients manifesting signs and symptoms consistent with Excited Delirium Syndrome alone is less than 10% (Barnett JH, Substance use in a population-based clinic sample of people with first-episode psychosis. Brit. J. Psychiatry 190:515, 2007). The majority of in-custody excited delirium deaths therefore (greater than 90%) involve either stimulant drugs, restraint, and/or excessive TASER deployments. Mr. Sylvester was not under the influence of stimulant drugs. Mr. Sylvester was not restrained. Mr. Sylvester was excessively and repeatedly TASER'ed and he suffered a cardiopulmonary arrest as a consequence of this, just a minute or so after he was TASED.

11. It is my opinion that , in Mr. Sylvester's case, the excessive repeated TASER applications directly triggered a lethal cardiac arrhythmia, respiratory arrest, and death. Had Mr. Sylvester not been repeatedly and excessively TASER'ed, it is my opinion that he would not have died.

# Barry E. Gustin, MD, MPH, MBA, MA

**FAAEM, FACFM, FABEM, FABFM**
**Board Certified in Emergency Medicine and Forensic Medicine**
**Practicing Emergency Physician and Medical Toxicologist**

## 2928 Derby Street
## Berkeley, California 94705

email: bgustinmd@med-legal-expert.com

**510-549-1041 work**
**510-549-3268   fax**

November 1, 2012

Dale Galipo, Esq.
Law Offices of Dale K. Galipo
21800 Burbank Boulevard
Suite 310
Woodland Hills, CA 91367

RE: Sylvester matter

## ADDENDUM TO MY REPORT: Sylvester Matter

There is a temporal relationship between the TASER and the sudden cessation
of the hyperadrenergic agitated state characteristic of excited delirium patients.
There is also a temporal relationship between the time the individual is brought
down by repeated TASER activations and the cardiopulmonary arrest---within
seconds to a few minutes. The exact physiologic explanation for this has yet to
be definitively explained, but a review of the literature reveals several possible
explanations.

### The Physiologic Possibilities:

The mechanisms to explain sudden death in subjects who are in an agitated
hyperstimulated state and who are excessively TASER'ed are probably multifactorial.

The acute stress response is a neuroendocrine cascade that has two components:  the
sympathetic-adrenal-medulla axis (SAM) and the hypothalamic-pituitary-adrenal axis
(HPA). The SAM axis is responsible for the release of catecholamines, primarily
epinephrine which is produced from norepinephrine induced by cortisol (a function of
the HPA axis).  This is the so-called "fight or flight" response.  Epinephrine produces a

number of adaptive physiologic changes in response to stress including chronotropic and inotropic cardiac effects, increased systemic vascular resistance (vasoconstriction), increased arterial blood pressure, increased metabolism, and increased thermogenesis. It can also produce maladaptive physiologic changes including myocardial ischemia, cardiac dysrhythmias, lactic acidosis, and hyperthermia.

When the acute stress response is potentiated by excited delirium, there is greater catecholamine excess, and this would explain the profound lactic acidosis and hyperthermia present in many of these individuals.  Contraction band necrosis is a form of cardiac myocyte injury that has been related to excess catecholamines and found in subjects who died while in an excited delirium state. (Karch, 2009, Pathology of Drug Abuse)

The following are potential mechanisms that may explain TASER-related deaths in subjects in excited delirium:

Mechanism #1:  Metabolic Acidosis

When exertion and excited delirium are combined severe metabolic acidosis occurs. Profound metabolic acidosis can have significant negative cardiovascular effects, including promotion of dysrhythmias and autonomic instability which can contribute to cardiovascular collapse.

The acidosis is caused mostly by the elaboration of lactic acid by sympathetically induced catecholamine production leading to vasoconstriction which impairs the clearance of lactate by the liver.  The psychosis and delirium cause a hyper-stimulated state where exertion can occur far beyond normal physiologic limits.  This results in increased sympathetic catecholamine discharge and severe metabolic acidosis. Overwhelming metabolic acidosis leads to myocardial depression and sudden cardiovascular collapse.  Metabolic acidosis can reduce the ventricular fibrillation threshold by 20 to 40 percent. (Kroll MW, TASER Electronic Control Devices: Physiology, Pathology, and Law, 2009).  This state could be augmented by decreased respiration produced by the TASER immobilization, leading to a respiratory acidosis. Impaired ventilation impairs the body's natural hyperventilation homeostatic mechanism to blow off $CO_2$ in order to produce a compensatory respiratory alkalosis.

Cardiac output is compromised by severe acidosis.  Myocardial contractility decreases when the blood pH falls below 7.2 and acidosis will predispose the heart to ventricular arrythmias or ventricular fibrillation.  Excited delirium individuals have been found to have pH levels ranging from 6.25 to 6.81 (Hick, JL, Metabolic acidosis in restraint-associated cardiac arrest. Acad. Emerg Med 6:239, 1999).  One study showed a pH drop from 7.4 to 7.0 in a patient excessively TASER'ed (McBride, DK, Efficacy and Safety of Electrical Stun Devices. Potomac Institute for Policy Studies Report: Number 05-04. 29 March, 2005;  Butt, J, TASER Technology Review Final Report. Office of the Police Complaint Commissioner. British Columbia, Canada OPCC File No 2474. 14

June, 2005).  In a hospital setting, these patients usually survive when the acidosis is corrected assuming no co-morbid conditions such as serious trauma or underlying cardiac disease, or presentation to the hospital in cardiopulmonary arrest.

A swine study was performed by Jauchem (2006) in which pigs were exposed to repeated TASER exposures on and off for a period of three minutes.  He found severe acidosis with a pH of 7.0.  The lactate level was also substantially increased.  He noted that high concentrations of both hydrogen ions and lactate can cause declines in myocardial function independently of each other.  And he noted that acidosis can result in a lower threshold for ventricular fibrillation.  He also noted that there was no evidence of rhabdomyolysis because CPK was not increased. The results of two other swine studies which came to similar conclusions were published by Dennis and his associates in 2007 and 2008. The 2008 study established that "acid-base disturbances that have previously been associated with TASER discharges are primarily a result of intense skeletal muscle contractions, not apnea or depressed cardiac function."


Mechanism #2:  Cessation of the Stressor

Cessation of the stressor (cessation of the struggle ostensibly by any means--TASER, restraint, etc.) has been associated with delayed clearance of catecholamines from the blood (Dawes D, The Neuro-endocrine effect of the TASER X26.  Forensic Science International 183:14, 2009).  This delayed clearance might create a "period of peril" when uncleared circulating catecholamines cause potassium to enter cells.  This can lead to hypokalemia.  In the exertional state, potassium continually leaks out of exerting muscle tissue and this cellular uptake of potassium is a physiologic adaptation that maintains serum potassium within normal range.  When exertion ceases no additional potassium leaks from muscle since it is in a relaxed state, yet the catecholamine present in the blood will still act to drive the potassium into the cells.  Hypokalemia can cause cardiac dysrhythmias as well as respiratory arrest independent of cardiac arrest.

Hypokalemia and catecholamine excess, in addition to the sensitization of the myocardium produced by severe metabolic acidosis, has been proposed as a possible mechanism for the sudden death seen after the cessation of struggle for any reason in many in-custody deaths (DiMaio and DiMaio, Excited Delirium Syndrome: Cause of Death and Prevention, 2006).  Although metabolic acidosis is usually associated with hyperkalemia where intravascular H+ ions are exchanged for intracellular K+ ions, potassium is driven back into the cells by catecholamines especially during the quiescent period of activity when profound hypokalemia can occur.  Thus, the exact nature of potassium metabolism is unclear in these subjects, but whether potassium is elevated or depressed at the time of sudden death is probably irrelevant since both hyperkalemia and hypokalemia can cause cardiac arrhythmias.

Cessation of the stressor can also account for another possible mechanism:   Sudden cardiac death might be related to post-exertional peripheral arteriolar dilatation.  The vasodilatation coupled with a sudden decrease in venous return from the termination of

This document is a summary of my current opinions in this case.  In the event I am provided additional materials or information, I reserve the right to amend this document. Thank you for giving me the opportunity to review this matter for you. You may contact me if you have questions or comments, or if I can be of further assistance.

Kind regards,

Barry Gustin, MD, MPH

intense muscular activity can suddenly reduce cardiac output and thereby reduce coronary arterial blood flow while the heart rate is still elevated.  This has an arrhythmogenic effect.

Mechanism #3: End-Stage Catecholamine Depletion

After extreme exertion, at some point, cortisol (the "fight or flight" hormone) becomes depleted and norepinephrine is not converted to epinephrine.  Catecholamine production eventually decreases, catecholamine levels are depleted, and with the sudden onset of obtundation and body relaxation caused by the Taser, there is a rapid loss in vascular tone, with subsequent peripheral muscle lactate mobilization which then floods the body, producing a worsening metabolic acidosis.  This series of events can also be augmented by any one of the following:  any remaining unmetabolized circulating catecholamines, abnormalities in potassium levels, hyperthermia, and other maladaptive effects of increased metabolism that have yet to be elucidated, all of which can further sensitive the heart leading to spontaneous lethal cardiac dysrhythmias.

Mechanism #4:  Elevated Catecholamines

Elevated catecholamines from excited delirium, an exertional struggle, and the pain effects of repeated TASER applications could push an individual past the usual arrhythmogenic threshold.  The concomitant metabolic abnormalities previously mentioned would augment this.

Even though studies show that exertion is a much more potent stimulant for catecholamine release than pain-related stimuli (Stratton 1983), there are no studies that actually have measured catecholamines in exercising subjects versus TASERed subjects, only one study that measures salivary cortisol as a proxy for catecholamine production.  In this study, a 5 second Taser exposure in resting healthy volunteers did not to any significant degree activate the sympathetic stress response (Dawes 2009).  Of course, the study does not simulate field conditions in subjects who are have excited delirium, are markedly exertional, and who receive more than successive TASER exposures.

A Cohesive Theory:

The in-custody death phenomenon is likely a "perfect storm" of extreme physiologic conditions including an exaggerated stress response, potentiated by excited delirium, physical exertion and/or restraint, with hyperthermia, acidosis, electrolyte changes, autonomic deregulation, and exacerbation and/or unmasking of prior health problems.  Drugs including illicit drugs or psychotropic drugs may have a "kindling" effect that creates the neuro-physiologic changes that put these processes in motion.

Excessive TASER applications could be likened to the match that lights the kindling that starts the fire. The fire could be likened to the irreversible sequence of events that leads ultimately to cardiac arrest and in-custody death.

Limitations of Existing Studies:

Most human studies to date suffer from two primary limitations:

•The subjects are not under the influence of illicit drugs, psychotropics, or have excited delirium and are in generally good health. Thus, the studies don't replicate field conditions.

•The subjects generally only receive one 5 second Taser exposure. Ho, Dawes, and Moscati have evaluated 15 second exposures too, calling them "prolonged," but those are not comparable to the excessive exposures that are associated with death in the field.

These studies generally show no evidence of significant metabolic or cardiorespiratory effects using 5 or 15 second conducted electrical weapon discharges in healthy volunteers.

These studies differ dramatically from the circumstances in the field, where a subject is agitated, excited and hyperactive, and receives excessive TASER exposures. This is because the underlying metabolic condition of subjects in the field is very different than that of healthy volunteers. Thus, these laboratory findings are difficult to extrapolate to real-world conditions in which TASERs are used.

Of course, ethically no study in humans can be performed that would demonstrate the pathophysiologic mechanism or effect that would explain or account for delayed deaths seconds or a few minutes after conducted electrical weapon exposure in these high risk individuals. The existing studies, therefore, do not disprove that these mechanisms exist.

Recommendations:

Amnesty International in a 2006 report, based on analysis of 160 TASER-associated deaths, recommended that operational rules and use of force training should include a prohibition against using TASERs on the following groups, except as a last resort to avoid deadly force when no alternatives other than firearms are available: pregnant women; the elderly; children; emotionally disturbed persons or people who are mentally or physically disabled; people in vulnerable positions where there is a risk of serious secondary injury (e.g. in dangerously elevated positions, or near flammable substances); people under the influence of drugs. Furthermore, they conclude that

repeated shocks should be avoided unless absolutely necessary to avoid serious injury or death. Others have advised the same, including the U.S. Department of Justice that produced a detailed report in 2009 documenting 334 TASER-related deaths in the prior 8 years, and the Canadian Braidwood Commission that spent many days taking expert testimony and evaluating the dangers of conducted energy devices. The U.S. Department of Justice report stated that "state and local agencies are more likely to encounter individuals under the influence of drugs or alcohol, or individuals suffering from mental illness. Studies of conducted energy devices have indicated that the presence of drugs, alcohol, and mental illness may raise the risk of injury and fatality resulting from the use of such weapons". TASER International's Warning materials now corroborate these recommendations.

If you have further questions regarding this addendum to my report, please do not hesitate to contact me directly.

Kind regards,

Barry Gustin, MD

# BARRY E. GUSTIN, M.D.
## CURRICULUM VITAE

**ADDRESS:**

| | |
|---|---|
| Office: | 2928 Derby Street |
| | Berkeley, CA 94705 |
| | Tele: 510-549-1041. Fax: 510-549-3268 |
| | Email: barrygustin@mac.com |
| DOB: | November 30, 1953 |
| Social: Status | Married, 3 children |
| | Wife: Carolina, Pediatric Social Worker, Children's Hospital, Oakland, California |

**EDUCATION:**

| | |
|---|---|
| 1972 - 1976 | University of Vermont |
| | Burlington, Vermont |
| | B.A. Biochemistry, Zoology (Magna Cum Laude, 3.8 GPA) |
| 1978 - 1979 | Goddard College/University of Vermont |
| | Burlington, Vermont |
| | M.A. Nutritional Biochemistry |
| 1979 - 1983 | George Washington University School of Medicine |
| | Washington, D.C. |
| | M.D. |
| 1983 - 1984 | Highland General Hospital |
| | University of California |
| | Oakland, California |
| | Internship (Rotating) |
| 1985 - 1987 | New York Medical College |
| | Lincoln Medical & Mental Health Center |
| | Emergency Medicine Residency Program |
| | Bronx, New York |
| 1986 - 1987 | Bellevue Hospital Poison Control Center |
| | Medical, Occupational, Environmental, and Forensic Toxicology |

**BARRY E. GUSTIN, M.D., Page 2**

New York, New York

| | |
|---|---|
| 1995 - 1996 | University of California, San Francisco<br>Preventive Medicine Residency Program<br>Concentration:  Nutrition & Disease, Epidemiology, Medical Toxicology, Outbreak Infectious Diseases, Public Health Informatics |
| 1995 – 1996 | University of California, Berkeley<br>School of Public Health<br>Masters in Public Health, (MPH)<br>With High Honors: 4.0 GPA<br>Concentration: Toxicology and Poisoning, Substance Abuse, Biostatistics, Epidemiology, Nutrition & Disease, Infectious Outbreak Disease, Health Policy, Public Health Informatics |
| 2008 – 2010 | California Coast University, Santa Ana, California<br>School of Business Administration and Management<br>Masters in Business Administration (MBA)<br>With High Honors: 3.93 GPA<br>Concentration: Organizational Behavior, Leadership, and Strategic Management |

## LICENSURE AND CERTIFICATION:

| | |
|---|---|
| 1984-Current | California License Number:  G52596<br>New York License: inactive, 1985 |
| 1984-Current | DEA Number: BG0716867 |
| 1984 | Diplomat, National Board of Medical Examiners |
| 1988 | American Board of Emergency Medicine: Board Certified |
| 1998 | Re-Certified:  American Board of Emergency Medicine |
| 2007 | Re-Certified:  American Board of Emergency Medicine |
| 1989 | Fellow, American College of Emergency Medicine (FACEP) |
| 1996 | Fellow, American Academy of Emergency Medicine (FAEEM) |
| 1996-1999 | Board Eligible, Medical Toxicology (fellowship required for Board Certification after 1999) |
| 1994 | Diplomat, American Board of Forensic Examiners |

**BARRY E. GUSTIN, M.D., Page 3**

| | |
|---|---|
| 1994 | American Board of Forensic Medicine: Board Certified (BCFM) |
| 1994 | Fellow, American College of Forensic Medicine (FACFM) |
| 1990 | Advanced Trauma Life Support, Instructor |
| 1984 | Advanced Cardiac Life Support, Instructor |
| 1989 | Base Station - Medical Radio Operator |
| 1988 | Certified to supervise the practice of Physician Assistants and Nurse Practitioners California Department of Health |
| 1980 | Emergency Medical Technician (EMT) Certification |
| 2004 | EMTALA Competency Certification |
| 2008 | EMTALA Competency Recertification |
| 2010 | EMTALA Competency Recertification |
| 2012 Certification) | NIHSS Certification (Stroke Scale Competency |

**PROFESSIONAL EXPERIENCE:**

| | |
|---|---|
| 1984 - 1985 | Emergency Physician Kaiser Foundation Hospital Walnut Creek, California |
| | Emergency Physician Kaiser Foundation Hospital Richmond, California |
| 1985 - 1987 | Emergency Physician Lawrence Hospital Bronxville, New York |
| | Emergency Physician St. John's-Queens Hospital Queens, New York |
| | Emergency Physician New Rochelle Hospital New Rochelle, New York |

| 1987 - 1988 | Emergency Physician<br>Marin General Hospital<br>Greenbrae, California |
| --- | --- |
| 1987 - 1989 | Emergency Physician<br>Samuel Merritt Hospital<br>Oakland, California |
| | Emergency Physician<br>Delta Memorial Hospital<br>Antioch, California |
| 1988 - 1991 | Emergency Physician<br>Providence Hospital<br>Oakland, California |
| 1988 - 1994 | Emergency Physician<br>Kirkwood Ski Area Medical Clinic<br>Sierra Nevada Wilderness<br>Kirkwood, California |
| 1991 - 1994 | Emergency Physician<br>Emergency Physicians Medical Group<br>Brookside Hospital<br>San Pablo, California |
| 1994 - 2004 | Emergency Physician<br>Kaiser-Permanente Hospital<br>Oakland, California |
| 1998 - 2006 | Attending Physician and Medical Director<br>Camp Tawonga (wilderness summer camp for children)<br>Mathers, California |
| 2004 - | Emergency Physician, Active Staff<br>California Emergency Physicians Medical Group<br>Alameda Hospital<br>Alameda, California |

## POSITIONS HELD:

| 1988 - 1999 | Medical Expert Consultant, Emergency Medicine, Emergency Medical Services (EMS), and Trauma<br>Medical Board of California, Division of Medical Quality |
| --- | --- |

**BARRY E. GUSTIN, M.D., Page 5**

| | |
|---|---|
| 1994 - 2007 | Medical Expert Consultant in Emergency Medicine and Emergency Medical Services (EMS) for Health Care Financing Agency (HCFA) and California Medical Review, Inc. |
| 1989 - 1991 | Associate Director/Contract Manager Department of Emergency Medicine Providence Hospital, 35,000 patient visits per year Oakland, California |
| 1989 - 1991 | Emergency Medical Services consultant, Alameda County, California, Providence Hospital Liaison to EMS Agency, Alameda County, California |
| 1987 – 1988 | EMS instructor and consultant to Marin County EMS Agency, Woodacre, California |
| 1988 - 1992 | Operations Consultant S.T.A.T. Emergency Organization Systems, Inc San Rafael, California |
| 1989 | Alameda County - Providence Hospital Earthquake Disaster Coordinator, EMS Coordinator, Alameda County Oakland, California |
| 1995 - 1997 | Consultant to the California Health Services Department, Vector-Borne Disease Section, Biohazards |
| 1996 – 1999 | Guest Lecturer, University of California, Berkeley, California Public Health Department, Toxicology, Chemical and Drug Hazards |
| 1991- 2007 | Medical Director, Advisory Board of Physicians American Medical Forensic Specialists, Inc. Berkeley, California |
| 2008 - current | Consultant in Emergency Medicine, Emergency Medical Services (EMS transport), Drug and Alcohol Abuse and Toxicology for Haight-Ashbury Free Clinic Event Outreach-San Francisco, California |

**COMMITTEES & BOARDS:**

| | |
|---|---|
| 2002- current | Interprofessional Committee, Alameda-Contra Costa Medical Association (Nominated & Appointed) |

**BARRY E. GUSTIN, M.D., Page 6**

| | |
|---|---|
| 2002- current | Professional Liability Committee, Alameda-Contra Costa County Medical Association (Nominated & Appointed) |
| 2002- current | Professional Standards Committee, Alameda-Contra Costa County Medical Association (Nominated & Appointed) |
| 2002- current | Public Health Committee, Alameda-Contra Costa County Medical Association (Nominated & Appointed) |
| 2002- current | Emergency Medical Services Committee, Alameda-Contra Costa County Medical Association (Nominated & Appointed) |
| 2002- current | Legislative Committee, Alameda-Contra Costa County Medical Association (Nominated & Appointed) |
| 1994 - 1997 | Board of Advisors for Professional Standards, American College of Forensic Examiners, Springfield, MO |
| 1994 - 1997 | Executive Board of Scientific and Technical Advisors, American Board of Forensic Examiners, Springfield, MO |
| 1995 - 1996 | Editorial Board, <u>Berkeley Wellness Letter of the School of Public Health</u>, University of California at Berkeley |
| 1991 - 1994 | Pharmacy and Therapeutics Committee Brookside Hospital, San Pablo, CA |
| 1991 - 1994 | Emergency Medical Services Committee Brookside Hospital, San Pablo, CA |
| 1989 - 1991 | Chairman Emergency Medical Services (EMS) Committee Providence Hospital Oakland, California |
| 1989 - 1991 | Medical Ethics Committee Providence Hospital Oakland, California |
| 1983 - 1987 | Board of Advisors Center for Science in the Public Interest A Nutrition Advocacy Group, Washington, DC Michael Jacobson, Ph.D, Director |

**HONORS:**

| | |
|---|---|
| 1981 | American Medical Student Appointee to the Consortium Bethesda Conference on the Prevention of Coronary Heart Disease |
| 1979 - 1981 | Nutrition and Preventive Medicine Section American Medical Students Association National Director |
| 1982 | Joseph Goldberger AMA Scholarship in Clinical Nutrition |
| 1994 | Listed in the National Registry of Forensic Medical Examiners |
| 2000 | Listed in the National Register's Who's Who in Executives and Professionals |
| 2004 | America's Top Physicians Award, Consumer's Research Council of America, Washington, DC |

## MEMBERSHIPS AND SOCIETIES:

| | |
|---|---|
| 1977 - | Center for Science in the Public Interest |
| 1978 - | Physicians for Social Responsibility |
| 1984 - | California Medical Association |
| 1985 - | American College of Emergency Physicians |
| 1985 - | Society of Teachers of Emergency Medicine |
| 1986 - | American College of Physicians |
| 1987 - 1991 2003 - | Partner California Emergency Physicians Medical Group MIEC-Insured |
| 1989 - | Society for the International Advancement of Emergency Medical Care, ACEP Section |
| 1991 -1994 | Member, Emergency Physicians Medical Group |
| 1993 - | Associate, American College Of Legal Medicine |
| 1993 - | Member, National Council For International Health |

**BARRY E. GUSTIN, M.D., Page 8**

| | |
|---|---|
| 1995 - | Member, American Society of Law, Medicine & Ethics |
| 1995 - | Member, American Public Health Association |
| 1995 - | Member, American Medical Informatics Association |
| 1995 - | Founding Member, American College of Forensic Examiners |
| 1996 | Founder, American College of Forensic Medicine |
| 1996 - | Founding Member, American Academy of Emergency Medicine |
| 1996 - | Member, American Medical Informatics Association |
| 1999 - | Physician Advisor and Board Member, Savage Jazz Dance Company, Oakland, California |
| 2000 - 2002 | Medical Advisor and Member, Board of Trustees, Regents of the University of California, Berkeley: Performing Arts Section. |
| 2001 - | Wilderness Medical Society |
| 2001 - | Alameda-Contra Costa Medical Association |
| 2002 - | American Academy of Clinical Toxicology |
| 2002 - | American College of Medical Toxicology |
| 2003 - | American Association of Poison Control Centers |

**PUBLICATIONS:**

Gustin, BE:  Obesity: An American Health Nemesis.   Stephen Green Press, 1979.

Gustin, BE et al:  The Preparation of Future Medical Practitioners:  The Bethesda Conference on the Prevention of Coronary Artery Disease. American Journal of Cardiology, 47:713, 1981.

Gustin, BE and Gernsheimer, J:   Acute Psychosis:  Organic or Functional?  Critical Decisions in Emergency Medicine.  Hospital Therapy,  12 (7): 21-32, 1987

**BARRY E. GUSTIN, M.D., Page 9**

Gustin, BE:  Emergency Department Proposal for San Ramon Regional Medical Center (pp: 104), 1989.

Gustin, BE:  Chest Pain and Medical Malpractice, 1998. www.amfs.com.

Gustin, BE:  Clinical Standards In Medicine, 1998. www.amfs.com

Gustin, BE:  Emergency Medicine in Chile.  Emergency International: The Society for International Advancement of Emergency Medical   Care. March 1995.

Gustin BE, Rutherford GW, Milea A: *Waterborne Disease.*  Current Issues in Public Health. 1996; 2:106-117.

Gustin, BE:  The Development of a County-Based Public Health, Data, Information, and Resource Network: Framing the Concepts and Issues. Regent Press:Oakland, Caifornia , p.111, 1997.

1997 Guide to Health Care Resources on The Internet. Principal Contribution on the Development of Community Public Health Networks. Edited by John W. Hoben. Faulkner & Gray Publishers:New York, p.550, 1996.

Expert Testimony:  A Guide for Expert Witnesses and the Lawyers Who Examine Them:  Steven Lubet.  National Institute For Trial Advocacy. 1998: Edited and Reviewed by Barry E. Gustin, MD. MPH

Gustin, BE, Jones JR, Maggie, J: *Managing Bodily Injury Claims.*  First Edition.  Insurance Institute of America:Malvern, Pennsylvania, p.257, 1999.

Gustin, BE:  *The Medical Records: The Parameters of Your Medical-Legal Case.*  Lawyer's Guide to Medical Proof, Volume VII.  Chapter 108. P.108-130  Matthew Bender & Co.:New York.  December, 1998.

Gustin, BE, Kivela, P.:  AMFS Proposal in Response to RFP #00MC-SA013, SB12-SB55-*Independent Medical Review*: California Department of Managed Health Care, Sacramento, California.  p. 242, November, 2000.

Gustin, BE:  *When To Say 'No' To A Medical Negligence Case.* Syndicated to:  St. Louis Daily Record, St. Louis Countian, The Courier Post, The Kansas City Daily Record, St. Louis Lawyer.  p. 3B-5B January 23, 2001.

Gustin, BE:  Food Sanitation: Contamination by *Salmonella*. Submitted to Current. Issues in Public Health. 2003.

BARRY E. GUSTIN, M.D., Page 10

Gustin, BE, et al: *Selecting the Right Medical Expert*.  Medical Malpractice Supplement to The Recorder.  An American Lawyer Media, Inc. Daily Publication.  San Francisco, California. May 5, 2003.  p.  8-9.

Gustin, BE:  Medical Malpractice: 10 Sure Losers.  Plaintiff Magazine, August 2007, p. 1-5

Gustin, BE: Recognizing EMTALA (Emergency Medical Treatment and Active Labor Act) cases.  Plaintiff Magazine, June 2008, p.1-3.

Contributing Writer and Editor, Newsletter: *Medical Expert Advisor*. Found previously at www.medicalexperts.com  2003 – 2007

Gustin, BE, co-editor:  How Much Damage Does Lawsuits Really Do to Emergency Physicians?  ED Legal Letter, AHC Media, December 2011, Volume 22, No. 12, Pages 141-142

and Mills WJ, Grigg BJ, Offermann FJ, Gustin BE, Spingarn NE;  Toluene methyl ethyl ketone exposure from a commercially available contact adhesive; Journal of Occupational and Environmental Hygiene; 2012, 9:D95-D102

Gustin, BE, co-editor:  Disregarding Nursing Input at Your Peril.  ED Legal Letter, AHC Media, June 2012, Volume 23, No. 6, p. 61-72.

## PROJECTS & SYMPOSIA:

| | |
|---|---|
| 1991 | Organizer/Lecturer:  "Advancements in Emergency Medicine" two day symposium in Santiago, Chile. |
| 1992 | Pediatric & Adult Toxicologic Emergencies, Poisoning & Drug Overdose:  Forensic Toxicology Considerations Seminar Series, Santiago, Chile (Yearly for 4 years) |
| 1993 | "The Emergency Management of Trauma": Lecturer and Organizer. One day symposium. Brookside Hospital, San Pablo , CA. |
| 1993 | Organizer/Lecturer:  "Pain and Anxiety Management in Pediatric Emergency Medicine" one day symposium in Santiago, Chile. |
| 1996 | Regional Community Health Information Network Development: Presentation.  Presentation of text to be published by Regent Press.  University of California, Berkeley, Department of Public Health. |

2002            Interview:  CNN National Radio Network:  Medical
                Malpractice Roundtable:  San Francisco, CA  (January 5,
                2002.)


Ongoing         Numerous lectures and presentations to physicians, nurses,
                pre-hospital medical services personnel, public health
                workers, and medical residents on various topics in
                Emergency Medicine, Emergency Medical Services (EMS),
                Forensic Toxicology, Medical, Occupational and
                Environmental Toxicology Nutritional Diseases, Outbreak
                Disease, Substance Abuse, Forensic Medicine, Public
                Health and Epidemiology, Quality Assurance and Risk
                Management, and Medical Ethics.


Ongoing         Numerous Media Appearances including radio and
                newspaper interviews in the area of Forensic Medicine and
                Toxicology and quality of medical care.


                Practice Interests:

                Emergency Medicine, Emergency Medical Services (EMS),
                Forensic Toxicology, , Substance and Drug Abuse, Adult
                and Pediatric Poisoning and Toxicology, Occupational and
                Environmental Toxicology, Infectious Outbreak Disease and
                Epidemiology, Food Poisoning and Public Health, Travel
                Medicine, Nutritional Diseases, Wilderness Medicine,
                Trauma, Critical Care, Medical Ethics, Legal Medicine


Ongoing:        Continuing Medical Education Courses and Credits Current


*Current:  June  2012*

| Law Firm | Prmary attorney | Case Name | Case Location | My File Number | Deposition Date | Trial or Arbitration Date | Defense or Plaintiff? |
|---|---|---|---|---|---|---|---|
| Rancano & Rancano | David Rancano | Dominguez matter | Modesto, CA | | | Sept 3, 2003 | |
| Union Pacific Railroad | John Feeney | Cox v Union Pacific Railroad | San Fransico, CA | | Oct 29, 2003 none | | Defense |
| Butler & Dodge | Jeffrey Armour | Williams v Sears | Beverly Hills, CA | | Nov 6, 2003 none | | Defense |
| Vorous and Associates | Debbie Vorous | Svensek v Mutual of Omaha | Sacramento County, CA | | Feb 2, 2004 none | | Plaintiff |
| Bellovin & Karnas | David Karnas | Mitchell matter | Tucson, AZ | | Jun 14, 2004 none | | Defense |
| Gordon & Rees | Chuck Custer | Gibbs matter | San Fransico, CA | | Jul 29, 2004 none | | Defense |
| Hayes & Associates | Katherine McLoughlin | Jennifer Escobedo matter | Sacramento County, CA | | Apr 24, 2006 none | | Defense |
| Henning & Keedy | Lee Henning | Eider matter | Kalispell, MT | | Aug 15, 2006 none | | Plaintiff |
| Law Offices of Glenn Cunningham | Glen Cunningham | Robert Mohico vs. Tatum | Bexar County, TX | MLC 1512 | Apr 14, 2009 none | | Plaintiff |
| Law Offices of John Burton | John Burton | Rosa v TASER | Monterey County, CA | MLC 1503 | Aug 25, 2009 none | | Plaintiff |
| Law Offices of Gary Brickwood | Gary Brickwood | Patricia Moran matter | Redding, CA | MLC 1521 | Apr 22, 2010 | Jul 8, 2010 Defense | |
| Overstreet and Associates | David Overstreet | Ortiz v City of Fresno | Fresno, CA | MLC 1522 | Apr 29, 2010 | Jun 3, 2010 Defense | |
| McManis Faulkner | Elizabeth Pipkin | Bae matter | San Jose, CA | MLC 1553 | Jul 15, 2010 | | Plaintiff |
| Law Offices of Jivaka Candappa | Jivaka Candappa | Horton matter | Oakland, CA | MLC 1554 | Jul 23, 2010 | | Plaintiff |
| Samuels & Rubin | Mike Samuels | Hayes matter | Phoenix, AZ | AMFS case | Aug 19, 2010 | | Plaintiff |
| Robert Davis | Bob Davis | Parker matter | Chico, CA | MLC 1568 | Aug 26, 2010 | | Plaintiff |
| Gianuzio & DeSantis | David DeSantis | Salmeron matter | Richmond, CA | MLC 1579 | Nov 1, 2010 | | Defense |
| Law Offices of Jivaka Candappa | Jivaka Candappa | Horton matter | San Francisco, CA | MLC 1554 | Dec 8, 2010 | | Plaintiff |
| Law Office of Dale Galipo | John Fattahi | Atkinson matter | Tulare County, CA | MLC 1596 | Jan 25, 2011 | | Plaintiff |
| Kelley Uustal | Todd Falzone | McDeavitt matter | Palm Beach County, FL | MLC 1587 | Feb 2, 2011 | | Plaintiff |
| Gordon Edelstein Krepack et al | Roger Gordon | Jakymyshyn matter | Los Angeles County, CA | MLC 1584 | Feb 4, 2011 | | Plaintiff |
| Law Offices of David Crane | David Crane | State of California v Bradshaw | Crescent City, CA | MLC 1534 | | Mar 2, 2011 Defense | |
| Gordon Edelstein Krepack et al | Roger Gordon | Jakymyshyn matter | Los Angeles County, CA | MLC 1584 | | Mar 26, 2011 Plaintiff | |
| Robert Davis | Bob Davis | Weiss matter | Chico, CA | MLC 1602 | Mar 31, 2011 | | Plaintiff |
| Benjamin Fogel/Marcus Willougby | Marcus Willoughby | Contreras matter | Lancaster, CA | MLC 1586 | Apr 4, 2011 | | Plaintiff |
| Law Office of Cecily Gray | Cecily Gray | Delgado matter | Martinez, CA | MLC 1616 | | Jun 20, 2011 Defense | |
| Law Office of Robbie Cook | Robbie Cook | Lowery matter | Oakland, CA | MLC 1613 | | Jun 22, 2011 Defense | |
| Law Office of Dale Galipo | Dale Galipo | Kim matter | Santa Ana, CA | MLC 1614 | | Jun 23, 2011 Plaintiff | |
| LeClair Ryan Law Firm | Christiane Kinney | Alterio v Overstreet | San Fransico, CA | MLC 1618 | Aug 24, 2011 | | Defense |
| Law office of Stuart Chandler | Stuart Chandler | Dudek v. Soria | Fresno, CA | MLC 1626 | Sep 26, 2011 | | Plaintiff |
| Law Offices of Benjamin Green | Benjamin Green | State of California v. Campos | Bakersfield, CA | MLC 1604 | | Nov 8, 2011 Defense | |
| Law Offices of Edward Frey | Edward Frey | Alderete v. Chevron | Watsonville, CA | MLC 1643 | Mar 16, 2012 | | Plaintiff |
| Law Offices of David Hodges | David Hodges | Henry matter | Little Rock, AR | MLC 1561 | Mar 28, 2012 | | Plaintiff |
| Kelley Uustal | Todd Falzone | McDeavitt matter | Palm Beach County, FL | MLC 1587 | | May 17, 2012 Plaintiff | |
| Bartko, Zankel, Tarrant & Miller | Stephen Cox | Lacie Myers | San Diego, CA | MLC 1648 | Jun 29, 2012 | | Plaintiff |
| Van Der Walde Law Firm | Paul Van Der Walde | Arango matter | San Jose, CA | MLC 1617 | Jul 3, 2012 | | Plaintiff |
| Arkansas Municipal League | John Wilkerson | Gladden matter | Little Rock, AR | MLC 1656 | Jul 5, 2012 | | Defense |
| Arkansas Municipal League | John Wilkerson | Gladden matter (videotaped depo) | Little Rock, AR | MLC 1656 | Jul 31, 2012 | | Defense |

# FEE SCHEDULE
Barry E. Gustin, MD, MPH, FAAEP
Effective:  January 2012

## *MEDICAL CASE SCREENING FOR MERIT AND STRATEGIC PLANNING* *(This is a consulting service, separate from expert witness work)*

•Case screening and analysis, then presentation by phone          $1500 flat fee
(all medical specialty areas), brief written report included
 if requested. (additional hourly charges for reading depositions)


•Affidavit                                                                                    $1000 flat fee
•Preparation of Experts for Testimony                                    $500/hr
•Accompany Attorney to Opposing Expert's Deposition          $500/hr plus travel


## *MEDICAL EXPERT SERVICES*

•Initial Retainer Deposit                                                         $2500
•Retainer replenished for requested services if:                    < $500 remaining
•Review of Medical Records                                                   $500/hr
•Communication with Attorney (phone, fax or email)              $500/hr
•Written Reports                                                                     $500/hr
•Affidavit of Merit                                                                   $750 flat fee
•Preparation for oral testimony (paid in advance)                 $500/hr
•Literature Review (and report)                                              $500/hr

•Testimony:  estimated retainer and prior outstanding bills must be paid before reserving testimony dates and time.

| | |
|---|---|
| Deposition in-town   (2 hour minimum) | $600/hr |
| Deposition out-of-town (includes travel time) | $5000/day |
| Trial or Hearing (includes travel time) | $5000/day |
| Meeting with Attorney: Face-to-Face | $600/hr |
| Videotaped Deposition (in lieu of trial) | |
| In-town (if less than half day), 1pm cut-off | $3500 |
| Out-of-town | $5000 |

•All travel costs paid by attorney (air travel: business/first)     AQ
•Use of Private Auto                                                                $0.55.5/mile
•Testimony Cancellation Charges (Full Retainer Charged)     < 5 business days
                                                                                                 notice

All third party deposits or payments, and rush service must be paid by cashiers check or money order.  All rates are subject to change.  Rush service available: $500 surcharge